CHARLES L. DEEM, Bar No. CA-110557
BROOKE L. KILLIAN, Bar No. CA-239298
charles.deem@dlapiper.com
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA  92101-4297
Tel: 619.699.2700
Fax: 619.699.2701

Attorney for Defendants
ARMED FORCES BENEFIT ASSOCIATION and
5STAR LIFE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| BRAD LOVESY,<br><br>Plaintiff,<br><br>v.<br><br>ARMED FORCES BENEFIT ASSOCIATION, 5STAR LIFE INSURANCE, LLC, TSG GROUP, INC. AND TED SHUEY,<br><br>Defendants. | CASE NO.  C 07-2745 SBA<br><br>**DECLARATION OF MICHAEL KIMO WONG IN SUPPORT OF MOTION TO DISMISS AND STRIKE PORTIONS OF PLAINTIFF BRAD LOVESY'S FIRST AMENDED COMPLAINT**<br><br>Date:        January 15, 2007<br>Time:        1:00 p.m.<br>Courtroom:  3<br>Judge:       Hon. Saundra B. Armstrong |

I, Michael Kimo Wong, hereby declare as follows:

1.     I am a resident of the State of Virginia and over the age of eighteen years.  I have personal knowledge of each of the facts set forth in this declaration and if required, could and would competently testify thereto.

2.     I am the Senior Vice President for Regional Operations for 5Star Life Insurance Company ("5Star").  Formerly, I served as Vice President of Regional Operations for 5Star.  At that time, 5Star was known as AFBA Life Insurance Company ("AFBA Life").

3.     I am familiar with 5Star and AFBA Life's practices with respect to keeping business records.  All of the documents attached to this Declaration are records maintained in the ordinary course of business.

/////

1

DLA PIPER US LLP
SAN DIEGO

SD\1776387.1
332602-3

DECLARATION OF MICHAEL KIMO WONG IN SUPPORT OF DEFENDANTS AFBA
AND 5STAR'S MOTION TO DISMISS AND STRIKE    CASE NO. C 07-2745 SBA

1    4.    Attached hereto as Exhibit A is a true and correct copy of an agreement between

2  Brad Lovesy and AFBA Life Insurance Company titled "Field Service Representative"

3  Agreement.  Mr. Lovesy executed the agreement on March 22, 2001.  I executed the agreement

4  on behalf of AFBA Life on April 6, 2001.  The Field Service Representative Agreement is

5  referenced by Mr. Lovesy in paragraph 22 of the Second Amended Complaint ("SAC").

6    5.    Attached hereto as Exhibit B is a true and correct copy of an agreement between

7  Brad Lovesy and 5Star titled "Field Service Representative Compensation Addendum."

8  Mr. Lovesy executed the agreement on June 4, 2003.  I executed the agreement on behalf of 5Star

9  on June 20, 2003.  The Field Service Representative Compensation Addendum is referenced by

10  Mr. Lovesy in paragraph 19 of the SAC.

11    6.    Attached hereto as Exhibit C is a true and correct copy of an agreement between

12  Pacific Consolidated LLC and 5Star titled "Regional Sales Director Agreement."  Pacific

13  Consolidated LLC was the broker under whom Mr. Lovesy formerly operated.  Mr. Lovesy and

14  Blossom S. Osofsky executed the agreement on behalf of Pacific Consolidated LLC on May 31,

15  2001 and May 14, 2001, respectively.  I executed the agreement on behalf of 5Star on

16  September 10, 2001.  The Regional Sales Director Agreement is referenced by Mr. Lovesy in

17  paragraph 19 of the SAC.

18    7.    Attached hereto as Exhibit D is a true and correct copy of the Articles of

19  Incorporation of AFBA Life, which AFBA Life recorded with the Louisiana Commissioner of

20  Insurance, and which are dated July 20, 1996.

21    8.    Attached hereto as Exhibit E is a true and correct copy of the Amendment to

22  Articles of Incorporation, which AFBA Life recorded with the Louisiana Acting Commissioner of

23  Insurance on October 24, 2000.  By virtue of this Amendment, AFBA Life changed its name to

24  5Star, effective October 16, 2004.

25  /////

26  /////

27  /////

28  /////

DLA PIPER US LLP
SAN DIEGO

SD\1776387.1
332602-3

2

DECLARATION OF MICHAEL KIMO WONG IN SUPPORT OF DEFENDANTS AFBA
AND 5STAR'S MOTION TO DISMISS AND STRIKE    CASE NO. C 07-2745 SBA

1        I declare under penalty of perjury under the laws of the State of California and the United

2    States of the America that the foregoing is true and correct and that this declaration was executed

3    on December ⎽7⎽ , 2007 in Alexandria, Virginia.

4

5                                            *Michael K. Wong*

6                                          MICHAEL KIMO WONG

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

SD\1776387.1
332602-3

3

DECLARATION OF MICHAEL KIMO WONG IN SUPPORT OF DEFENDANTS AFBA
AND 5STAR'S MOTION TO DISMISS AND STRIKE     CASE NO. C 07-2745 SBA



## FIELD SERVICE REPRESENTATIVE

The *AFBA Life Insurance Company* (hereinafter "the Company")

_____
Contractor Name

_____
FSR#

in consideration of the mutual promises and agreements set forth herein, hereby agree as follows:

**I.**    **APPOINTMENT AND RELATIONSHIP**

A.  The Company hereby appoints you a Field Service Representative (hereinafter "FSR") to act on its behalf and represent it only to the extent authorized herein.

