CHARLES L. DEEM, Bar No. CA-110557
BROOKE L. KILLIAN, Bar No. CA-239298
charles.deem@dlapiper.com
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701

Attorneys for Defendants
ARMED FORCES BENEFIT ASSOCIATION,
5STAR LIFE INSURANCE, LLC, and
5STAR FINANCIAL LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| BRAD LOVESY and PACIFIC CONSOLIDATED INVESTMENTS, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>ARMED FORCES BENEFIT ASSOCIATION, THE 5STAR ASSOCIATION, 5 STAR FINANCIAL, LLC, 5STAR FINANCIAL SERVICES COMPANY, and 5STAR LIFE INSURANCE COMPANY; TED SHUEY, individually, doing business as THE SHUEY AGENCY, INC., and TGS GROUP, INC.,<br><br>Defendants. | CASE NO. C 07-2745 SBA<br><br>**DECLARATION OF MICHAEL KIMO WONG IN SUPPORT OF 5STAR FINANCIAL LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Date:      February 26, 2008<br>Time:      1:00 p.m.<br>Courtroom: 3<br>Judge:     Hon. Saundra B. Armstrong |

I, Michael Kimo Wong, hereby declare as follows:

1.  I am a resident of the State of Virginia and over the age of eighteen years. I have personal knowledge of each of the facts set forth in this declaration and if required, could and would competently testify thereto.

2.  I am the Senior Vice President for Regional Operations for 5Star Life Insurance Company ("5Star Life"). Through the course of my employment at 5Star, I have become familiar with the corporate structure and business of 5Star Financial LLC ("5Star Financial"), a financial services holding company that owns of 5Star Life and other corporate entities.

1

3.   5Star Financial is a limited liability company existing under the laws of the Commonwealth of Virginia. 5Star Financial is a for-profit corporation.

4.   The only piece of real property owned by 5Star Financial is its place of business in Alexandria, Virginia. This is 5Star Financial's only place of business.

5.   5Star Financial has only one member/shareholder, who resides in Virginia.

6.   5Star Financial is a financial services holding company, with three for-profit, fully operational subsidiaries, 5Star Bank, 5Star Life, and AFBA 5Star Investment Management Co. (the "For-Profit Entities"), and four limited operational subsidiaries.

7.   Armed Forces Benefit Association ("AFBA"), a non-profit voluntary employees' beneficiary association, has made arm's length investments in the For-Profit Entities. The For-Profit Entities provide services and products to the general marketplace, including to members of AFBA.

8.   5Star Financial has no business operations of its own, other than its role as landlord of a single Virginia-based commercial premise. 5Star Financial does not produce, market, purchase, or sell any goods or services.

9.   5Star Financial does not have any offices, facilities, places of business, employees, telephone listings, or mailing addresses in California.

10.  5Star Financial has never been subject to, or paid taxes in, California.

11.  5Star Financial has never owned real property in California.

12.  5Star Financial is not, and has never been, required to have a designated agent for service of process in California.

13.  5Star Financial has never held board or shareholder meetings in California.

14.  5Star Financial has no independent website and produces no catalogues.

15.  5Star Financial does not maintain a phone number through which consumers may access 5Star Financial.

16.  With one exception, AFBA and 5Star Financial have no overlapping officers, directors, or employees.

/////

17. AFBA does not control, or exercise oversight of, 5Star Financial's decisions. In fact, except with respect to ownership of the Virginia-based premises described above in Paragraph 8, 5Star Financial makes no operational decisions.

18. AFBA plays no role in the day-to-day management of 5Star Financial.

19. AFBA only interacts with 5Star Financial to the extent that such interaction is necessary to invest in the subsidiary companies of 5Star Financial.

20. 5Star Life is purposed principally with providing life insurance products to members of the Armed Forces. 5Star Financial's purpose and goals as a financial services holding company are much broader than those of 5Star Life.

21. With one exception, 5Star Life and 5Star Financial share no officers and/or directors.

22. 5Star Financial does not control and does not review 5Star Life's decisions.

23. 5Star Financial does not participate in 5Star Life's day-to-day management.

24. 5Star Financial would not engage in the business of selling life insurance products in the absence of 5Star Life.

