United States District Court
For the Northern District of California

1

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7   BRAD LOVESY and PACIFIC                    No. C 07-2745 SBA
    CONSOLIDATED INVESTMENTS,
8   INC., a Nevada corporation,               **ORDER**

9              Plaintiff,                      [Docket Nos. 39, 40, 41, 43, 44 & 48]

            v.
10
    ARMED FORCES BENEFIT
11  ASSOCIATION, THE 5STAR
    ASSOCIATION, 5 STAR FINANCIAL,
12  LLC, 5STAR FINANCIAL SERVICES
    COMPANY, and 5STAR LIFE
13  INSURANCE COMPANY; TED
    SHUEY, individually, doing business as
14  THE SHUEY AGENCY, INC., and TGS
    GROUP, INC.,
15
               Defendants.
16  _____/

17

18          Currently before the Court are:

19  1.    Defendants Armed Forces Benefit Association and 5Star Life Insurance Company's Motion to

20        Strike and for a More Definite Statement Regarding Portions of Plaintiff Brad Lovesy's Second

21        Amended Complaint [Docket No. 39];

22  2.    Defendants Armed Forces Benefit Association and 5Star Life Insurance Company's Motion to

23        Dismiss Plaintiff Brad Lovesy's Second Amended Complaint [Docket No. 40];

24  3.    Defendants TGS Group, Inc., The Shuey Agency, Inc., and Ted Shuey's Motion to Strike the

25        Amended Complaint or in the Alternative Motion for a More Definite Statement [Docket No.

26        43];

27  4.    Defendants TGS Group, Inc., The Shuey Agency, Inc., and Ted Shuey's Motion to Dismiss TGS

28        for Lack of Personal Jurisdiction, and Plaintiff's Third, Fourth, Seventh, and Eighth Causes of

1    Action in the Second Amended Complaint  [Docket No. 44];

2    5.    Defendant 5Star Financial LLC's Motion to Dismiss Plaintiff Brad Lovesy's Second Amended

3          Complaint for Lack of Personal Jurisdiction [Docket No. 48].

4    Having read and considered the arguments presented by the parties in the papers submitted to the Court,

5    the Court finds this matter appropriate for resolution without a hearing.

6                                          **BACKGROUND**

7    **I.    Factual Background**

8          The following allegations are contained in the Second Amended Complaint ("SAC") and four

9    contracts referenced in the SAC[1].  Lovesy entered into the Representative Agreement and the Director

10   Agreement (collectively, the "Agreements") with AFBA Life Insurance Company ("AFBA Life") and/or

11   5Star's Life Insurance on or about March 22, 2001 and September 10, 2001, respectively. SAC at ¶¶ 19,

12   22. Pursuant to the Agreements, Lovesy was to serve as a Regional Sales Director for AFBA Life and

13   was permitted to sell 5Star's Life Insurance products as a Field Service Representative. *Id*. at ¶¶ 20, 23.

14   The Agreements provide that any party may terminate the Agreements with or without cause; the

15   Representative Agreement requires 30 days' written notice prior to termination. Representative

16   Agreement, at ¶ VI(A); Director Agreement, at ¶ VIII.

17         In approximately August 2004, Lovesy entered into a Memorandum of Agreement with The

18   Shuey Agency, Inc. (the "TGS Agreement"), under which The Shuey Agency, Inc. would provide

19   administrator services to Lovesy, including implementation of payroll deductions for the premiums due

20   for all 5Star policies. *Id*. at ¶¶ 28-29; TGS Agreement, at pp. 1. The TGS Agreement prohibits Lovesy

21   from marketing life insurance products other than those provided by AFBA Life in presentations for the

22   ─────────────────

23         [1]The Court may consider documents referenced in a complaint if the documents are central to
     the plaintiff's claims. For the purpose of this motion, the Court considers the following documents
24   referenced in Lovesy's SAC: (1) Regional Sales Director Agreement dated on or about September 10,
     2001 (the "Director Agreement"); (2) Regional Sales Director Compensation Addendum amending the
25   Regional Sales Director Agreement and dated on or about June 19, 2003 (the "Compensation
     Addendum"); (3) Independent Field Service Representative Agreement dated on or about March 22,
26   2001 (the "Representative Agreement"); and (4) Memorandum of Agreement between Lovesy and Ted
     Shuey Agency dated on or about August 31, 2004 (the "TGS Agreement").

27

28                                              2

United States District Court
For the Northern District of California

1  California National Guard. (TGS Agreement, at ¶ 1(a).)

2      Early in his relationship with TGS, Lovesy became unhappy with the manner in which TGS

3  processed applications. SAC ¶¶ 32. Lovesy also claims TGS began to solicit business in portions of the

4  Alleged Assigned Region. *Id*. ¶ 40. Purportedly as a result of Lovesy raising concerns about the

5  propriety of the marketing of AFBA Life and 5Star's insurance offerings, TGS cancelled the TGS

6  Agreement at some point after February 28, 2006. *Id*. ¶ 45. Lovesy's relationship with 5Star ended

7  when, on May 7, 2007, 5Star sent Lovesy notice of "intent to terminate his agreement" as of June 7,

8  2007. *Id*.¶ 50.

9  **II.     The Instant Lawsuit**

10     On May 24, 2007, Lovesy filed a complaint for civil damages. The currently operative

11  complaint, the Second Amended Complaint, was filed on November 16, 2007. The SAC asserts four

12  causes of action against AFBA and 5Star: (1) breach of contract; (2) breach of the covenant of good

13  faith and fair dealing; (3) violation of California's unfair competition law; and (4) an accounting.