B.  Your performance hereunder shall be conducted as an independent contractor with respect to the Company, and nothing contained herein shall create or be construed to create the relationship of employer and employee, or partner between the Company and you or between the Company and any employee of yours.

**II.**    **AUTHORITY OF THE FSR**

A.  You are hereby authorized to solicit and obtain applications for the approved products offered by the Company which are listed in the attached pages titled **Field Service Representative Compensation Addendum (Schedule B)**. However, this authorization is limited to those states where the Company's underwriters are authorized to do business, and the condition that you are in compliance with all applicable governmental regulatory licensing requirements at the time of solicitation.

B.  At all times during the term of this Agreement, you shall be properly appointed and maintain in full force and effect all governmental regulatory licenses necessary or appropriate to the performance of this Agreement.

C.  You are authorized to collect the initial two months' premium for any policy or contract issued upon application solicited by you, and to service policies, contracts, and certificates of group coverage so issued, upon the following conditions:

1.   All check or money orders are to be made payable to the Company. In no event are you authorized to accept any check or money order not specifically made payable to the Company.
2.   All such premium payments shall be received and held in a fiduciary capacity by you as trustee of the Company and remitted to your Regional Director. Receipts are to be issued for all cash payments.

D.  You are authorized to publish advertising material referencing the Company's name, its products or services only upon the prior written approval of the Company Compliance Officer.

### III.     *LIMITATION OF AUTHORITY*

A.   You do not have the authority to make, alter, modify or discharge any policy or contract; extend any provision thereof; extend the time for payments; waive any forfeiture; incur any debts or expenses for which the Company may be liable; receive any monies for the Company except as may be herein or elsewhere specifically be authorized in writing by a Company vice president; withhold or convert to your own use or for the benefit of others, any monies, securities, contracts, certificates or receipts belonging to the Company; or fail to submit promptly to the Company any completed application for membership; or accept payments other than in current funds of the United States.

B.   You do not have the authority to endorse or present for collection any check, draft or other instrument made payable to the Company.

### IV.     *PROVISIONS RELATING TO ALL FEES PAID*

A.   You shall remit promptly to the Company gross payments and other monies received or collected on behalf of the Company in the form of premium payments and shall not deduct or retain fees which may be payable hereunder.

B.   All fees due for business approved will be paid by the Company on or about the 10th and 25th of each month or the Friday before when the 10th or 25th day falls on a weekend.

C.   Any fees to which you may be entitled hereunder shall be payable to you only after the due date of the payment and after receipt of the gross payment by the Company at its home office. Any commission paid to agents working under you reduces your compensation by that amount.

D.   There shall be no additional compensation or reimbursement to you for costs or expenses incurred in performing services hereunder.

E.   You will continue to receive the full override of the broker's business submitted by subcontractors, even if subcontractors are no longer contracted along with all renewals on whole life business written under prior agreements provided you are an active producer in good standing with the Company.

F.   If this Agreement is terminated, no fees shall be payable hereunder for services or work performed subsequent to the date of termination.

G.   Fees payable according to the Company's fee schedule may be amended by notice in writing from the Company and such amendment shall take effect at the time specified in the notice. Notices shall be mailed to your last known address as reflected in the Company's records.

H.   This Agreement will terminate immediately upon your death, and any fees due and payable to you at the time of your death or thereafter under this Agreement shall be paid to the executor or administrator of your estate, or to your assigns, as applicable.

V.    **GENERAL PROVISIONS**

A.  Conduct of FSR: You shall be free to exercise personal judgment as to the time and manner of performing services authorized under this Agreement, but shall be guided by such rules as may be adopted by the Company concerning general business conduct. In all cases, you shall perform hereunder in strict accordance with the laws and regulations of the jurisdiction in which you are authorized to represent the Company, in observance of the highest standards of professional conduct and integrity.

B.  Training/Conduct of Sub-Contractor: You are responsible for assuring that subcontractors employed by you are trained properly on all Company insurance products and operating procedures, including correctly filling out applications, medical requirements, and conducting their affairs in accordance with the highest standards of integrity. These subcontractors must be licensed and appointed prior to any sales activity.

C.  Prior Contract Superseded: This Agreement shall supersede any and all prior agreements between the parties hereto, whether written or oral except for payments of renewals as pertains to active FSR agreements where producers are in good standing with the Company.

D.  Signed Ethical Code of Agent Market Conduct must be on file at AFBA Life.

E.  Terminated Cases: The FSR is responsible for all charge backs of subcontractors.

F.  The following AFBA Life and AFBA Whole Life and Universal products sold and subsequently terminated in the first twelve (12) month will have fees on commission charged back to your account and repaid to the Company according to the following schedule:

|  |  |  |
|---|---|---|
| Terminations | within four months | —100% |
| | 5 - 8 months | —50 % |
| | 9 - 12 months | —25% |
| | after 12 months | —0 |

G.  Escrow Account: The Company may elect to retain in escrow for the charge back period all or any portion of fees accruing from enrollment of applicants, pending satisfactory maintenance of scheduled premium payments.