25. All of the AFBA, 5Star Financial, and 5Star Life witnesses with knowledge related to this suit, as well as any relevant documents, are located in Virginia, where defendants AFBA, 5Star Life, and 5Star Financial reside.

26. 5Star Financial is not party to any of the contracts referenced in Plaintiff Brad Lovesy's ("Lovesy") Second Amended Complaint ("SAC").

27. Attached hereto as Exhibit A is a true and correct copy of an agreement between Brad Lovesy and AFBA Life Insurance Company titled "Field Service Representative Agreement." Mr. Lovesy executed the agreement on March 22, 2001. I executed the agreement on behalf of AFBA Life on April 6, 2001. The Field Service Representative Agreement is referenced by Mr. Lovesy in paragraph 22 of the SAC.

28. Attached hereto as Exhibit B is a true and correct copy of an agreement between Brad Lovesy and 5Star titled "Field Service Representative Compensation Addendum." Mr. Lovesy executed the agreement on June 4, 2003. I executed the agreement on behalf of 5Star

1 | on June 20, 2003. The Field Service Representative Compensation Addendum is referenced by
2 | Mr. Lovesy in paragraph 19 of the SAC.

3 |     29.    Attached hereto as Exhibit C is a true and correct copy of an agreement between
4 | Pacific Consolidated LLC and 5Star titled "Regional Sales Director Agreement." Pacific
5 | Consolidated LLC was the broker under whom Mr. Lovesy formerly operated. Mr. Lovesy and
6 | Blossom S. Osofsky executed the agreement on behalf of Pacific Consolidated LLC on May 31,
7 | 2001 and May 14, 2001, respectively. I executed the agreement on behalf of 5Star on
8 | September 10, 2001. The Regional Sales Director Agreement is referenced by Mr. Lovesy in
9 | paragraph 19 of the SAC.

10 |     I declare under penalty of perjury under the laws of the State of California and the United
11 | States of the America that the foregoing is true and correct and that this declaration was executed
12 | on December 19, 2007 in Alexandria, Virginia.

_____
MICHAEL KIMO WONG

DLA PIPER US LLP
SAN DIEGO

SD\1776950.1
332602-3

4

DECLARATION OF MICHAEL KIMO WONG IN SUPPORT OF DEFENDANT 5STAR
FINANCIAL LLC'S MOTION TO DISMISS    CASE NO. C 07-2745 SBA



# *FIELD SERVICE REPRESENTATIVE*

The *AFBA Life Insurance Company* (hereinafter "the Company")

__BRAD LOVESY__  
Contractor Name

__WA205BM__  
FSR#

in consideration of the mutual promises and agreements set forth herein, hereby agree as follows:

I. **APPOINTMENT AND RELATIONSHIP**

A. The Company hereby appoints you a Field Service Representative (hereinafter "FSR") to act on its behalf and represent it only to the extent authorized herein.

B. Your performance hereunder shall be conducted as an independent contractor with respect to the Company, and nothing contained herein shall create or be construed to create the relationship of employer and employee, or partner between the Company and you or between the Company and any employee of yours.

II. **AUTHORITY OF THE FSR**

A. You are hereby authorized to solicit and obtain applications for the approved products offered by the Company which are listed in the attached pages titled **Field Service Representative Compensation Addendum (Schedule B)**. However, this authorization is limited to those states where the Company's underwriters are authorized to do business, and the condition that you are in compliance with all applicable governmental regulatory licensing requirements at the time of solicitation.

B. At all times during the term of this Agreement, you shall be properly appointed and maintain in full force and effect all governmental regulatory licenses necessary or appropriate to the performance of this Agreement.

C. You are authorized to collect the initial two months' premium for any policy or contract issued upon application solicited by you, and to service policies, contracts, and certificates of group coverage so issued, upon the following conditions:

   1. All check or money orders are to be made payable to the Company. In no event are you authorized to accept any check or money order not specifically made payable to the Company.
   2. All such premium payments shall be received and held in a fiduciary capacity by you as trustee of the Company and remitted to your Regional Director. Receipts are to be issued for all cash payments.