14  Additionally, the SAC alleges claims against Ted Shuey, the Shuey Agency, Inc., and TGS Group Inc.

15  (collectively, the "Shuey Defendants") for (1) breach of contract; (2) breach of the covenant of good

16  faith and fair dealing; (3) violation of California's unfair competition law; (4) intentional interference

17  with contract; (5) intentional interference with prospective economic advantage; and (6) fraud. Several

18  of Lovesy's theories of recovery are dependent on his allegations that AFBA and 5Star are the alter egos

19  of the other defendants.

20     Further, in connection with his unfair competition law claim under California Business and

21  Professions Code section 17200 ("UCL"), Lovesy seeks damages and nonrestitutionary disgorgement.

22                                LEGAL STANDARDS

23  **I.     Motion to Strike**

24     Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from any

25  pleading . . . any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f).

26  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or

27

28                                          3

United States District Court
For the Northern District of California

1    the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993) (citing 5

2    Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07 (1990)), *rev'd*

3    *on other grounds*, 510 U.S. 517 (1994). "'Impertinent' matter consists of statements that do not pertain,

4    and are not necessary, to the issues in question." *Id.* A motion to strike may be used to strike any part

5    of the prayer for relief when the relief sought is not recoverable as a matter of law. *Bureerong v.*

6    *Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).

7    **II.    Motion to Dismiss**

8         Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the

9    plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell*

10   *Atlantic Corp. v. Twombly*, 127 S.Ct. 1955,1960 (2007). For purposes of such a motion, the complaint

11   is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are

12   taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest & Jennings, Inc. v. American*

13   *Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994). All reasonable inferences are to be drawn in favor

14   of the plaintiff. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

15        The court does not accept as true unreasonable inferences or conclusory legal allegations cast

16   in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981);

17   *see Miranda v. Clark County, Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002) ("[C]onclusory allegations of

18   law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim.");

19   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 987, *as amended by* 275 F.3d 1187 (9th Cir.

20   2001)("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted

21   deductions of fact, or unreasonable inferences.").

22        When a complaint is dismissed for failure to state a claim, "leave to amend should be granted

23   unless the court determines that the allegation of other facts consistent with the challenged pleading

24   could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d

25   1393, 1401 (9th Cir. 1986). Leave to amend is properly denied "where the amendment would be futile."

26   *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

27

28
                                  4

United States District Court
For the Northern District of California

### III.    Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides the district court with the authority to dismiss an action for lack of personal jurisdiction. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  Where the defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of proving personal jurisdiction; he cannot simply rest on the bare allegations of the complaint. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

In order to withstand a motion to dismiss for lack of personal jurisdiction in the initial stages of litigation, however, the plaintiff need only "make, through [his] pleadings and affidavits, a prima facie showing of the jurisdictional facts." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001). "That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  In ruling on a Rule 12(b)(2) motion, the pleadings are to be viewed in a light most favorable to plaintiff and all doubts are to be resolved in his favor. *See Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 n.1 (9th Cir. 1995).

### IV.    Request for Judicial Notice

Federal Rule of Evidence 201(b) permits judicial notice of facts "not subject to reasonable dispute" in that they are either "(1) generally known within the territorial jurisdiction or the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court may take judicial notice of matters of public record outside the pleadings on a motion to dismiss. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).  Specifically, a court may take judicial notice of the authenticity and existence of a particular order, motion or pleading.  See *U.S. v. Southern California Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004); *see also Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208 (N.D. Cal. 2002) (taking judicial notice of two state court decisions and a legal memorandum filed in a state court action on the grounds that they are public documents).

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANALYSIS**

Both AFBA and 5Star on the one hand and the Shuey Defendants on the other have filed motions to strike as well as motions to dismiss. The Court first addresses the motions to strike.

## I.    Motions to Strike

### A.    AFBA and 5Star's Motion

AFBA and 5Star move to strike portions of the SAC regarding Lovesy's alter ego allegations and prayer for damages.

#### 1.    Alter Ego Allegations

AFBA and 5Star contend that Lovesy's alter ego allegations are conclusory and without any alleged factual basis, and therefore the Court should strike paragraphs 7 and 12 of the SAC. In *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003), the court explained that "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Id.* at 1116. These two elements are 1) a unity of interest or ownership between a corporation and its individual owner and 2) that if the acts are treated as those of the corporation alone, an inequitable result will follow. *Id.* at 1115-1116.

In Paragraph 12, Plaintiffs asserts AFBA and 5Star are each the "agent, servant, employee, successor, assign, or alter ego" of the Shuey Defendants, and that AFBA and 5Star performed each of the acts alleged in the complaint "within the scope of [its] authority, and with the permission and consent of each other Defendant." However, Lovesy fails to allege any facts supporting these allegations. Such a conclusory recitation of the elements of alter ego liability are insufficient to plead alter ego liability under Federal Rule of Civil Procedure 8(a). *Neilson*, 290 F. Supp. 2d 1101. At a minimum, Lovesy must set forth "sufficiently specific factual allegations" to support an alter ego claim in order to overcome a motion to dismiss. It is not sufficient, at the pleading stage, to make conclusory allegations of control. *In re Sunbeam Corp.*, 284 B.R. 355, 366 (Bkrtcy. S.D.N.Y. 2002). In order to withstand a motion to dimiss, the plaintiff must, at a minimum, "se[t] forth some examples of alleged

**United States District Court**
For the Northern District of California

1  domination;" Plaintiffs have failed to do so. *Id.*

2      Plaintiffs respond that they have sufficiently pleaded the elements of alter ego liability, in that

3  they have sufficient alleged that the parties were jointly engaged in a common tortious and fraudulent

4  scheme against plaintiff, and therefore, there is a "unity of interest" between the parties. Reply at 3.

5  However, this response misapprehends the nature of the "unity of interest" requirement. The question

6  is not whether the alleged alter egos engaged in a common scheme; the question is rather whether there

7  is "a unity of interest" as to *ownership* between a corporation and its individual owner. *Neilson*, 290 F.