H.  Indebtedness:

1.  You hereby grant to the Company a first security interest in all fees becoming due hereunder to secure any indebtedness to the Company; and the Company may at any time apply fees payable to you hereunder or any other monies payable to you by the Company to reduce any such outstanding indebtedness.

2.  Your entire indebtedness to the Company as recorded in the records of the Company, may, at the election of the Company, be deemed due and payable in full at any time.

3.  In addition to payment of the principal sum of any indebtedness to the Company, you shall also be liable for any costs, including reasonable attorney fees and other collection expenses, incurred by the Company in connection with the recovery from you of such indebtedness.

I.  Assignment: No assignment or other transfer by you of any right, title or interest herein, or of any benefits accruing hereunder, in whole or in part, shall be valid and any such attempted assignment of transfer shall be void unless the written consent of the Company thereto has first been given. Any assignee of rights or benefits hereunder shall be subject to all the terms and provisions hereof.

J.   Amendment:  This Agreement may be amended at any time by written notice from a duly authorized officer of the Company.

K.   Hold Harmless:  You agree to indemnify and hold the Company harmless from any losses, expenses, costs or damages resulting from acts or omissions on your part constituting a breach of any of the terms of this Agreement.

## VI.   *TERMINATION*

A.   This Agreement may be terminated without cause by either party upon at least thirty (30) days prior written notice to the other party. Such termination shall be effective thirty (30) days after the mailing of written notice thereof, or on the date specified in such notice, if later.

B.   This Agreement may be terminated immediately by the Company without notice for "cause" which terms shall include, but not be limited to, the following:

   1.   Allegations or commissions of a fraudulent, illegal or dishonest act by you.

   2.   Violation of the laws, regulations, or rules of any jurisdiction in which you operate, or of any governmental authority exercising jurisdiction over you.

   3.   Breach of any provision of this Agreement, including, but not limited to the performance of your responsibilities under this Agreement in bad faith.

Termination for "cause" may, at the option of the Company, result in forfeiture of all unpaid fees which may be due to you under this Agreement as of the termination date or thereafter.

Form 101 (4/00)

*VII.*   **SIGNATURE**

I hereby acknowledge that I have read and understand the provisions of the foregoing Field Service Representative Agreement (Form 101) 1/97. I further acknowledge that said Agreement will not be deemed in effect until such time as I am in receipt of the counter-signed copy of this signature page of the Agreement.

**1. FIELD SERVICE REPRESENTATIVE:**

BRAD LOVESY
Name (Print or Type)

GUALALA, CA
City, State

_Signature_

3-22-01
Date

**2. REGIONAL SALES DIRECTOR:**

Name

City, State

Signature

Date

**3. VICE PRESIDENT OF REGIONAL OPERATIONS:**

Name

City, State

_Michael Z. Obong_
Signature

APR 6 2001
Date

**4. SENIOR VICE PRESIDENT:**

Name

City, State

Signature

APR 6 2001
Date

Form 101 (4/00)                     Page 5 of 5



FSR Name (print) *BRAD LOVESY*

## Field Service Representative Compensation Addendum

## FSR1

*EVA360 Y*

I.     **ID3 Products**

| | Yr 1** | Yr 2 | Yr 3 | Yr 4 | Yr 5 | Yr 6 | Yr 7+ |
|---|---|---|---|---|---|---|---|
| Military Better Alternative | 100% | 0 | 0 | 0 | 0 | 0 | 0 |
| Military Better Alternative  Active Duty (Age under 30; single no children) | 0% | 0 | 0 | 0 | 0 | 0 | 0 |
| 5Star Group Level Term | 80% | 0 | 0 | 0 | 0 | 0 | 0 |
| Family Protection Plan | 50% | 0 | 0 | 0 | 0 | 0 | 0 |
| Economizer Whole Life | 80% | 5% | 5% | 5% | 5% | 0 | 0 |
| Universal Life | 80% | 5% | 5% | 5% | 5% | 0 | 0 |
| Universal Life – Excess Premium | 3% | 2% | 2% | 1% | 1% | 0 | 0 |
| Group Silver Premier WL | 80% | 5% | 3% | 3% | 3% | 0 | 0 |
| Select Term | 80% | 0 | 0 | 0 | 0 | 0 | 0 |
| Ind. Level Term | 65% | 0 | 0 | 0 | 0 | 0 | 0 |
| Ind. Select Term | 80% | 0 | 0 | 0 | 0 | 0 | 0 |
| Ultimate Select Term to 100 | 80% | 0 | 0 | 0 | 0 | 0 | 0 |

** commissionable premium FY only; target premium for U.L.; option B will be based on option A premium)

II.     **Multiple Employer Trust**

| Commission | Annual Premium | |
|---|---|---|
| 10% | First | $2,500 |
| 9% | next | $2,500 |
| 8% | next | $5,000 |
| 6% | next | $15,000 |
| 2% | next | $25,000 |
| 1% | next | $50,000 |
| .5% | next | $150,000 |
| .25% | next | $250,000 |