D. You are authorized to publish advertising material referencing the Company's name, its products or services only upon the prior written approval of the Company Compliance Officer.

Form 101 (4/00)                    Page 1 of 5

III. **_LIMITATION OF AUTHORITY_**

A. You do not have the authority to make, alter, modify or discharge any policy or contract; extend any provision thereof; extend the time for payments; waive any forfeiture; incur any debts or expenses for which the Company may be liable; receive any monies for the Company except as may be herein or elsewhere specifically be authorized in writing by a Company vice president; withhold or convert to your own use or for the benefit of others, any monies, securities, contracts, certificates or receipts belonging to the Company; or fail to submit promptly to the Company any completed application for membership; or accept payments other than in current funds of the United States.

B. You do not have the authority to endorse or present for collection any check, draft or other instrument made payable to the Company.

IV. **_PROVISIONS RELATING TO ALL FEES PAID_**

A. You shall remit promptly to the Company gross payments and other monies received or collected on behalf of the Company in the form of premium payments and shall not deduct or retain fees which may be payable hereunder.

B. All fees due for business approved will be paid by the Company on or about the 10th and 25th of each month or the Friday before when the 10th or 25th day falls on a weekend.

C. Any fees to which you may be entitled hereunder shall be payable to you only after the due date of the payment and after receipt of the gross payment by the Company at its home office. Any commission paid to agents working under you reduces your compensation by that amount.

D. There shall be no additional compensation or reimbursement to you for costs or expenses incurred in performing services hereunder.

E. You will continue to receive the full override of the broker's business submitted by subcontractors, even if subcontractors are no longer contracted along with all renewals on whole life business written under prior agreements provided you are an active producer in good standing with the Company.

F. If this Agreement is terminated, no fees shall be payable hereunder for services or work performed subsequent to the date of termination.

G. Fees payable according to the Company's fee schedule may be amended by notice in writing from the Company and such amendment shall take effect at the time specified in the notice. Notices shall be mailed to your last known address as reflected in the Company's records.

H. This Agreement will terminate immediately upon your death, and any fees due and payable to you at the time of your death or thereafter under this Agreement shall be paid to the executor or administrator of your estate, or to your assigns, as applicable.

V.  **GENERAL PROVISIONS**

A. Conduct of FSR: You shall be free to exercise personal judgment as to the time and manner of performing services authorized under this Agreement, but shall be guided by such rules as may be adopted by the Company concerning general business conduct. In all cases, you shall perform hereunder in strict accordance with the laws and regulations of the jurisdiction in which you are authorized to represent the Company, in observance of the highest standards of professional conduct and integrity.

B. Training/Conduct of Sub-Contractor: You are responsible for assuring that subcontractors employed by you are trained properly on all Company insurance products and operating procedures, including correctly filling out applications, medical requirements, and conducting their affairs in accordance with the highest standards of integrity. These subcontractors must be licensed and appointed prior to any sales activity.

C. Prior Contract Superseded: This Agreement shall supersede any and all prior agreements between the parties hereto, whether written or oral except for payments of renewals as pertains to active FSR agreements where producers are in good standing with the Company.

D. Signed Ethical Code of Agent Market Conduct must be on file at AFBA Life.

E. Terminated Cases: The FSR is responsible for all charge backs of subcontractors.

F. The following AFBA Life and AFBA Whole Life and Universal products sold and subsequently terminated in the first twelve (12) month will have fees on commission charged back to your account and repaid to the Company according to the following schedule:

```
Terminations   within four months    —100%
               5 - 8 months          —50 %
               9 - 12 months         —25%
               after 12 months       —0
```

G. Escrow Account: The Company may elect to retain in escrow for the charge back period all or any portion of fees accruing from enrollment of applicants, pending satisfactory maintenance of scheduled premium payments.

H. Indebtedness:

1.  You hereby grant to the Company a first security interest in all fees becoming due hereunder to secure any indebtedness to the Company; and the Company may at any time apply fees payable to you hereunder or any other monies payable to you by the Company to reduce any such outstanding indebtedness.

2.  Your entire indebtedness to the Company as recorded in the records of the Company, may, at the election of the Company, be deemed due and payable in full at any time.