8  Supp. 2d 1101. The mere fact that two entities allegedly jointly committed torts against Plaintiffs has

9  no bearing on the question of alter ego liability.

10      Additionally, in order to withstand a motion to strike, Lovesy must allege that AFBA, 5Star, and

11  5Star Financial abused their corporate status to effectuate a fraud or injustice. *See Erkenbrecher*, 187

12  Cal. at 11; *see also Acciai Speciali Terni USA, Inc. v. Momene*, 202 F. Supp. 2d 203, 207 (S.D.N.Y.

13  2002). With respect to this element, "that if the acts are treated as those of the corporation alone, an

14  inequitable result will follow," plaintiff offers no argument at all other than to point to various

15  paragraphs of the SAC that allegedly support this element (*i.e.* SAC ¶¶ 32-35, 39, 43-44). However,

16  these paragraphs  relating factual portions of plaintiff's claims against defendants simply have no

17  bearing on the question of alter ego liability and Plaintiffs make no attempt to connect these allegations

18  to the alter ego claims.

19      As a result, the allegations in paragraphs 7 and 12 cannot establish alter ego liability and

20  therefore have no bearing on any issue involved in this litigation. *See Colaprico v. Sun Microsystems,*

21  *Inc.*,  758 F.Supp. 1335, 1339 (N.D.Cal. 1991). The Court grants AFBA and 5Star's motion to strike

22  paragraphs 7 and 12. *See* Fed. R. Civ. Proc. 12(f).

23

24          **2.    Constructive Trust Allegations**

25      Lovesy alleges a constructive trust in connection with his cause of action under the UCL.

26  Specifically, Lovesy claims that AFBA and 5Star "deprived [Lovesy] of the benefits to which he is

27

28                                            7

1   entitled" and therefore "Defendants are involuntary trustees holding any proceeds obtained therefrom

2   in constructive trust." SAC ¶ 102. Lovesy then alleges, "defendants have  unjustly enriched by their

3   wrongful conduct, which thereby justifies the imposition of a constructive trust." SAC¶ 103.

4       However, Lovesy is not entitled to restitution under any theory alleged in the SAC. Lovesy has

5   no vested right to the commissions purportedly deprived of him, and therefore, his request for restitution

6   is improper. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1146-47 (2003). Lovesy's

7   allegations in paragraphs 102 and 103 of the SAC can only relate to an improper claim for

8   nonrestitutionary disgorgement, and are in that respect, impertinent and immaterial. *Bureerong*, 922 F.

9   Supp. at 1479 n.34. Accordingly, AFBA and 5Star's motion to strike is granted with respect to

10  paragraphs 102 and 103 of the SAC.

**B.      Shuey Defendants' Motion**

**1.      Alter Ego Allegations**

13      Defendants argue that Plaintiffs have not sufficiently alleged that the Shuey defendants have

14  abused the corporate form such that "if the acts are treated as those of the corporation alone, an

15  inequitable result will follow." In paragraph 11, Plaintiffs allege, without any explanation, that honoring

16  the corporate form of The Shuey Agency and TGS "would perpetrate a fraud upon the creditors of TSA

17  [The Shuey Agency] and TGS, including Mr. Lovesy." SAC ¶ 11. However, aside from this boilerplate

18  recitation of this element of alter ego liability, there is nothing alleged to support any claim that The

19  Shuey Agency or TGS abused their corporate privilege in bad faith or with the intent of prejudicing

20  creditors, such as Mr. Lovesy. *See Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D.

21  313, 330 (C.D. Cal. 2004). Accordingly, Plaintiffs' conclusory allegations are insufficient to support a

22  finding of alter ego liability among Defendants.  As such, the Court grants the Shuey Defendants'

23  Motion to Strike paragraph 11.

**2.      Motion for a More Definite Statement**

25      In the absence of any proper alter ego allegations, the SAC is vague and ambiguous in that it

26  references Defendants jointly in all causes of action against them.  Accordingly, the Shuey Defendants'

27

28                                                                          8

United States District Court
For the Northern District of California

Motion for a More Definite Statement is GRANTED with respect to all references to "the Shuey Defendants". Plaintiffs must clarify each reference to "the Shuey Defendants" by specifying to which of TGS, The Shuey Agency, or Ted Shuey the phrase refers each time it appears in the SAC.

### 3.  Punitive Damages

The Shuey Defendants next argue that Plaintiffs' prayer for relief for punitive damages is improper because (1) Plaintiffs' claims sound in contract, not tort; (2) Plaintiffs cannot show by clear and convincing evidence that Defendants' conduct was oppressive, fraudulent, or malicious; and (3) no allegation of fraud has been properly pled by Plaintiffs.  To be awarded punitive damages, Plaintiffs must show:  (1) breach of an obligation by Defendants not arising from contract (i.e. that Defendants committed a tort); (2) Defendants committed a tort by clear and convincing evidence; and (3) in doing so, Defendants were guilty of oppression, fraud or malice.  Cal. Civ. Code § 3294(a).

As discussed more fully below, the Court concludes that plaintiffs have properly alleged tort claims against the Shuey Defendant, and therefore Plaintiffs may allege punitive damages. As such, the Court denies Defendants' Motion to Strike Plaintiffs' prayer for relief for punitive damages at lines 1-2, 9-10 on page 21 and lines 1-2 on page 22 of the SAC.