**Note   Lower level FSR compensation will be deducted from gross commissions

Accepted:                                          5Star Life Insurance Company:

*Brad Z*  6/4/03

**FSR Signature**              **(Date)**          **Regional Sales Director**

                                                   **Regional Vice President**

                                                   JUN 2 0 2003

FSR1 COMP 6/03

This agreement supersedes all previous commission schedules and addendums  [ /Title (I) /Author (AFBA_USER) /Subject() /Keywords () /Cre



PACIFIC CONSOLIDATED LLC



**5STAR LIFE INSURANCE COMPANY**
909 North Washington Street   Alexandria, VA 22314

# REGIONAL SALES DIRECTOR AGREEMENT

5Star Life Insurance Company ("the Company") hereby appoints

**PACIFIC CONSOLIDATED LLC**   ("You") as Regional Sales Director in the region of
<u>Name</u>

_____ to be responsible for recruiting and developing sales manpower
<u>Region</u>

and sales production in said region upon the following terms and conditions:

## I.  Compensation to be paid by the Company

Override on business produced by the Field Service Representative recruited by or assigned to the Regional Sales Director according to attached schedules.  Bonuses are deemed to be a part of override.

## II.  Charge-backs

There will be a charge-back of overrides (including bonuses) received consistent with charge-backs outlined in the Field Service Representative Agreement.  In all cases, you will be charged back for your portions of all monies earned by all Field Service Representatives under this Agreement.

## III.  Disbursement of Monies

With the exception of a License Only Agreement (LOA), all sales payments will be paid by the Company directly to Field Service Representatives.  Should you elect to contract an agent under the License Only Agreement, all sales payments will be paid directly to you as Regional Director, and subsequently, you will incur all debt associated with terminations, commission advances, and charge-backs of that agent.

## IV.  Regulatory Responsibilities

You and all Field Service Representatives representing and conducting business on behalf of the Company in your Regional Sales Director area of responsibility, must maintain in good standing all necessary regulatory licenses and appointments to represent the Company.

You, and all Field Service Representatives in your region, agree to keep confidential, protect, secure, and not share, reveal, or disclose to any party other than the Company, any personal customer information that is received in applications or forms associated with life insurance benefits or programs underwritten by the Company.  This is Company policy in accordance with the Federal Privacy Act.

(FORM ALRSDA-100) 4/01

PACIFIC CONSOLIDATED LLC

## V. Advertising

You are authorized to publish advertising material referencing the name of the Company, its products or services only *upon prior written approval* of the compliance officer of the Company.

## VI. Minimum Performance Guidelines for Agreement Continuation

You agree to recruit and develop Field Service Representatives for the Company using the standard Field Service Representative Agreement.

Minimum Regional Annual Production:
Number of Applications:       600

## VII. Renewals

The renewal payments, as described in the Field Service Representative Agreement, will be payable as long as your commission account is in good standing.

## VIII. Termination With Or Without Cause

This Agreement may be terminated by either party with or without cause, upon written notice sent to the last known address. Should this Agreement be terminated by either party, all Company Field Service Representatives previously associated as being in your region, may be reassigned to a new Regional Sales Director or other named individual at the discretion of the Company.

*Appointment Accepted and Agreed to:*

REGIONAL SALES DIRECTOR:

| | |
|---|---|
| _Blossom S. Osofsky_ | _5/14/01_ |
| Signature | Date |
| BLOSSOM S. OSOPSKY | |
| Name *(Print)* | |
| _Brad Lovesy_ | _5/31/01_ |
| Signature | Date |
| BRAD LOVESY | |
| Name *(Print)* | |

Address: _____

5 STAR LIFE INSURANCE COMPANY:

| | |
|---|---|
| _Michael F. Olong_ | SEP 1 0 2001 |
| Regional Vice President | Date |
| _(signature)_ | ~~SEP 1 0 2001~~ |
| Chief Operating Officer | Date |

(FORM ALRSDA-100) 4/01





# State of Louisiana

## James H. "Jim" Brown

**I, THE UNDERSIGNED Commissioner of Insurance, OF THE STATE OF LOUISIANA, DO HEREBY**

*CERTIFY THAT*

The attached is a true and correct copy of the Bylaws of *AFBA LIFE INSURANCE COMPANY* of Baton Rouge, Louisiana, dated July 20, 1996, on file in the Commisioner of Insurance office.

*Given under my signature, authenticated with the impress of my Seal of office, at the City of Baton Rouge, this 29th day of July A. D. 19 96*

_____
James H. "Jim" Brown
Commissioner of Insurance

FORM C. -21 A

# AFBA LIFE INSURANCE COMPANY
## BYLAWS

## OFFICES

1. The principal office of the Corporation shall be located at such place as the Board of Directors shall, from time to time, determine.

2. The Corporation may also have offices at such other places as the Board of Directors may appoint.

## SEAL

3. The corporate seal of the Corporation shall have inscribed thereon the name of the Corporation, the jurisdiction of its creation and the words "Corporate Seal."

## STOCKHOLDERS' MEETINGS

4. Meetings of the stockholders shall be held at such place as shall be fixed, from time to time, by the Board of Directors.