3.  In addition to payment of the principal sum of any indebtedness to the Company, you shall also be liable for any costs, including reasonable attorney fees and other collection expenses, incurred by the Company in connection with the recovery from you of such indebtedness.

I. Assignment: No assignment or other transfer by you of any right, title or interest herein, or of any benefits accruing hereunder, in whole or in part, shall be valid and any such attempted assignment of transfer shall be void unless the written consent of the Company thereto has first been given. Any assignee of rights or benefits hereunder shall be subject to all the terms and provisions hereof.

J. <u>Amendment</u>: This Agreement may be amended at any time by written notice from a duly authorized officer of the Company.

K. <u>Hold Harmless</u>: You agree to indemnify and hold the Company harmless from any losses, expenses, costs or damages resulting from acts or omissions on your part constituting a breach of any of the terms of this Agreement.

## VI. TERMINATION

A. This Agreement may be terminated without cause by either party upon at least thirty (30) days prior written notice to the other party. Such termination shall be effective thirty (30) days after the mailing of written notice thereof, or on the date specified in such notice, if later.

B. This Agreement may be terminated immediately by the Company without notice for "cause" which terms shall include, but not be limited to, the following:

1. Allegations or commissions of a fraudulent, illegal or dishonest act by you.

2. Violation of the laws, regulations, or rules of any jurisdiction in which you operate, or of any governmental authority exercising jurisdiction over you.

3. Breach of any provision of this Agreement, including, but not limited to the performance of your responsibilities under this Agreement in bad faith.

Termination for "cause" may, at the option of the Company, result in forfeiture of all unpaid fees which may be due to you under this Agreement as of the termination date or thereafter.

## VII. SIGNATURE

I hereby acknowledge that I have read and understand the provisions of the foregoing Field Service Representative Agreement (Form 101) 1/97. I further acknowledge that said Agreement will not be deemed in effect until such time as I am in receipt of the counter-signed copy of this signature page of the Agreement.

### 1. FIELD SERVICE REPRESENTATIVE:

Name (Print or Type): BRAD LOVESY

Signature: [signed]

City, State: GUALALA, CA

Date: 3-22-01

### 2. REGIONAL SALES DIRECTOR:

Name:

Signature:

City, State:

Date:

### 3. VICE PRESIDENT OF REGIONAL OPERATIONS:

Name:

Signature: [Michael F. Ohng]

City, State:

Date: APR 6 2001

### 4. SENIOR VICE PRESIDENT:

Name:

Signature: [signed]

City, State:

Date: APR 6 2001

Form 101 (4/00)    Page 5 of 5



# B

FSR Name (print) BRAD LOVESY

## Field Service Representative Compensation Addendum

### FSR1



EVA360

I.  ID3 Products*

| | Yr 1** | Yr 2 | Yr 3 | Yr 4 | Yr 5 | Yr 6 | Yr 7+ |
|---|---|---|---|---|---|---|---|
| Military Better Alternative | 100% | 0 | 0 | 0 | 0 | 0 | 0 |
| Military Better Alternative Active Duty (Age under 30; single no children) | 0% | 0 | 0 | 0 | 0 | 0 | 0 |
| 5Star Group Level Term | 80% | 0 | 0 | 0 | 0 | 0 | 0 |
| Family Protection Plan | 50% | 0 | 0 | 0 | 0 | 0 | 0 |
| Economizer Whole Life | 80% | 5% | 5% | 5% | 5% | 0 | 0 |
| Universal Life | 80% | 5% | 5% | 5% | 5% | 0 | 0 |
| Universal Life – Excess Premium | 3% | 2% | 2% | 1% | 1% | 0 | 0 |
| Group Silver Premier WL | 80% | 5% | 3% | 3% | 3% | 0 | 0 |
| Select Term | 80% | 0 | 0 | 0 | 0 | 0 | 0 |
| Ind. Level Term | 65% | 0 | 0 | 0 | 0 | 0 | 0 |
| Ind. Select Term | 80% | 0 | 0 | 0 | 0 | 0 | 0 |
| Ultimate Select Term to 100 | 80% | 0 | 0 | 0 | 0 | 0 | 0 |