### 4.  Damages Under the UCL

Plaintiffs seek "damages according to proof" for violation of the Unfair Competition Law ("UCL"). SAC at 22, ln. 7. Under California law, there is no doubt that damages are not permissible under the UCL. Cal. Bus. & Prof. Code § 17203; *see also, e.g., Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992) ("damages are not available under Section 17203"). Federal courts have uniformly applied California law declaring damages impermissible under the UCL. *See, e.g., Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 624 (9th Cir. 1999). Accordingly, Defendants' Motion to strike Plaintiffs' prayer for relief for damages under the UCL is granted, and the Court strikes line 7 on page 22 of the SAC.[2]

---

[2]In recognition of the deficiency of their claims for damages, Plaintiffs provided the Court with "proposed amendments" to their complaint. However, Plaintiffs have not properly noticed any motion for leave to amend, and therefore the Court disregards these proposed amendments in analyzing the

**United States District Court**
For the Northern District of California

**II.    Motions to Dismiss**

    **A.    AFBA and 5Star's Motion**

In addition to their motion to strike, defendants AFBA and 5Star have moved for dismissal of the entire complaint.

        **1.    Unfair Competition Law Claim**

The Second Amended Complaint describes three theories under which Defendants allegedly violated the UCL: (1) Defendants allegedly required Lovesy to employ the Shuey Defendants to process policies, and the contract into which Lovesy and the Shuey Defendants entered prohibited Lovesy from selling insurance products to members of the California National Guard other than those offered by Defendants, in violation of California Business and Professions Code section 16600; (2) Defendants allegedly failed to process policies sales representatives, like Lovesy, sold to the public; and (3) Defendants allegedly refused to pay Lovesy commissions, overrides, and bonuses on sales made in the region purportedly assigned to him. SAC ¶¶ 18-19.

Allegations of unlawful, unfair, or fraudulent acts under the UCL must be pled with a reasonable degree of particularity. *Silicon Knights, Inc. v. Crystal Dynamenics, Inc*., 983 F. Supp. 1303, 1316 (N.D. Cal. 1997). To sufficiently plead a cause of action under the UCL, a plaintiff must state the practice it believes is unfair, unlawful, or fraudulent; allege facts showing the unfair, unlawful, or fraudulent nature of the practice; and generally aver that the harm associated with the unfair, unlawful, or fraudulent practice outweighs its benefits. *See Marshall v. Standard Ins. Co.*, 214 F. Supp. 2d 1062, 1071 (C.D. Cal. 2000) (claim dismissed where party failed to specify, with sufficient clarity, particular practices which the party had alleged were unlawful).

           **i.    California Business and Professions Code Section 16600**

As part of their unfair business practices claim, plaintiffs allege that defendants have violated California Business and Professions Code section 16600, which states "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or

motions to strike and to dismiss.

1    business of any kind is to that extent void." SAC ¶ 98.

2        Here, the SAC alleges that Defendants required Plaintiffs to "enter into an agreement with the

3    Shuey Defendants," and that the "agreement presented by the Shuey Defendants" prohibits Plaintiffs

4    from selling to members of the California National Guard products other than those offered by

5    Defendants. SAC ¶ 97. However, the SAC fails to allege that Defendants were aware of the allegedly

6    offensive provision or that they played any role in ensuring that clause would be included in the Shuey

7    Defendants' contract. Plaintiffs do not dispute this fact. *See* Pl.'s Opp'n to Motion to Dismiss, at 13.

8    Rather, Plaintiffs argue that the Court can infer that Defendants had knowledge of the provision. *Id.*

9        However, in deciding a motion to dismiss, the Court should not accept conclusory allegations

10   as true and should not assume that a plaintiff can prove facts different from those it has alleged.

11   *Transphase Sys., Inc. v. S. Cal. Edison Co.*, 839 F. Supp. 711, 718 (C.D. Cal. 1993); *Assoc. Gen.*

12   *Contractors of Cal., Inc. v. Cal. State Council of Carpenters, Inc*., 459 U.S. 519, 526 (1983). Plaintiffs

13   do not allege that AFBA and 5Star were either signatories to the restrictive agreements or that they were

14   even aware of the restrictive terms. Accordingly, plaintiffs have failed to allege a violation of section

15   16600 with respect to AFBA and 5Star.

16                          **ii.    Failure to Process Policies**

17       Plaintiffs' second theory for relief under the UCL fails because Defendants had no independent,

18   non-contractual duty to process the policies. Moreover, all of the facts cited by Plaintiffs in their support

19   of their argument on this point are being raised for the first time in their opposition papers, and may not

20   be considered by the Court. *See* Pl.s' Opp'n to Motion to Dismiss at 16; *Broam v. Bogan*, 320 F.3d

21   1023, 1026 n.2 (9th Cir. 2003).

22                  **iii.    Interference with Income from the Assigned Region**

23       Defendants argue that Plaintiffs' third theory of relief under the UCL also fails as a matter of law

24   because the allegations regarding exclusivity in the Second Amended Complaint are contradicted by the

25   Agreements. In the Second Amended Complaint, Plaintiffs allege that Lovesy was entitled to sell

26   Defendants' insurance products exclusively in five states. Plaintiffs allege that, "[u]nder the September

27

28                                              11

10, 2001 Regional Sales Director Agreement," Lovesy was entitled to serve as regional director in the States of Arizona, California, Nevada, New Mexico, and Utah. SAC ¶ 20. However, the Regional Sales Director Agreement contains an empty field for the assigned region. Plaintiffs argue that they will offer parol evidence showing that the regional terms were in fact included in the agreement, though not drafted into the contract. Plaintiffs fail to reference this purported parol evidence in the Second Amended Complaint. Moreover, even if parol evidence might demonstrate the existence of an exclusivity agreement, Plaintiffs must provide Defendants with notice of the fact of the agreement. Otherwise, Plaintiffs would be allowed to deliberately omit references to documents upon which their claims are based in order to withstand a motion to dismiss. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (1998). Therefore, given that the judicially noticeable agreements to do not support Plaintiffs' allegations, Plaintiffs are under the obligation to at least identify the parol evidence on which their allegations rely. They have failed to do so.

Therefore, based on the facts alleged in the SAC, Plaintiffs cannot state a cause of action under the UCL. Accordingly, Plaintiffs' UCL claim is dismissed with respect to AFBA and 5Star.