5. Stockholders may vote at all meetings either in person or by proxy in writing.

6. A majority in amount of the stock issued and outstanding represented by the holder in person or by proxy shall be requisite at every meeting to constitute a quorum for the election of Directors or for the transaction of other business.

7. Voting upon all questions at all meetings of the stockholders shall be by shares of stock and not per capita, unless otherwise provided in the Articles of Incorporation, or any amendment thereof.

8. The vote for Directors, and upon the demand of any stockholder, the vote upon any question before the meeting shall be by ballot.

Published July 20, 1996.

9.  Action required or permitted to be taken at a stockholder's meeting may be taken without a meeting and without action by the board of Directors if the action is taken by all the stockholders entitled to vote on the action.  The action shall be evidenced by one or more written consents describing the action taken, signed by all the stockholders entitled to vote on the action, and delivered to the secretary of the corporation for inclusion in the minutes or filing with the corporate records.

## ANNUAL MEETING

10.  The annual meeting of stockholders shall be held on or before October 31 of each year commencing in 1997, and continuing thereafter, at the principal office of the Corporation or such other place as the majority stockholder may select, at such time as the majority stockholder shall designate, pursuant to notice duly given in accordance with Article 13 of these Bylaws, when the majority stockholder shall elect new Directors or replacement Directors for those whose term of office has expired, as applicable.  In addition, each stockholder is entitled to one vote, in person or by proxy, for each share of stock standing registered in that person's name.

## PROXIES TO BE FILED

11.  All proxies shall be filed with the Secretary of the meeting before being voted upon.

## LIST OF STOCKHOLDERS

12.  A full list of the stockholders entitled to vote at the ensuing election, arranged in alphabetical order with the number of shares held by each, shall be prepared by the Secretary and shall be produced at the time and place of the meeting. Such list will include the Chairman, as the Voting Trustee of the majority stockholder.

## NOTICE OF MEETINGS

13. Written notice stating the place, date, hour and purpose of any meeting shall be given not less than ten (10) nor more than sixty (60) days before the date of the meeting to each stockholder entitled to vote at such meeting.  If mailed, a notice is given when deposited in the United States mail, postage prepaid, directed to the

stockholders of the Corporation at addresses as they appear on the records of the Corporation.

## REGULAR MEETINGS OF DIRECTORS

14.  A regular meeting of the Board of Directors shall be held annually, immediately following the annual meeting of stockholders at the place where such meeting of the stockholders is held or at such other place, date and hour as a majority of the newly elected Directors may designate. At such meeting the Chairman of the Board of Directors shall appoint officers of the Corporation. Such appointments shall be ratified by the Board of Directors. Including such annual meeting, the Board of Directors shall meet at least quarterly and have the power to fix by resolution the place, date and hour of these and other meetings of the Board.

## SPECIAL MEETINGS OF BOARD

15.  Special meetings of the Board may be called by the Chairman of the Board of Directors on one day's notice to each Director, either personally, by mail or by wire; special meetings may be called in like manner and on like notice, on the written request of a majority of the Directors in office.

## QUORUM AT MEETINGS OF BOARD

16.  At least a majority of Directors shall be necessary at all meetings to constitute a quorum.

## ACTION WITHOUT MEETING

17.  Action required or permitted to be taken at the board of Directors' meeting may be taken without a meeting if the action is taken by all members of the board. The action shall be evidenced by one or more written consents stating the action taken, signed by each Director either before or after the action taken, and included in the minutes or filed with the corporate records reflecting the action taken.

## THE CHAIRMAN OF THE BOARD

18.   The Chairman shall preside at all meetings of the stockholders and Directors and shall have general and active management of the business of the Corporation; shall have the power and be authorized to vote the stock of the Corporation owned by the majority stockholder at all meetings of the stockholders and Directors of the Corporation and for any and all other purposes; shall see that all orders and resolutions of the Board are carried into effect; shall execute bonds, mortgages and other contracts requiring a seal, under the seal of the Corporation, and when authorized by the Board, affix the seal to any instrument requiring the same, and the seal when so affixed shall be attested by the signature of the Secretary or the Treasurer.

## POWERS OF DIRECTORS

19.  The Board of Directors, in consultation with the Chairman, shall provide guidance and direction, with respect to the management of the business of the Corporation.  In addition to the powers and authorities by these Bylaws expressly conferred upon them, the Board may exercise all such powers of the Corporation as are authorized by law.

## COMPENSATION OF DIRECTORS

20.   Outside, nonemployee, members of the Board of Directors of the Corporation and the Chairman of the Board of Directors of the Corporation, may receive compensation for their services and stipends for their attendance at regular or special meetings of the Board or of committees of the Corporation, provided that nothing herein contained shall be construed to preclude any Director from serving the Corporation in any other capacity and receiving compensation therefor.

## THE OFFICERS

21.  The Corporation shall have a Chairman of the Board, a President/Chief Executive Officer, a Secretary, a Chief Operating Officer and a Chief Financial Officer/Treasurer, each of whom shall be appointed the Chairman of the Board of Directors and ratified by the Board of Directors.  The Chairman may appoint as additional officers, one or more vice presidents, and one or more assistant vice

presidents or secretaries. Any two or more offices may be held by the same individual, except the office of the President.