** commissionable premium FY only; target premium for U.L.; option B will be based on option A premium)

II.  Multiple Employer Trust

| Commission | Annual Premium | |
|---|---|---|
| 10% | First | $2,500 |
| 9% | next | $2,500 |
| 8% | next | $5,000 |
| 6% | next | $15,000 |
| 2% | next | $25,000 |
| 1% | next | $50,000 |
| .5% | next | $150,000 |
| .25% | next | $250,000 |

**Note Lower level FSR compensation will be deducted from gross commissions

Accepted:

_[signature]_  6/4/03
FSR Signature    (Date)

5Star Life Insurance Company:

_[signature]_
Regional Sales Director

_[signature]_
Regional Vice President

JUN 2 0 2003

FSR1 COMP 6/03    This agreement supersedes all previous commission schedules and addendums [/Title (l) /Author (AFBA_USER) /Subject() /Keywords () /Cre



PACIFIC CONSOLIDATED LLC



5STAR LIFE INSURANCE COMPANY
909 North Washington Street   Alexandria, VA 22314

# REGIONAL SALES DIRECTOR AGREEMENT

5Star Life Insurance Company ("the Company") hereby appoints

**PACIFIC CONSOLIDATED LLC**  ("You") as Regional Sales Director in the region of
<u>Name</u>

_____ to be responsible for recruiting and developing sales manpower
<u>Region</u>

and sales production in said region upon the following terms and conditions:

### I. Compensation to be paid by the Company

Override on business produced by the Field Service Representative recruited by or assigned to the Regional Sales Director according to attached schedules. Bonuses are deemed to be a part of override.

### II. Charge-backs

There will be a charge-back of overrides (including bonuses) received consistent with charge-backs outlined in the Field Service Representative Agreement. In all cases, you will be charged back for your portions of all monies earned by all Field Service Representatives under this Agreement.

### III. Disbursement of Monies

With the exception of a License Only Agreement (LOA), all sales payments will be paid by the Company directly to Field Service Representatives. Should you elect to contract an agent under the License Only Agreement, all sales payments will be paid directly to you as Regional Director, and subsequently, you will incur all debt associated with terminations, commission advances, and charge-backs of that agent.

### IV. Regulatory Responsibilities

You and all Field Service Representatives representing and conducting business on behalf of the Company in your Regional Sales Director area of responsibility, must maintain in good standing all necessary regulatory licenses and appointments to represent the Company.

You, and all Field Service Representatives in your region, agree to keep confidential, protect, secure, and not share, reveal, or disclose to any party other than the Company, any personal customer information that is received in applications or forms associated with life insurance benefits or programs underwritten by the Company. This is Company policy in accordance with the Federal Privacy Act.

(FORM ALRSDA-100) 4/01

PACIFIC CONSOLIDATED LLC

### V. Advertising

You are authorized to publish advertising material referencing the name of the Company, its products or services only *upon prior written approval* of the compliance officer of the Company.

### VI. Minimum Performance Guidelines for Agreement Continuation

You agree to recruit and develop Field Service Representatives for the Company using the standard Field Service Representative Agreement.

Minimum Regional Annual Production:
Number of Applications:    600

### VII. Renewals

The renewal payments, as described in the Field Service Representative Agreement, will be payable as long as your commission account is in good standing.

### VIII. Termination With Or Without Cause

This Agreement may be terminated by either party with or without cause, upon written notice sent to the last known address. Should this Agreement be terminated by either party, all Company Field Service Representatives previously associated as being in your region, may be reassigned to a new Regional Sales Director or other named individual at the discretion of the Company.

*Appointment Accepted and Agreed to:*

**REGIONAL SALES DIRECTOR:**

Blossom S. Osofsky  _____  5/14/01
Signature                  Date

Blossom S. Osofsky
Name (Print)

Brad Lovesy  _____  5/31/01
Signature           Date

Brad Lovesy
Name (Print)

Address: _____

**5 STAR LIFE INSURANCE COMPANY:**

Michael F. Olong _____  SEP 1 0 2001
Regional Vice President        Date

_____  SEP 1 0 2001
Chief Operating Officer        Date

(FORM ALRSDA-100) 4/01