## 2. Breach of Contract and the Covenant of Good Faith and Fair Dealing

### i. Contract Claims as to 5Star

Plaintiffs allege that AFBA and 5Star breached the Agreements by refusing to pay various commissions, bonuses, and overrides purportedly owed to Lovesy. Specifically, Plaintiffs claim an entitlement to commissions that Lovesy would have earned (1) selling products offered by Defendants' competitors, (2) selling products in the assigned region, and (3) selling products under the Agreements had Defendants not terminated the Agreements. SAC ¶¶ 53-56.

Defendants offer the specious argument that plaintiffs are required to allege the *specific* provisions of the contract that were allegedly breached, as well as identify the specific sales for which payment is allegedly due. Mot. at 14. Defendants provide absolutely no legal support for these propositions, and on their face they contravene Rule 8's "short and plain statement." requirement. While the absence of any particular contract provisions of identifiable sales may be dispositive issues at

12

**United States District Court**
For the Northern District of California

1    summary judgment, they are not relevant at the dismissal stage.

2        As Defendants' arguments related to the breach of the covenant of good faith and fair dealing

3    claims are based on their arguments against the breach of contract claims (*See* Mot. at 16-19), those

4    argument are similarly ineffectual. Therefore, the breach of contract claims will not be dismissed as to

5    5Star.

6                    **ii.        Contract Claims as to AFBA**

7        Unlike 5Star, AFBA is not a party to any of the contracts at issue in this case. Plaintiff argues

8    that because AFBA's logo appears on the top page of one the contracts, and therefore the Court can infer

9    that AFBA was somehow connected with the contracts. *See* Opp'n at 2. However, whether or not

10   AFBA's logo appears on the top page of one the contracts  has no bearing on whether AFBA is a party

11   to the contracts, which requires the manifestation or expression of consent to the contract. *See* Cal. Civ.

12   Code §§ 1550, 1565. The complaint's sole alleged source of contractual liability as to AFBA are the

13   alter ego allegations, which the Court has stricken. Accordingly, the contract claims as to AFBA are

14   dismissed without prejudice.

15               **3.        Accounting**

16       Defendants contend that no claim for an accounting may lie here, relying primarily on their

17   arguments related to the dismissal. *See* Reply at 10. An action for accounting may  lie where in cases

18   in which the accounts involved are so complicated that an ordinary action at law demanding a fixed sum

19   is not practicable. *See San Pedro Lumber Co. v. Reynolds*, 111 Cal. 588, 596-97 (1896); *Brea v.*

20   *McGlashan*, 3 Cal. App. 2d 454, 460 (1934). The plaintiff must allege that the defendant committed

21   some form of misconduct, violated a fiduciary duty, or otherwise owes money to the plaintiff. *See Union*

22   *Bank*, 31 Cal. App. 4th at 593-94.

23       An accounting is proper here on the facts alleged in the SAC. As alleged, the amount at issue

24   here (*i.e.*, commissions that Lovesy would have earned) is not certain and cannot be determined without

25   discovery.

26

27

28                                                13

1

**B.    The Shuey Defendants' Motion**

2      Defendants Theodore G. Shuey, Jr., TGS Group, Inc., and The Shuey Agency, Inc. (collectively

3  "the Shuey Defendants") also move for dismissal of the claims against TGS for lack of personal

4  jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the Second Amended Complaint as

5  a whole for lack of standing on behalf of Brad Lovesy and Pacific Consolidated Investments, Inc., and,

6  additionally, to dismiss Plaintiffs' Third, Fourth, Seventh and Eighth Causes of Action pursuant to

7  Federal Rule of Civil Procedure 12(b)(6).

8                    **1.    Personal Jurisdiction Over TGS**

9      Defendants have moved to dismiss TGS from this action based on lack of personal jurisdiction.

10  To establish that personal jurisdiction over a defendant is proper, laintiff must show that (1) California's

11  long-arm statute confers personal jurisdiction over a defendant, and (2) that the exercise of jurisdiction

12  comports with the constitutional principles of due process.  See *Haisten v. Grass Valley Medical*

13  *Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986).  This second element is satisfied if a

14  defendant has minimum contacts with the forum state "such that maintenance of the suit does not offend

15  traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

16  (1945).  Moreover, personal jurisdiction may arise as either general jurisdiction over the defendant for

17  all purposes or as specific jurisdiction over a specific cause of action involving the defendant. *See Data*

18  *Disc*, 557 F.2d at 1287.  General jurisdiction over a defendant is appropriate if the defendant's activities

19  in the state are "substantial" or "continuous and systematic." *Haisten*, 784 F.2d at 1396; *Data Disc*., 557

20  F.2d at 1287.

21      With respect to specific jurisdiction, the Ninth Circuit has adopted the following test:

22      (1) The nonresident defendant must do some act or consummate some transaction with
the forum or perform some act by which he purposefully avails himself of the privilege of
23      conducting activities in the forum, thereby invoking the benefits and protections of
its laws.
24
      (2) The claim must be one which arises out of or results from the defendant's
25      forum-related activities.

26      (3) Exercise of jurisdiction must be reasonable.

27

28                                    14

1   *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).

2       In support of their Motion, Defendants submitted a Declaration from Theodore G. Shuey, Jr.

3   claiming that TGS is a Virginia corporation and that TGS does not engage in any business in California.

4   Consequently, Plaintiff must make some affirmative showing establishing that TGS is subject to

5   personal jurisdiction in California.  *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019

6   (9th Cir. 2002).