## PRESIDENT/CHIEF EXECUTIVE OFFICER

22. The President shall have general superintendence and direction of all the other officers of the Corporation, and shall see that their duties are properly performed.

23. The President shall submit a report of the operations of the Corporation for the fiscal year to the Chairman and other Directors at their regular meetings, and to the stockholders at the annual meeting, and from time to time shall report to the Board of Directors all matters within his knowledge, which the interests of the Corporation may require to be brought to their notice.

24. The President shall be an ex officio member of all standing committees, and shall have the general powers and duties of supervision and management usually vested in the office of the President of a corporation.

## CHIEF OPERATING OFFICER

25. The Chief Operating Officer shall be vested with all the powers, and required to perform all the duties of the President in the latter's absence.

## SECRETARY

26. The Secretary shall keep full minutes of all meetings of the stockholders and Directors and shall be the ex officio Secretary of the Board of Directors and shall attend all sessions of the Board, shall act as clerk thereof, and record all votes and the minutes of all proceedings in a book to be kept for that purpose; and shall perform like duties for the standing committees when required. The Secretary shall give, or cause to be given, notices of all meetings of the stockholders of the Corporation and of the Board of Directors, and shall perform such other duties as may be prescribed by the Board of Directors or President, under whose supervision the Secretary shall be.

Revised November 6, 1997.                        -5-

## CHIEF FINANCIAL OFFICER/TREASURER

27.  The Chief Financial Officer/Treasurer shall keep full and accurate accounts of receipts and disbursements in books belonging to the Corporation, and shall deposit all moneys and other valuable effects in the name and to the credit of the Corporation, in such depositories as may be designated by the Board of Directors.

28.  The Chief Financial Officer/Treasurer shall disburse the funds of the Corporation as may be ordered by the Board, taking proper vouchers for such disbursements, and shall render to the President and Directors, at the regular meetings of the Board, or whenever they may require it, an account of all transactions as The Chief Financial Officer/Treasurer and of the financial condition of the Corporation, and at the regular annual meeting of the Board, a like report for the preceding year.

29.  The Chief Financial Officer/Treasurer shall give the Corporation a bond in a sum, and with one or more sureties, if the Board of Directors so determine, for the faithful performance of the duties of office, and the restoration to the Corporation, in case of death, resignation or removal from office, of all books, papers, vouchers, money or other property of whatever kind belonging to the Corporation.

## VACANCIES

30.  If the office of any Director, or of the President/Chief Executive Officer, Vice President, Secretary, Chief Operating Officer or Chief Financial Officer/Treasurer, one or more, becomes vacant, by reason of death, resignation, disqualification, or otherwise, the Chairman of the Board of Directors may choose a successor or successors, who shall hold office for the unexpired term.

## RESIGNATIONS

31.  Any Director or other officer may resign at any time, such resignation to be made in writing, and to take effect from the time of its receipt by the Corporation, unless some time be fixed in the resignation, and then from that date.  The acceptance of a resignation shall not be required to make it effective.

## DUTIES OF OFFICERS MAY BE DELEGATED

32. In case of the absence of any officer of the Corporation, or for any other reason that the Board of Directors may deem sufficient, the Board may delegate the powers or duties of such officer to any other officer, or to any Director for the time being; provided a majority of the entire Board concur therein.

## TRANSFERS OF STOCK

33. All transfers of the stock of the Corporation shall be made upon the books of the Corporation by the holder of the shares in person, or via legal representative; certificates of stock shall be surrendered and canceled at the time of transfer.

34. No transfer of stock shall be made within ten (10) days next preceding the day appointed for paying a dividend.

35. The Board of Directors may also close the transfer books for not exceeding twenty (20) days preceding the annual meeting of stockholders.

36. The Corporation shall be entitled to treat the registered holder of any share as the absolute owner thereof, and accordingly shall not be bound to recognize any equitable or other claim to, or interest in, such share, on the part of any other person, whether or not it shall have express or other notice thereof, save as expressly provided by statute.

## CERTIFICATE OF STOCK

37. Certificate of stock shall be signed by the President or Vice President, and the Chief Financial Officer/Treasurer or Assistant Chief Financial Officer/Assistant Treasurer or Secretary or Assistant Secretary and shall bear the seal of the Corporation.

## LOSS OF CERTIFICATE

38. Any person claiming a certificate of stock to be lost or destroyed, shall make an affidavit or affirmation of that fact and advertise the same in such manner as the Board may require, and shall give the Corporation a bond of indemnity in form and

with one or more sureties satisfactory to the Board, in at least double the value of such certificate, whereupon the proper officers may issue a new certificate of the same tenor with the one alleged to be lost or destroyed, but always subject to the approval of the Board.

## INSPECTION OF BOOKS AND ACCOUNTS

39.   The books, accounts and records of the Corporation shall be open to inspection by any members of the Board of Directors at all times; stockholders may, in the discretion of the Board, inspect the books of the Corporation at such reasonable times as the Board of Directors may by resolution designate.

## DIVIDENDS

40.   Dividends on the capital stock of the Corporation when earned, shall be declared at the discretion of the Board of Directors.