7       Here, Plaintiffs have specifically set forth evidence that TGS, a Virginia corporation, has

8   conducted "substantial" or "continuous and systematic" business activities in California. Plaintiffs have

9   provided numerous communications between Lovesy, a California resident, and TGS that

10  unambiguously demonstrate that TGS was engaged in business in California through the processing of

11  policies on Lovesy's behalf. *See* Grover Decl., Exs A-C. The only substantive response offered by the

12  Shuey Defendants to this evidence is that "the communications between Mr. Lovesy and TGS occured

13  in response to contact initiated by Mr. Lovesy," and therefore "these communications cannot be used

14  as evidence of TGS' "purposefulness to engage in business activities in California." Opp'n at 2.

15  However, the evidence   evinces mutual communications between the parties regarding the

16  consummation of business transactions. *See* Grover Decl. Ex B. Accordingly, plaintiffs have sufficiently

17  demonstrated that TGS has "purposefully avail[ed] [itself] of the privilege of conducting activities" such

18  that this Court may properly exercise specific personal jurisdiction over it. *Unocal Corp.*, 248 F.3d at

19  923. Therefore, the Shuey Defendants' motion to dismiss the claims against TGS for lack of personal

20  jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is DENIED.

21              **2.      Standing To Maintain The Instant Action**

22      However, the Shuey Defendants' arguments that neither Pacific Consolidated, nor Brad Lovesy

23  as an individual, currently have standing to maintain the contract actions have more merit. The Court

24  addresses them in turn.

25                  **i.      Pacific Consolidated**

26  Plaintiffs' claims against Defendants in the SAC arise out of the Shuey Agreement, which was

27

28                                          15

United States District Court
For the Northern District of California

an agreement between The Shuey Agency and The Brad Lovesy Group, signed by Mr. Shuey and Mr. Lovesy, respectively. The Shuey Agreement does not reference Pacific Consolidated as a party to the contract, nor has Mr. Lovesy alleged any facts to indicate Pacific Consolidated was a party to the contract. To the extent that the claims in the SAC against Defendants arise from breach of the Shuey Agreement, Pacific Consolidated has not suffered any injury, and thus, does not have standing to state a claim for relief against Defendants. *See Pillsbury v. Karmgard*, 22 Cal. App. 4th 743, 757-758 (1994) (finding standing to sue goes to the existence of a cause of action); *Stocks v. City of Irvine*, 114 Cal. App. 3d 520, 531 (1981) (stating standing requires a plaintiff to have suffered or is about to suffer an injury). The breach of contract claims by Pacific Consolidated against Defendants are therefore dismissed with prejudice.[3]

### ii.    Brad Lovesy

California Business and Profession Code section 17918 prohibits a person transacting business under a fictitious business name from maintaining any action upon or on account of any contract made in the fictitious business name, until that person has properly executed, filed, and published a fictitious business name statement. *See* Cal. Bus. & Prof. Code § 17918. Here, the Shuey Agreement was between The Brad Lovesy Group and The Shuey Agency. Plaintiffs have admitted that Mr. Lovesy conducted business under the name of The Brad Lovesy Group. Therefore, for Mr. Lovesy to maintain the instant action, he must have properly registered his fictitious business name of The Brad Lovesy Group in accordance with § 17918. Failure to do so prevents Mr. Lovesy from maintaining this action.

Plaintiffs concede that Mr. Lovesy has failed to file a the fictitious business name statement in accordance with § 17918. Therefore, Mr. Lovesy cannot maintain the instant action against Defendants. However, the remedy for non-compliance with § 17918 is abatement, rather than dismissal, of the action. The California Supreme Court has said of the fictitious business name statute: "Noncompliance merely prevents a fictitiously named business from enforcing obligations owed to it until it places on

---

[3]However, Defendants do not deny that to the extent the SAC contains viable tort claims, Pacific Consolidated has standing to bring those claims. *See* Shuey Defendants' Reply at 4.

16

1  record its true nature and ownership." *Duffy v. Ladbroke Corp.*, 246 F.3d 673 (9th Cir. 2000) (quoting

2  *Hydrotech Systems, Ltd. v. Oasis Waterpark*, 52 Cal.3d 988, 1001 (1991)). The remedy for failure to file

3  a fictitious business name statement is abatement of the action until the plaintiff files the statement. *Id.*

4  (citing *Rushing v. Powell*, 130 Cal.Rptr. 110, 113 (1976)).

5      Given the Court will provide plaintiffs with leave to amend, plaintiffs are advised to include the

6  requisite allegations of compliance with § 17918 in any amended complaint; failure to do so may result

7  in *sua sponte* dismissal of the action as to Brad Lovesy.

8              **3.     Tort Causes of Action**

9                  **i.     Interference with contract**

10     As a matter of law, a claim for interference with contract is improper if the contract is "at-will."

11  *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1151 (2004) (interference with an at-will contract is more properly

12  viewed as interference with a prospective economic advantage). Plaintiffs' claim for intentional

13  interference with contract fails as a matter of law because the AFBA/5Star Agreements permitted either

14  Plaintiffs or AFBA and 5Star to terminate the agreements with or without cause, thereby making them

15  "at-will" contracts.   Therefore, Plaintiffs' claim for interference with contract is dismissed with

16  prejudice.

17                 **ii.     Intentional interference with prospective economic advantage**

18                       **claim**

19     The gravamen of Plaintiffs' causes of action for intentional interference with contract and

20  intentional interference with prospective economic advantage is that the Shuey Defendants interfered

21  with the AFBA/5Star Agreements by breaching the Shuey Agreement.  SAC ¶¶ 64-65, 72-73.  To state

22  a cause of action for intentional interference with prospective economic advantage, Plaintiffs must plead

23  (1) an economic relationship between the plaintiff and some third party, with the probability of future

24  economic benefit to the plaintiff; (2) the defendants' knowledge of the relationship; (3) intentional acts

25  on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship;

26  and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.  *Korea Supply*

27

28                                              17

*Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). Intentional interference with prospective economic advantage also requires Plaintiffs to allege that the conduct alleged to constitute the interference was unlawful for reasons other than that it interfered with a prospective advantage. *See CRST Van Expedited, Inc. v. Werner Enters.*, 479 F.3d 1099, 1108 (9th Cir. 2007).