## DIRECTORS' ANNUAL STATEMENT

41.   The Board of Directors shall present at each annual meeting, and when called for by the stockholders at any special meeting of the stockholders, a full and clear statement of the business and condition of the Corporation.

## NOTICE

42.   Whenever notice is required by statute or by these Bylaws to be given to the stockholders, or the Directors, or any officer of the Corporation, personal notice is not meant unless expressly so stated; and any notice so required shall be deemed to be sufficient if given by depositing the same in a post office box, properly stamped, addressed to such stockholder, Director or officer; and such notice shall be deemed to have been given at the time of such mailing, except where notice is given by wire, in which latter case notice shall be deemed to be given at the time the same is delivered to the telegraph company.

## AMENDMENTS

43. The stockholders, by the affirmative vote of a majority of the stock issued and outstanding, may at any annual, or upon notice at any special meeting, alter or amend these Bylaws.

44. The Board of Directors, by the affirmative vote of a majority of the members may alter or amend these Bylaws at any regular meeting of the Board or at any special meeting of the Board, provided that notice of the proposed alteration or amendment has been given to each Director.

## FURTHER PROVISIONS CONCERNING DIRECTORS AND OFFICERS

45. A. A Director shall discharge his duties as a Director, including, his duties as a member of a committee, in accordance with his good faith business judgment of the best interests of the Corporation.

B. Unless he has knowledge or information concerning the matter in question that makes reliance unwarranted, a Director is entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, if prepared or presented by:

(1)    One or more officers or employees of the Corporation whom the Director believes, in good faith, to be reliable and competent in the matters presented;

(2)    Legal counsel, public accountants, or other persons as to matters the Director believes, in good faith, are within the person's professional or expert competence; or

(3)    A committee of the Board of Directors of which he is not a member if the Director believes, in good faith, that the committee merits confidence.

C. A Director is not liable for any action taken as a Director, or any failure to take any action, if he performed the duties of his office in compliance with this section.

D. A person alleging a violation of this section has the burden of proving the violation.

## DIRECTOR CONFLICT OF INTERESTS

44. A. A conflict of interests transaction is a transaction with the Corporation in which a Director of the Corporation has a direct or indirect personal interest. A conflict of interests transaction is not voidable by the Corporation solely because of the Director's interest in the transaction if any one of the following is true:

(1) The material facts of the transaction and the Director's interest were disclosed or known to the Board of Directors or a committee of the Board of Directors and the Board of Directors or committee authorized, approved, or ratified the transaction;

(2) The material facts of the transaction and the Director's interest were disclosed to the shareholders entitled to vote and they authorized, approved, or ratified the transaction; or

(3) The transaction was fair to the Corporation.

B. For the purposes of this section, a Director of the Corporation has an indirect personal interest in a transaction of:

(4) Another entity in which he has a material financial interest or in which he is a general partner is a party to the transaction; or

(5) Another entity of which he is a Director, officer or trustee is a party to the transaction and the transaction is or should be considered by the Board of Directors of the Corporation.

C. For purposes of Paragraph 1 of Subsection A of this section, a conflict of interests transaction is authorized, approved, or ratified if it receives the affirmative vote of a majority of the Directors on the Board of Directors, or on the committee, who have no direct or indirect personal interest in the transaction. A transaction shall not be authorized, approved, or ratified under this section by a single Director. If a majority of the Directors who have no direct or indirect personal interest in the transaction vote to authorize, approve or ratify the transaction, a

quorum is present for the purpose of taking action under this section. The presence of, or a vote cast by, a Director with a direct or indirect personal interest in the transaction does not affect the validity of any action taken under Paragraph 1 of Subsection A of this section if the transaction is otherwise authorized, approved or ratified as provided in that subsection.

        D.    For purposes of Paragraph 2 of Subsection A of this section, a conflict of interests transaction is authorized, approved, or ratified if it receives the vote of a majority of the shares entitled to be counted under this subsection. Shares owned by or voted under the control of a Director who has a direct or indirect personal interest in the transaction, and shares owned by or voted under the control of an entity described in Paragraph 1 of Subsection B of this section, may not be counted in a vote of shareholders to determine whether to authorize, approve, or ratify a conflict of interests transaction under Paragraph 2 of Subsection A of this section. The vote of those shares, however, shall be counted in determining whether the transaction is approved under other sections of this chapter. A majority of the shares, whether or not present, which are entitled to be counted in a vote on the transaction under this subsection constitutes a quorum for the purpose of taking action under this section.

## AUTHORITY TO INDEMNIFY

    45.    A.    Except as provided in Subsection D of this section, the Corporation may indemnify an individual made a party to a proceeding because he is or was a Director against liability incurred in the proceeding if:

        (1)    He conducted himself in good faith; and

        (2)    He believed:

        (a)    In the case of conduct in his official capacity with the Corporation, that his conduct was in its best interests; and

        (b)    In all other cases, that his conduct was at least not opposed to its best interests; and

(3)     In the case of any criminal proceeding, he had no reasonable cause to believe his conduct was unlawful.