Here, Plaintiffs allege that the Shuey Defendants "engaged in intentional acts designed to disrupt the relationship" including "failing and refusing to collect the initial premiums on contracts that were sold, failing and refusing to follow up when service members were not making timely payments, and engaging in direct sales within the Assigned Region." SAC ¶ 74. Such alleged wrongful acts are not independent of the Shuey Defendants' purported interference with the AFBA/5Star Agreements and cannot form the basis of an intentional interference with prospective economic advantage claim. However, Plaintiffs argue they satisfy the independent wrongful act requirement insofar as they allege that "the Shuey Defendants' actions were wrongful in that they constituted a fraud upon the service members who purchased the policies" SAC ¶ 75. Defendants counter that such this allegation is wholly conclusory and does not specifically identify the independent wrongful acts Defendants committed, nor does it plead the fraud with any particularity. *See* Fed. R. Civ. P. 9(b).

The Court agrees that merely alleging, without any further explanation that "Defendants' [unidentified] actions were wrongful in that they constituted a fraud upon the service members who purchased the policies," is insufficient to allege an independently wrongful act. Plaintiffs must, at the very least, identify the wrongful actions that allegedly constitute "fraud upon the service members who purchased the policies." Accordingly, Plaintiffs fail to state a claim for intentional interference with prospective economic advantage, and this claim is dismissed.

### iii.    Fraud

In California, common law fraud requires pleading five elements: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage. Cal. Civ. Code § 1709; *see Philipson & Simon v. Gulsuig*, 154 Cal. App. 4th 347, 363 (2007). Moreover, fraud must be pled with particularity. Fed. R. Civ. P. 9(b). Allegations of fraud must be

18

United States District Court
For the Northern District of California

"specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (internal citations omitted).

Plaintiffs allege that Shuey fraudulently made a verbal representation to Lovesy that all premiums due for the AFBA and 5Star policies would be timely collected through payroll deduction and there would be no resulting charge backs. However, Plaintiffs have failed to allege an essential element of a claim for fraud, namely, that Shuey knew, at the time of the alleged misrepresentation, that Defendants could not collect the premiums due for the AFBA and 5Star policies as represented and that AFBA and 5Star would assess charge backs to Plaintiffs. While Plaintiffs argue that the mere fact the Shuey allegedly failed to timely process the applications is sufficient for the Court to infer that he knew that his representations prior to entering in to the contract were false (*see* SAC ¶¶ 32-38), this is simply not the case; Shuey's failure to perform is wholly consistent with a good faith belief, prior to entering the contract, that he would be able to perform. The SAC is simply devoid of any allegations that Shuey made a knowingly false statement, and therefore Plaintiffs' seventh cause of action for fraud against the Shuey Defendants is dismissed.

### 4. UCL claim

In order to state a violation of section 16600, a plaintiff is required to allege that the contract placed a "substantial segment of the market off limits,"such that the contract "effectively destroy[ed] the signatory's ability to conduct a trade or business." *Gen. Comm. Packaging v. TPS Package*, 126 F.3d 1131, 1133 (9th Cir. 1997). The Shuey Defendants contend that Plaintiffs fail to state sufficient facts to support the contention that The Shuey Agreement prevented Lovesy from engaging in his profession of selling insurance products by placing a substantial segment of the market off limits.

However, the question of whether the Shuey Agreement "effectively destroy[ed] the signatory's ability to conduct a trade or business" is a factual question not appropriate for resolution at this stage. Plaintiffs allege that the Shuey Agreement "inhibited Plaintiffs from doing business with a substantial portion on the market . . . which deprived Mr. Lovesy of the benefits and privileges and concomitant

1  monetary gains to which he was entitled." SAC ¶ 98. Whether this amounts to  "effectively destroying

2  the signatory's ability to conduct a trade or business" in this case would require the examination of

3  extrinsic factual matters, and therefore this issue is not appropriate for resolution pursuant to Rule

4  12(b)(6). Accordingly, the Court finds that Plaintiffs have sufficiently plead an UCL claim with respect

5  to the Shuey Defendants, subject to the Courts granting of the motion for a more definite statement.

6         **C.    5Star Financial's Motion**

7        Defendant 5Star Financial LLC ("5Star Financial) specially appears in order to move to dismiss

8  the SAC under Rule 12(b)(2) of the Federal Rules of Civil Procedure on the ground that this Court lacks

9  personal jurisdiction over 5Star Financial.

10        5Star Financial submitted the declaration of Michael Kimo Wong in support of its contention

11  that 5Star Financial has no direct contacts with the State of California. According to Wong, 5Star

12  Financial is a limited liability company existing under the laws of the Commonwealth of Virginia, with

13  its only place of business in Alexandria, Virginia. *See* Wong Decl. ¶ 3. 5Star Financial is a holding

14  company, which houses for-profit corporations in which AFBA, a non-profit voluntary employees'

15  beneficiary association, has made arm's length investments and, which in turn, provide services and

16  products to the general marketplace, including to members of AFBA. Wong Decl. ¶ 7. Under 5Star

17  Financial's umbrella are three for-profit entities, 5Star Bank, 5Star Life, and AFBA5Star Fund, Inc., as

18  well as four limited operational subsidiaries. Wong Dec. ¶ 6.

19        5Star Financial has no operations of its own. Wong Dec.¶ 8. It does not have any offices,

20  employees, telephone listings, or mailing addresses in California, and has never paid taxes to or owned

21  real property in California. Wong Dec. ¶ 9. 5Star Financial is not, and has never been, required to have

22  a designated agent for service of process in California, and has never held board or shareholder meetings

23  in California. Wong Dec.¶¶ 12-13. 5Star Financial owns only one piece of real property and has only

24  one member (shareholder) – both of which are located in Virginia. Wong Dec.¶¶ 4-5.