B.     A Director's conduct with respect to an employee benefit plan for a purpose he believed to be in the interest of the participants in and beneficiaries of the plan is conduct that satisfies the requirement of Paragraph 2(b) of Subsection A of this section.

C.     The termination of a proceeding by judgment, order, settlement or conviction is not, of itself, determinative that the Director did not meet the standard of conduct described in this section.

D.     The Corporation may not indemnify a Director under this section:

(4)     In connection with a proceeding by or in the right of the Corporation in which the Director was adjudged liable to the Corporation; or

(5)     In connection with any other proceeding charging improper personal benefit to him, whether or not involving action in his official capacity, in which he was adjudged liable on the basis that personal benefit was improperly received by him.

E.     Indemnification permitted under this section in connection with a proceeding by or in the right of the Corporation is limited to reasonable expenses incurred in connection with the proceeding.

## INDEMNIFICATION OF OFFICERS, EMPLOYEES AND AGENTS

46.  An officer of the Corporation is entitled to mandatory indemnification and is entitled to apply for court ordered indemnification, in each case to the same extent as a Director; and the Corporation may indemnify and advance expenses under this Article to an officer, employee, or agent of the Corporation to the same extent as to the Director.

## NUMBER OF DIRECTORS

47. The Corporation shall always have at least three (3) but may have as many as twelve (12) Directors which shall be decided by the election of the number of Directors decided upon by the stockholder at any annual or special stockholders meeting at which the election of Directors is properly considered.

## ASSISTANT OFFICERS

48. The Chairman of the Board may, at any time, at any meeting, with or without notice, appoint one or more assistants to any officer for the purpose of handling the specific tasks in the absence of the officer whom the assistants are designated to assist. These officers shall be known as "Assistant Vice Presidents, Assistant Secretary, Assistant Chief Financial Officer/Assistant Treasurer," etc. as the case may be.





## J. ROBERT WOOLEY

### ACTING COMMISSIONER OF INSURANCE

I, THE UNDERSIGNED COMMISSIONER OF INSURANCE OF THE STATE OF LOUISIANA, DO HEREBY CERTIFY THAT

A certified copy of the ___Amendment to Articles of Incorporation___

of the ___**AFBA LIFE INSURANCE COMPANY**___

an insurance company organized under the laws of the State of Louisiana, domiciled at ___Baton Rouge___, Louisiana, Parish of ___East Baton Rouge___, being by act before ___Roselind P. Douglas___ Notary in and for the City of ___Alexandria___, State of Virginia, on the ___11th___ day of ___October___, 2000, and recorded in the Original Book of the Clerk of Court of the Parish of ___East Baton Rouge___ on the ___26th___ day of ___October___, 2000, was filed in this office at ___11:00 A.M.___ on the ___13th___ day of ___November___, 2000.

**Amendment effective: October 26, 2000**

**Company Name Change to 5 Star Life Insurance Company**

Given Under my signature, authenticated with the impress of my Seal of office, at the City of Baton Rouge, this ___13th___ day of ___November___ A.D. 2000

J. Robert Wooley
Acting Commissioner of Insurance

*AFBA LIFE INSURANCE COMPANY*

*AMENDMENT*
*to*
*ARTICLES OF INCORPORATION*

The undersigned, Chairman of the Board of *AFBA LIFE INSURANCE COMPANY* ("the Corporation") does hereby certify that resolutions amending the Articles of Incorporation of the Corporation (effective October 16, 2000) were duly adopted pursuant to Louisiana R.S. 12:31 *et seq.* and Louisiana R.S. 22:31 *et seq.*, by the unanimous written consent of the shareholders of the Corporation.

The Articles of Incorporation of the Corporation were amended by said resolutions as follows:

Article I is hereby amended to read in its entirety as follows, effective October 16, 2000:

*ARTICLE I*

"The name of the corporation is *5 STAR LIFE INSURANCE COMPANY*."

*5 STAR LIFE INSURANCE COMPANY*

Dated:  October 11, 2000                    By: _Charles C. Blanton_
                                                  Charles C. Blanton
                                                  Lt. General, USAF (Ret.)
                                                  Chairman of the Board

*ACKNOWLEDGEMENT*

*COMMONWEALTH OF VIRGINIA*
*CITY OF ALEXANDRIA*

*BE IT KNOWN,* that on the 11th of October 2000, before the undersigned Notary Public, duly commissioned, qualified, and sworn within

and for the Commonwealth and City aforesaid, personally came and
appeared Charles C. Blanton, to me known to be the identical person who
executed the above and foregoing Amendment to Articles of Incorporation,
who declared and acknowledged to me, a Notary, in the presence of the
undersigned competent witnesses, that he executed the above and foregoing
Amendment to Articles of Incorporation of his own free will, as his own act
and deed, for the uses, purposes and benefits therein expressed.

**WITNESS:**

Jeffrey C. Sandefur
Secretary

Marshal L. Cole, Esq.
Assistant Secretary

Rosalind P. Douglas,
~~Mark A. Centanni~~ Rosalind P. Douglas
Notary Public
My Commission Expires: 7/31/03

APPROVED FOR RECORDATION

DATE: 10/04/00

FOR: Commissioner of Insurance
     State of Louisiana

- 2 -