25        On a motion to dismiss challenging the Court's exercise of jurisdiction over the defendant under

26  Rule12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the

27

28

**United States District Court**
For the Northern District of California

1  defendant. *Data Disc*, 557 F.2d at 1285 ("[i]t is clear that the party seeking to invoke the jurisdiction

2  of the federal court has the burden of establishing that jurisdiction exists."). A court "may not assume

3  the truth of allegations in a pleading which are contradicted by affidavit." *Id.* at 1284.

4      Plaintiffs have come forward with no evidence challenging the assertions in Wong's affidavit,

5  but instead oppose the motion on the confused theory that they must only demonstrate that they have

6  pled a "prima facie" showing of jurisdiction and are under no obligation to come forward with any

7  evidence supporting their jurisdictional allegations. This is simply mistaken. For purposes of a motion

8  to dismiss pursuant to Rule 12(b)(2), "it is appropriate when considering jurisdictional issues to look

9  beyond the pleadings to any evidence before the Court." *Mitan v. Feeney*, 497 F.Supp.2d 1113, 1118

10  (C.D. Cal.2007).

11      Plaintiffs bear the burden of demonstrating that the court has jurisdiction over the defendant, and

12  may not simply rest on allegations in a pleading which are contradicted by affidavit. *Data Disc*, 557

13  F.2d at 1285**.** Here, plaintiffs have provided no evidence, instead, arguing that, to the extent they are

14  required to do so, they should be provided with any opportunity to obtain jurisdictional discovery**.** In

15  order to obtain discovery on jurisdictional facts, the plaintiff must at least make a "colorable" showing

16  that the Court can exercise personal jurisdiction over the defendant. *Id.* This "colorable" showing "could

17  be equated as requiring the plaintiff to come forward with 'some evidence' tending to establish personal

18  jurisdiction over the defendant." *Id.* (*citing eMag Solutions, LLC v. Toda Kogyo Corp*., 2006 WL

19  3783548, at *2 (N.D.Cal. Dec.21, 2006).

20      However, Plaintiffs have failed to make even a "colorable" showing, and instead rely entirely

21  on their allegations in the complaint, which are contradicted by Wong's sworn affadivit. "Where a

22  plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in

23  the face of specific denials made by the defendants, the Court need not permit even limited

24  discovery...."*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v.

25  Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir.1995)). Given that Plaintiffs' claim of personal jurisdiction

26  are "based on bare allegations in the face of specific denials made by the defendants," the Court holds

27

28                                         21

**United States District Court**
For the Northern District of California

1  that Plaintiffs are not entitled to jurisdictional discovery. Accordingly, 5Star Financial LLC motion to

2  dismiss pursuant to Rule 12(b)(2) is GRANTED.

3  <center>**CONCLUSION**</center>

4  Accordingly, for the reasons articulated above, the Court rules as follows:

5  1.    AFBA and 5Star's Motion to Strike  [Docket No. 39] is GRANTED. Paragraphs 12, 102, and

6  103 are hereby STRICKEN.

7  2.    The Shuey Defendants' Motion to Strike   [Docket No. 43] is GRANTED with respect to

8  Paragraphs 11 and 12 in their entirety and Line 7 on page 22:  "For damages according to proof," and

9  DENIED in all other respects, however the Shuey Defendants' Motion for a More Definite Statement

10  [Docket No. 43] is GRANTED.  Plaintiffs' shall provide a more definite statement with respect to all

11  references to "the Shuey Defendants" in the Second Amended Complaint. Specifically, Plaintiffs must

12  state, with respect to each reference to "the Shuey Defendants", whether the phrase refers to TGS, The

13  Shuey Agency, or Ted Shuey.

14  3.    AFBA and 5Star's Motion to Dismiss [Docket No. 40] is GRANTED WITHOUT

15  PREJUDICE with respect to the UCL claim as to AFBA and 5Star, the breach of contract claim as to

16  AFBA only, and breach of the covenant and good faith and fair dealing as to AFBA only, and is

17  DENIED in all other respects.

18  4.    The Shuey Defendants' Motion to Dismiss [Docket No. 44] is GRANTED WITH

19  PREJUDICE with respect to the breach of contract claim as to Pacific Consolidated and the interference

20  with contract claim, WITHOUT PREJUDICE as to the intentional interference with prospective

21  economic advantage and fraud claims, and is DENIED in all other respects..

22  5.    5Star Financial LLC's Motion to Dismiss pursuant to Rule 12(b)(2) [Docket No. 48] is

23  GRANTED WITH PREJUDICE.

24  6.    Defendants' request for judicial notice of the complaint and the Case Management

25  Statement [Docket No. 41] is GRANTED.

26  Plaintiffs are hereby granted leave to filed an amended complaint no later than 20 days of the

27

28  <center>22</center>

1  filing date of the Court's Order only if they can allege, in good faith, an adequate factual basis for their

2  allegations and can allege specific facts supporting all of the required elements of their causes of action

3  with respect to each named defendant.

4      IT IS FURTHER ORDERED THAT a case management conference is scheduled for May 21,

5  2008 at 2:45 p.m. The parties shall meet and confer prior to the conference and shall prepare a joint Case

6  Management Conference Statement which shall be filed no later than 10 days prior to the Case

7  Management Conference  that complies with the Standing Order For All Judges Of The Northern

8  District Of California and the Standing Order of this Court.  Plaintiffs shall be responsible for filing the

9  statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510)

10  637-3559 at the above indicated date and time.

11      IT IS SO ORDERED.

12

13

Dated: 3/13/08                    SAUNDRA BROWN ARMSTRONG
14                                  United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23