SEYFARTH SHAW LLP
Michael T. McKeeman (SBN 173662) mmckeeman@seyfarth.com
Robin M. Cleary (SBN 192489) rcleary@seyfarth.com
Patty H. Lee (SBN 245192) plee@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendants
THEODORE G. SHUEY, JR. (erroneously sued as TED SHUEY),
TGS GROUP, INC., AND THE SHUEY AGENCY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAD LOVESY and PACIFIC CONSOLIDATED INVESTMENTS, INC., a Nevada corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ARMED FORCES BENEFIT ASSOCIATION, individually, doing business as 5STAR ASSOCIATION, 5STAR LIFE INSURANCE, COMPANY; TED SHUEY, individually, doing business as THE SHUEY AGENCY, INC., and TGS GROUP, INC.<br><br>Defendants. | Case No. 4:07 CV 02745 SBA<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEODORE G. SHUEY, JR. (erroneously sued as TED SHUEY), TGS GROUP, INC., AND THE SHUEY AGENCY, INC.'S MOTION TO DISMISS PLAINTIFFS' THIRD, FOURTH, FIFTH, AND SEVENTH CAUSES OF ACTION IN THE THIRD AMENDED COMPLAINT; MOTION TO STRIKE**<br><br>Date:  June 3, 2008<br>Time: 1:00 p.m.<br>Judge: Hon. Saundra B. Armstrong<br>Courtroom: 3 |

Pursuant to Rule 201 of the Federal Rules of Evidence, Defendants Theodore G. Shuey, Jr., The Shuey Agency, Inc., and TGS Group, Inc. (collectively "Defendants") hereby requests that the Court take judicial notice of the following:

1.     Order dated March 13, 2008 filed in the United States District Court, Northern District of California in the case of *Lovesy v. AFBA, et al.*, Case No. C07-2745-SBA, which is attached hereto and incorporated herein as Exhibit A.

1

1      2.      Second Amended Complaint filed in the United States District Court, Northern

2   District of California in the case of *Lovesy v. AFBA, et al.*, Case No. C07-2745-SBA on

3   November 16, 2007, which is attached hereto and incorporated herein as Exhibit B.

4       Under Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of

5   any fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready

6   determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R.

7   Evid. 201(b).  A court may take judicial notice of adjudicated facts, including court records,

8   pleadings, orders and decisions filed in judicial proceedings without converting a motion brought

9   under Rule 12(b) into a motion for summary judgment.  *See In re Stac Electronics Sec. Litig.*, 89

10  F.3d 1399, 1405 (9th Cir. 1996); *MGIC Indemn. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.

11  1986).  Here, the foregoing Court Order and pleading are not subject to reasonable dispute, as it

12  is capable of accurate and ready determination by resort to sources whose accuracy cannot

13  reasonably be questioned.  Fed. R. Evid. 201(b).

14       Therefore, Defendants respectfully request that the Court take judicial notice of the above

15  referenced documents.

16  DATED: April 16, 2008                              SEYFARTH SHAW LLP

17

18                                                     By

19                                                        Michael T. McKeeman
                                                          Robin M. Cleary
20                                                        Patty H. Lee

21                                                     Attorneys for Defendants
                                                       THEODORE G. SHUEY, JR. (erroneously
22                                                     sued and served as TED SHUEY),
                                                       TGS GROUP, INC., AND THE SHUEY
23  SF1 28320302.1                                     AGENCY, INC.

24

25

26

27

28

                                                  2

# EXHIBIT A

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BRAD LOVESY and PACIFIC
CONSOLIDATED INVESTMENTS,
INC., a Nevada corporation,

                Plaintiff,

      v.

ARMED FORCES BENEFIT
ASSOCIATION, THE 5STAR
ASSOCIATION, 5 STAR FINANCIAL,
LLC, 5STAR FINANCIAL SERVICES
COMPANY, and 5STAR LIFE
INSURANCE COMPANY; TED
SHUEY, individually, doing business as
THE SHUEY AGENCY, INC., and TGS
GROUP, INC.,

                Defendants.

No. C 07-2745 SBA

**ORDER**

[Docket Nos. 39, 40, 41, 43, 44 & 48]

Currently before the Court are:

1.     Defendants Armed Forces Benefit Association and 5Star Life Insurance Company's Motion to Strike and for a More Definite Statement Regarding Portions of Plaintiff Brad Lovesy's Second Amended Complaint [Docket No. 39];

2.     Defendants Armed Forces Benefit Association and 5Star Life Insurance Company's Motion to Dismiss Plaintiff Brad Lovesy's Second Amended Complaint [Docket No. 40];

3.     Defendants TGS Group, Inc., The Shuey Agency, Inc., and Ted Shuey's Motion to Strike the Amended Complaint or in the Alternative Motion for a More Definite Statement [Docket No. 43];

4.     Defendants TGS Group, Inc., The Shuey Agency, Inc., and Ted Shuey's Motion to Dismiss TGS for Lack of Personal Jurisdiction, and Plaintiff's Third, Fourth, Seventh, and Eighth Causes of

1    Action in the Second Amended Complaint [Docket No. 44];

2    5.    Defendant 5Star Financial LLC's Motion to Dismiss Plaintiff Brad Lovesy's Second Amended

3         Complaint for Lack of Personal Jurisdiction [Docket No. 48].

4    Having read and considered the arguments presented by the parties in the papers submitted to the Court,

5    the Court finds this matter appropriate for resolution without a hearing.

6                                             **BACKGROUND**

7    **I.    Factual Background**

8         The following allegations are contained in the Second Amended Complaint ("SAC") and four

9    contracts referenced in the SAC[1]. Lovesy entered into the Representative Agreement and the Director

10   Agreement (collectively, the "Agreements") with AFBA Life Insurance Company ("AFBA Life") and/or

11   5Star's Life Insurance on or about March 22, 2001 and September 10, 2001, respectively. SAC at ¶¶ 19,

12   22. Pursuant to the Agreements, Lovesy was to serve as a Regional Sales Director for AFBA Life and

13   was permitted to sell 5Star's Life Insurance products as a Field Service Representative. *Id.* at ¶¶ 20, 23.

14   The Agreements provide that any party may terminate the Agreements with or without cause; the

15   Representative Agreement requires 30 days' written notice prior to termination. Representative

16   Agreement, at ¶ VI(A); Director Agreement, at ¶ VIII.

17        In approximately August 2004, Lovesy entered into a Memorandum of Agreement with The

18   Shuey Agency, Inc. (the "TGS Agreement"), under which The Shuey Agency, Inc. would provide

19   administrator services to Lovesy, including implementation of payroll deductions for the premiums due

20   for all 5Star policies. *Id.* at ¶¶ 28-29; TGS Agreement, at pp. 1. The TGS Agreement prohibits Lovesy

21   from marketing life insurance products other than those provided by AFBA Life in presentations for the

22

23        [1]The Court may consider documents referenced in a complaint if the documents are central to
     the plaintiff's claims. For the purpose of this motion, the Court considers the following documents
24   referenced in Lovesy's SAC: (1) Regional Sales Director Agreement dated on or about September 10,
     2001 (the "Director Agreement"); (2) Regional Sales Director Compensation Addendum amending the
25   Regional Sales Director Agreement and dated on or about June 19, 2003 (the "Compensation
     Addendum"); (3) Independent Field Service Representative Agreement dated on or about March 22,
26   2001 (the "Representative Agreement"); and (4) Memorandum of Agreement between Lovesy and Ted
     Shuey Agency dated on or about August 31, 2004 (the "TGS Agreement").
27

28                                                    2

United States District Court
For the Northern District of California

1    California National Guard. (TGS Agreement, at ¶ 1(a).)

2         Early in his relationship with TGS, Lovesy became unhappy with the manner in which TGS

3    processed applications. SAC ¶¶ 32. Lovesy also claims TGS began to solicit business in portions of the

4    Alleged Assigned Region. *Id.* ¶ 40. Purportedly as a result of Lovesy raising concerns about the

5    propriety of the marketing of AFBA Life and 5Star's insurance offerings, TGS cancelled the TGS

6    Agreement at some point after February 28, 2006. *Id.* ¶ 45. Lovesy's relationship with 5Star ended

7    when, on May 7, 2007, 5Star sent Lovesy notice of "intent to terminate his agreement" as of June 7,

8    2007. *Id.*¶ 50.

9    **II.    The Instant Lawsuit**

10        On May 24, 2007, Lovesy filed a complaint for civil damages. The currently operative

11   complaint, the Second Amended Complaint, was filed on November 16, 2007. The SAC asserts four

12   causes of action against AFBA and 5Star: (1) breach of contract; (2) breach of the covenant of good

13   faith and fair dealing; (3) violation of California's unfair competition law; and (4) an accounting.

14   Additionally, the SAC alleges claims against Ted Shuey, the Shuey Agency, Inc., and TGS Group Inc.

15   (collectively, the "Shuey Defendants") for (1) breach of contract; (2) breach of the covenant of good

16   faith and fair dealing; (3) violation of California's unfair competition law; (4) intentional interference

17   with contract; (5) intentional interference with prospective economic advantage; and (6) fraud. Several

18   of Lovesy's theories of recovery are dependent on his allegations that AFBA and 5Star are the alter egos

19   of the other defendants.

20        Further, in connection with his unfair competition law claim under California Business and

21   Professions Code section 17200 ("UCL"), Lovesy seeks damages and nonrestitutionary disgorgement.

22   **LEGAL STANDARDS**

23   **I.    Motion to Strike**

24        Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from any

25   pleading . . . any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f).

26   "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or

27

28

3

1  the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993) (citing 5

2  Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07 (1990)), *rev'd*

3  *on other grounds*, 510 U.S. 517 (1994). "'Impertinent' matter consists of statements that do not pertain,

4  and are not necessary, to the issues in question." *Id.* A motion to strike may be used to strike any part

5  of the prayer for relief when the relief sought is not recoverable as a matter of law. *Bureerong v.*

6  *Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).

7  **II.    Motion to Dismiss**

8          Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the

9  plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell*

10  *Atlantic Corp. v. Twombly*, 127 S.Ct. 1955,1960 (2007). For purposes of such a motion, the complaint

11  is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are

12  taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest & Jennings, Inc. v. American*

13  *Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994).  All reasonable inferences are to be drawn in favor

14  of the plaintiff. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

15          The court does not accept as true unreasonable inferences or conclusory legal allegations cast

16  in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981);

17  *see Miranda v. Clark County, Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002) ("[C]onclusory allegations of

18  law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim.");

19  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 987, *as amended by* 275 F.3d 1187 (9th Cir.

20  2001)("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted

21  deductions of fact, or unreasonable inferences.").

22          When a complaint is dismissed for failure to state a claim, "leave to amend should be granted

23  unless the court determines that the allegation of other facts consistent with the challenged pleading

24  could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d

25  1393, 1401 (9th Cir. 1986).  Leave to amend is properly denied "where the amendment would be futile."

26  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

27

28

**United States District Court**
**For the Northern District of California**

## III.    Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides the district court with the authority to dismiss an action for lack of personal jurisdiction. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Where the defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of proving personal jurisdiction; he cannot simply rest on the bare allegations of the complaint. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

In order to withstand a motion to dismiss for lack of personal jurisdiction in the initial stages of litigation, however, the plaintiff need only "make, through [his] pleadings and affidavits, a prima facie showing of the jurisdictional facts." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001). "That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In ruling on a Rule 12(b)(2) motion, the pleadings are to be viewed in a light most favorable to plaintiff and all doubts are to be resolved in his favor. *See Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 n.1 (9th Cir. 1995).

## IV.    Request for Judicial Notice

Federal Rule of Evidence 201(b) permits judicial notice of facts "not subject to reasonable dispute" in that they are either "(1) generally known within the territorial jurisdiction or the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court may take judicial notice of matters of public record outside the pleadings on a motion to dismiss. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). Specifically, a court may take judicial notice of the authenticity and existence of a particular order, motion or pleading. See *U.S. v. Southern California Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004); *see also Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208 (N.D. Cal. 2002) (taking judicial notice of two state court decisions and a legal memorandum filed in a state court action on the grounds that they are public documents).

5

United States District Court
For the Northern District of California

### ANALYSIS

Both AFBA and 5Star on the one hand and the Shuey Defendants on the other have filed motions to strike as well as motions to dismiss. The Court first addresses the motions to strike.

**I.     Motions to Strike**

**A.     AFBA and 5Star's Motion**

AFBA and 5Star move to strike portions of the SAC regarding Lovesy's alter ego allegations and prayer for damages.

**1.     Alter Ego Allegations**

AFBA and 5Star contend that Lovesy's alter ego allegations are conclusory and without any alleged factual basis, and therefore the Court should strike paragraphs 7 and 12 of the SAC. In *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003), the court explained that "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Id.* at 1116.   These two elements are 1) a unity of interest or ownership between a corporation and its individual owner and 2) that if the acts are treated as those of the corporation alone, an inequitable result will follow. *Id.* at 1115-1116.

In Paragraph 12, Plaintiffs asserts AFBA and 5Star are each the "agent, servant, employee, successor, assign, or alter ego" of the Shuey Defendants, and that AFBA and 5Star performed each of the acts alleged in the complaint "within the scope of [its] authority, and with the permission and consent of each other Defendant." However, Lovesy fails to allege any facts supporting these allegations. Such a conclusory recitation of the elements of alter ego liability are insufficient to plead alter ego liability under Federal Rule of Civil Procedure 8(a). *Neilson*, 290 F. Supp. 2d 1101. At a minimum, Lovesy must set forth "sufficiently specific factual allegations" to support an alter ego claim in order to overcome a motion to dismiss. It is not sufficient, at the pleading stage, to make conclusory allegations of control. *In re Sunbeam Corp.*,  284 B.R. 355, 366 (Bkrtcy. S.D.N.Y. 2002). In order to withstand a motion to dismiss, the plaintiff must, at a minimum, "se[t] forth some examples of alleged

6

**United States District Court**
For the Northern District of California

1    domination;" Plaintiffs have failed to do so. *Id.*

2       Plaintiffs respond that they have sufficiently pleaded the elements of alter ego liability, in that

3    they have sufficient alleged that the parties were jointly engaged in a common tortious and fraudulent

4    scheme against plaintiff, and therefore, there is a "unity of interest" between the parties. Reply at 3.

5    However, this response misapprehends the nature of the "unity of interest" requirement. The question

6    is not whether the alleged alter egos engaged in a common scheme; the question is rather whether there

7    is "a unity of interest" as to *ownership* between a corporation and its individual owner. *Neilson*, 290 F.

8    Supp. 2d 1101. The mere fact that two entities allegedly jointly committed torts against Plaintiffs has

9    no bearing on the question of alter ego liability.

10       Additionally, in order to withstand a motion to strike, Lovesy must allege that AFBA, 5Star, and

11    5Star Financial abused their corporate status to effectuate a fraud or injustice. *See Erkenbrecher*, 187

12    Cal. at 11; *see also Acciai Speciali Terni USA, Inc. v. Momene*, 202 F. Supp. 2d 203, 207 (S.D.N.Y.

13    2002). With respect to this element, "that if the acts are treated as those of the corporation alone, an

14    inequitable result will follow," plaintiff offers no argument at all other than to point to various

15    paragraphs of the SAC that allegedly support this element (*i.e.* SAC ¶¶ 32-35, 39, 43-44). However,

16    these paragraphs  relating factual portions of plaintiff's claims against defendants simply have no

17    bearing on the question of alter ego liability and Plaintiffs make no attempt to connect these allegations

18    to the alter ego claims.

19       As a result, the allegations in paragraphs 7 and 12 cannot establish alter ego liability and

20    therefore have no bearing on any issue involved in this litigation. *See Colaprico v. Sun Microsystems,*

21    *Inc.*, 758 F.Supp. 1335, 1339 (N.D.Cal. 1991). The Court grants AFBA and 5Star's motion to strike

22    paragraphs 7 and 12. *See* Fed. R. Civ. Proc. 12(f).

23

24         **2.**    **Constructive Trust Allegations**

25       Lovesy alleges a constructive trust in connection with his cause of action under the UCL.

26    Specifically, Lovesy claims that AFBA and 5Star "deprived [Lovesy] of the benefits to which he is

27

28

entitled" and therefore "Defendants are involuntary trustees holding any proceeds obtained therefrom in constructive trust." SAC ¶ 102. Lovesy then alleges, "defendants have unjustly enriched by their wrongful conduct, which thereby justifies the imposition of a constructive trust." SAC ¶ 103.

However, Lovesy is not entitled to restitution under any theory alleged in the SAC. Lovesy has no vested right to the commissions purportedly deprived of him, and therefore, his request for restitution is improper. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1146-47 (2003). Lovesy's allegations in paragraphs 102 and 103 of the SAC can only relate to an improper claim for nonrestitutionary disgorgement, and are in that respect, impertinent and immaterial. *Bureerong*, 922 F. Supp. at 1479 n.34. Accordingly, AFBA and 5Star's motion to strike is granted with respect to paragraphs 102 and 103 of the SAC.

### B.    Shuey Defendants' Motion

#### 1.    Alter Ego Allegations

Defendants argue that Plaintiffs have not sufficiently alleged that the Shuey defendants have abused the corporate form such that "if the acts are treated as those of the corporation alone, an inequitable result will follow." In paragraph 11, Plaintiffs allege, without any explanation, that honoring the corporate form of The Shuey Agency and TGS "would perpetrate a fraud upon the creditors of TSA [The Shuey Agency] and TGS, including Mr. Lovesy." SAC ¶ 11. However, aside from this boilerplate recitation of this element of alter ego liability, there is nothing alleged to support any claim that The Shuey Agency or TGS abused their corporate privilege in bad faith or with the intent of prejudicing creditors, such as Mr. Lovesy. *See Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 330 (C.D. Cal. 2004). Accordingly, Plaintiffs' conclusory allegations are insufficient to support a finding of alter ego liability among Defendants. As such, the Court grants the Shuey Defendants' Motion to Strike paragraph 11.

#### 2.    Motion for a More Definite Statement

In the absence of any proper alter ego allegations, the SAC is vague and ambiguous in that it references Defendants jointly in all causes of action against them. Accordingly, the Shuey Defendants'

8

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Motion for a More Definite Statement is GRANTED with respect to all references to "the Shuey

2    Defendants". Plaintiffs must clarify each reference to "the Shuey Defendants" by specifying to which

3    of TGS, The Shuey Agency, or Ted Shuey the phrase refers each time it appears in the SAC.

4          **3.    Punitive Damages**

5          The Shuey Defendants next argue that Plaintiffs' prayer for relief for punitive damages is

6    improper because (1) Plaintiffs' claims sound in contract, not tort; (2) Plaintiffs cannot show by clear

7    and convincing evidence that Defendants' conduct was oppressive, fraudulent, or malicious; and (3) no

8    allegation of fraud has been properly pled by Plaintiffs.   To be awarded punitive damages, Plaintiffs

9    must show:  (1) breach of an obligation by Defendants not arising from contract (i.e. that Defendants

10   committed a tort); (2) Defendants committed a tort by clear and convincing evidence; and (3) in doing

11   so, Defendants were guilty of oppression, fraud or malice. Cal. Civ. Code § 3294(a).

12         As discussed more fully below, the Court concludes that plaintiffs have properly alleged tort

13   claims against the Shuey Defendant, and therefore Plaintiffs may allege punitive damages. As such, the

14   Court denies Defendants' Motion to Strike Plaintiffs' prayer for relief for punitive damages at lines 1-2,

15   9-10 on page 21 and lines 1-2 on page 22 of the SAC.

16         **4.    Damages Under the UCL**

17         Plaintiffs seek "damages according to proof" for violation of the Unfair Competition Law

18   ("UCL"). SAC at 22, ln. 7. Under California law, there is no doubt that damages are not permissible

19   under the UCL. Cal. Bus. & Prof. Code § 17203; *see also, e.g., Bank of the West v. Superior Court*, 2

20   Cal. 4th 1254, 1266 (1992) ("damages are not available under Section 17203").   Federal courts have

21   uniformly applied California law declaring damages impermissible under the UCL. *See, e.g., Cacique,*

22   *Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 624 (9th Cir. 1999). Accordingly, Defendants' Motion to

23   strike Plaintiffs' prayer for relief for damages under the UCL is granted, and the Court strikes line 7 on

24   page 22 of the SAC.[2]

25

26         [2]In recognition of the deficiency of their claims for damages, Plaintiffs provided the Court with
     "proposed amendments" to their complaint. However, Plaintiffs have not properly noticed any motion
27   for leave to amend, and therefore the Court disregards these proposed amendments in analyzing the

28
                                                9

**United States District Court**
**For the Northern District of California**

1  **II.    Motions to Dismiss**

2      **A.    AFBA and 5Star's Motion**

3          In addition to their motion to strike, defendants AFBA and 5Star have moved for dismissal of

4  the entire complaint.

5              **1.    Unfair Competition Law Claim**

6          The Second Amended Complaint describes three theories under which Defendants allegedly

7  violated the UCL: (1) Defendants allegedly required Lovesy to employ the Shuey Defendants to process

8  policies, and the contract into which Lovesy and the Shuey Defendants entered prohibited Lovesy from

9  selling insurance products to members of the California National Guard other than those offered by

10  Defendants, in violation of California Business and Professions Code section 16600; (2) Defendants

11  allegedly failed to process policies sales representatives, like Lovesy, sold to the public; and (3)

12  Defendants allegedly refused to pay Lovesy commissions, overrides, and bonuses on sales made in the

13  region purportedly assigned to him. SAC ¶¶ 18-19.

14          Allegations of unlawful, unfair, or fraudulent acts under the UCL must be pled with a reasonable

15  degree of particularity. *Silicon Knights, Inc. v. Crystal Dynamenics, Inc.*, 983 F. Supp. 1303, 1316

16  (N.D. Cal. 1997). To sufficiently plead a cause of action under the UCL, a plaintiff must state the

17  practice it believes is unfair, unlawful, or fraudulent; allege facts showing the unfair, unlawful, or

18  fraudulent nature of the practice; and generally aver that the harm associated with the unfair, unlawful,

19  or fraudulent practice outweighs its benefits. *See Marshall v. Standard Ins. Co.*, 214 F. Supp. 2d 1062,

20  1071 (C.D. Cal. 2000) (claim dismissed where party failed to specify, with sufficient clarity, particular

21  practices which the party had alleged were unlawful).

22              **i.    California Business and Professions Code Section 16600**

23          As part of their unfair business practices claim, plaintiffs allege that defendants have violated

24  California Business and Professions Code section 16600, which states "Except as provided in this

25  chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or

26  ─────────────────

27  motions to strike and to dismiss.

28                                         10

1    business of any kind is to that extent void." SAC ¶ 98.

2         Here, the SAC alleges that Defendants required Plaintiffs to "enter into an agreement with the

3    Shuey Defendants," and that the "agreement presented by the Shuey Defendants" prohibits Plaintiffs

4    from selling to members of the California National Guard products other than those offered by

5    Defendants. SAC ¶ 97. However, the SAC fails to allege that Defendants were aware of the allegedly

6    offensive provision or that they played any role in ensuring that clause would be included in the Shuey

7    Defendants' contract. Plaintiffs do not dispute this fact. *See* Pl.'s Opp'n to Motion to Dismiss, at 13.

8    Rather, Plaintiffs argue that the Court can infer that Defendants had knowledge of the provision. *Id.*

9         However, in deciding a motion to dismiss, the Court should not accept conclusory allegations

10   as true and should not assume that a plaintiff can prove facts different from those it has alleged.

11   *Transphase Sys., Inc. v. S. Cal. Edison Co.*, 839 F. Supp. 711, 718 (C.D. Cal. 1993); *Assoc. Gen.*

12   *Contractors of Cal., Inc. v. Cal. State Council of Carpenters, Inc.*, 459 U.S. 519, 526 (1983). Plaintiffs

13   do not allege that AFBA and 5Star were either signatories to the restrictive agreements or that they were

14   even aware of the restrictive terms. Accordingly, plaintiffs have failed to allege a violation of section

15   16600 with respect to AFBA and 5Star.

16                            **ii.     Failure to Process Policies**

17        Plaintiffs' second theory for relief under the UCL fails because Defendants had no independent,

18   non-contractual duty to process the policies. Moreover, all of the facts cited by Plaintiffs in their support

19   of their argument on this point are being raised for the first time in their opposition papers, and may not

20   be considered by the Court. *See* Pl.s' Opp'n to Motion to Dismiss at 16; *Broam v. Bogan*, 320 F.3d

21   1023, 1026 n.2 (9th Cir. 2003).

22                            **iii.    Interference with Income from the Assigned Region**

23        Defendants argue that Plaintiffs' third theory of relief under the UCL also fails as a matter of law

24   because the allegations regarding exclusivity in the Second Amended Complaint are contradicted by the

25   Agreements. In the Second Amended Complaint, Plaintiffs allege that Lovesy was entitled to sell

26   Defendants' insurance products exclusively in five states. Plaintiffs allege that, "[u]nder the September

27

28
                                              11

1    10, 2001 Regional Sales Director Agreement," Lovesy was entitled to serve as regional director in the

2    States of Arizona, California, Nevada, New Mexico, and Utah. SAC ¶ 20. However, the Regional Sales

3    Director Agreement contains an empty field for the assigned region. Plaintiffs argue that they will offer

4    parol evidence showing that the regional terms were in fact included in the agreement, though not

5    drafted into the contract. Plaintiffs fail to reference this purported parol evidence in the Second

6    Amended Complaint. Moreover, even if parol evidence might demonstrate the existence of an

7    exclusivity agreement, Plaintiffs must provide Defendants with notice of the fact of the agreement.

8    Otherwise, Plaintiffs would be allowed to deliberately omit references to documents upon which their

9    claims are based in order to withstand a motion to dismiss. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706

10    (1998). Therefore, given that the judicially noticeable agreements to do not support Plaintiffs'

11    allegations, Plaintiffs are under the obligation to at least identify the parol evidence on which their

12    allegations rely. They have failed to do so.

13        Therefore, based on the facts alleged in the SAC, Plaintiffs cannot state a cause of action under

14    the UCL. Accordingly, Plaintiffs' UCL claim is dismissed with respect to AFBA and 5Star.

15           **2.      Breach of Contract and the Covenant of Good Faith and Fair Dealing**

16                 **i.      Contract Claims as to 5Star**

17        Plaintiffs allege that AFBA and 5Star breached the Agreements by refusing to pay various

18    commissions, bonuses, and overrides purportedly owed to Lovesy. Specifically, Plaintiffs claim an

19    entitlement to commissions that Lovesy would have earned (1) selling products offered by Defendants'

20    competitors, (2) selling products in the assigned region, and (3) selling products under the Agreements

21    had Defendants not terminated the Agreements. SAC ¶¶ 53-56.

22        Defendants offer the specious argument that plaintiffs are required to allege the *specific*

23    provisions of the contract that were allegedly breached, as well as identify the specific sales for which

24    payment is allegedly due. Mot. at 14. Defendants provide absolutely no legal support for these

25    propositions, and on their face they contravene Rule 8's "short and plain statement." requirement. While

26    the absence of any particular contract provisions of identifiable sales may be dispositive issues at

27

28

1    summary judgment, they are not relevant at the dismissal stage.

2          As Defendants' arguments related to the breach of the covenant of good faith and fair dealing

3    claims are based on their arguments against the breach of contract claims (*See* Mot. at 16-19), those

4    argument are similarly ineffectual. Therefore, the breach of contract claims will not be dismissed as to

5    5Star.

6                    **ii.    Contract Claims as to AFBA**

7          Unlike 5Star, AFBA is not a party to any of the contracts at issue in this case. Plaintiff argues

8    that because AFBA's logo appears on the top page of one the contracts, and therefore the Court can infer

9    that AFBA was somehow connected with the contracts. *See* Opp'n at 2. However, whether or not

10   AFBA's logo appears on the top page of one the contracts has no bearing on whether AFBA is a party

11   to the contracts, which requires the manifestation or expression of consent to the contract. *See* Cal. Civ.

12   Code §§ 1550, 1565. The complaint's sole alleged source of contractual liability as to AFBA are the

13   alter ego allegations, which the Court has stricken. Accordingly, the contract claims as to AFBA are

14   dismissed without prejudice.

15                   **3.    Accounting**

16         Defendants contend that no claim for an accounting may lie here, relying primarily on their

17   arguments related to the dismissal. *See* Reply at 10. An action for accounting may lie where in cases

18   in which the accounts involved are so complicated that an ordinary action at law demanding a fixed sum

19   is not practicable. *See San Pedro Lumber Co. v. Reynolds*, 111 Cal. 588, 596-97 (1896); *Brea v.*

20   *McGlashan*, 3 Cal. App. 2d 454, 460 (1934). The plaintiff must allege that the defendant committed

21   some form of misconduct, violated a fiduciary duty, or otherwise owes money to the plaintiff. *See Union*

22   *Bank*, 31 Cal. App. 4th at 593-94.

23         An accounting is proper here on the facts alleged in the SAC. As alleged, the amount at issue

24   here (*i.e.*, commissions that Lovesy would have earned) is not certain and cannot be determined without

25   discovery.

26

27

28                                              13

**B.    The Shuey Defendants' Motion**

Defendants Theodore G. Shuey, Jr., TGS Group, Inc., and The Shuey Agency, Inc. (collectively "the Shuey Defendants") also move for dismissal of the claims against TGS for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the Second Amended Complaint as a whole for lack of standing on behalf of Brad Lovesy and Pacific Consolidated Investments, Inc., and, additionally, to dismiss Plaintiffs' Third, Fourth, Seventh and Eighth Causes of Action pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 1.    Personal Jurisdiction Over TGS

Defendants have moved to dismiss TGS from this action based on lack of personal jurisdiction. To establish that personal jurisdiction over a defendant is proper, laintiff must show that (1) California's long-arm statute confers personal jurisdiction over a defendant, and (2) that the exercise of jurisdiction comports with the constitutional principles of due process.  See *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986).  This second element is satisfied if a defendant has minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Moreover, personal jurisdiction may arise as either general jurisdiction over the defendant for all purposes or as specific jurisdiction over a specific cause of action involving the defendant. *See Data Disc*, 557 F.2d at 1287.  General jurisdiction over a defendant is appropriate if the defendant's activities in the state are "substantial" or "continuous and systematic." *Haisten*, 784 F.2d at 1396; *Data Disc.*, 557 F.2d at 1287.

With respect to specific jurisdiction, the Ninth Circuit has adopted the following test:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) The claim must be one which arises out of or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction must be reasonable.

14

1  *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).

2      In support of their Motion, Defendants submitted a Declaration from Theodore G. Shuey, Jr.

3  claiming that TGS is a Virginia corporation and that TGS does not engage in any business in California.

4  Consequently, Plaintiff must make some affirmative showing establishing that TGS is subject to

5  personal jurisdiction in California. *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019

6  (9th Cir. 2002).

7      Here, Plaintiffs have specifically set forth evidence that TGS, a Virginia corporation, has

8  conducted "substantial" or "continuous and systematic" business activities in California. Plaintiffs have

9  provided numerous communications between Lovesy, a California resident, and TGS that

10 unambiguously demonstrate that TGS was engaged in business in California through the processing of

11 policies on Lovesy's behalf. *See* Grover Decl., Exs A-C. The only substantive response offered by the

12 Shuey Defendants to this evidence is that "the communications between Mr. Lovesy and TGS occured

13 in response to contact initiated by Mr. Lovesy," and therefore "these communications cannot be used

14 as evidence of TGS' "purposefulness to engage in business activities in California." Opp'n at 2.

15 However, the evidence   evinces mutual communications between the parties regarding the

16 consummation of business transactions. *See* Grover Decl. Ex B. Accordingly, plaintiffs have sufficiently

17 demonstrated that TGS has "purposefully avail[ed] [itself] of the privilege of conducting activities" such

18 that this Court may properly exercise specific personal jurisdiction over it. *Unocal Corp.*, 248 F.3d at

19 923. Therefore, the Shuey Defendants' motion to dismiss the claims against TGS for lack of personal

20 jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is DENIED.

21          **2.      Standing To Maintain The Instant Action**

22      However, the Shuey Defendants' arguments that neither Pacific Consolidated, nor Brad Lovesy

23 as an individual, currently have standing to maintain the contract actions have more merit. The Court

24 addresses them in turn.

25              **i.      Pacific Consolidated**

26 Plaintiffs' claims against Defendants in the SAC arise out of the Shuey Agreement, which was

27

28

15

1   an agreement between The Shuey Agency and The Brad Lovesy Group, signed by Mr. Shuey and Mr.

2   Lovesy, respectively.  The Shuey Agreement does not reference Pacific Consolidated as a party to the

3   contract, nor has Mr. Lovesy alleged any facts to indicate Pacific Consolidated was a party to the

4   contract.  To the extent that the claims in the SAC against Defendants arise from breach of the Shuey

5   Agreement, Pacific Consolidated has not suffered any injury, and thus, does not have standing to state

6   a claim for relief against Defendants. *See Pillsbury v. Karmgard*, 22 Cal. App. 4th 743, 757-758 (1994)

7   (finding standing to sue goes to the existence of a cause of action); *Stocks v. City of Irvine*, 114 Cal.

8   App. 3d 520, 531 (1981) (stating standing requires a plaintiff to have suffered or is about to suffer an

9   injury).  The breach of contract claims by Pacific Consolidated against Defendants are therefore

10  dismissed with prejudice.[3]

11              **ii.    Brad Lovesy**

12          California Business and Profession Code section 17918 prohibits a person transacting business

13  under a fictitious business name from maintaining any action upon or on account of any contract made

14  in the fictitious business name, until that person has properly executed, filed, and published a fictitious

15  business name statement.  *See* Cal. Bus. & Prof. Code § 17918.  Here, the Shuey Agreement was

16  between The Brad Lovesy Group and The Shuey Agency.  Plaintiffs have admitted that Mr. Lovesy

17  conducted business under the name of The Brad Lovesy Group.  Therefore, for Mr. Lovesy to maintain

18  the instant action, he must have properly registered his fictitious business name of The Brad Lovesy

19  Group in accordance with § 17918.  Failure to do so prevents Mr. Lovesy from maintaining this action.

20          Plaintiffs concede that Mr. Lovesy has failed to file a the fictitious business name statement in

21  accordance with § 17918.  Therefore, Mr. Lovesy cannot maintain the instant action against Defendants.

22  However, the remedy for non-compliance with § 17918 is abatement, rather than dismissal, of the

23  action. The California Supreme Court has said of the fictitious business name statute: "Noncompliance

24  merely prevents a fictitiously named business from enforcing obligations owed to it until it places on

---

27  [3]However, Defendants do not deny that to the extent the SAC contains viable tort claims, Pacific
    Consolidated has standing to bring those claims. *See* Shuey Defendants' Reply at 4.

1  record its true nature and ownership." *Duffy v. Ladbroke Corp.*, 246 F.3d 673 (9th Cir. 2000) (quoting

2  *Hydrotech Systems, Ltd. v. Oasis Waterpark*, 52 Cal.3d 988, 1001 (1991)). The remedy for failure to file

3  a fictitious business name statement is abatement of the action until the plaintiff files the statement. *Id.*

4  (citing *Rushing v. Powell*, 130 Cal.Rptr. 110, 113 (1976)).

5       Given the Court will provide plaintiffs with leave to amend, plaintiffs are advised to include the

6  requisite allegations of compliance with § 17918 in any amended complaint; failure to do so may result

7  in *sua sponte* dismissal of the action as to Brad Lovesy.

8          **3.**    **Tort Causes of Action**

9          **i.**     **Interference with contract**

10       As a matter of law, a claim for interference with contract is improper if the contract is "at-will."

11  *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1151 (2004) (interference with an at-will contract is more properly

12  viewed as interference with a prospective economic advantage). Plaintiffs' claim for intentional

13  interference with contract fails as a matter of law because the AFBA/5Star Agreements permitted either

14  Plaintiffs or AFBA and 5Star to terminate the agreements with or without cause, thereby making them

15  "at-will" contracts.    Therefore, Plaintiffs' claim for interference with contract is dismissed with

16  prejudice.

17          **ii.**     **Intentional interference with prospective economic advantage**

18               **claim**

19       The gravamen of Plaintiffs' causes of action for intentional interference with contract and

20  intentional interference with prospective economic advantage is that the Shuey Defendants interfered

21  with the AFBA/5Star Agreements by breaching the Shuey Agreement. SAC ¶¶ 64-65, 72-73. To state

22  a cause of action for intentional interference with prospective economic advantage, Plaintiffs must plead

23  (1) an economic relationship between the plaintiff and some third party, with the probability of future

24  economic benefit to the plaintiff; (2) the defendants' knowledge of the relationship; (3) intentional acts

25  on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship;

26  and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Korea Supply*

27

28

                           17

*Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). Intentional interference with prospective economic advantage also requires Plaintiffs to allege that the conduct alleged to constitute the interference was unlawful for reasons other than that it interfered with a prospective advantage. *See CRST Van Expedited, Inc. v. Werner Enters.*, 479 F.3d 1099, 1108 (9th Cir. 2007).

Here, Plaintiffs allege that the Shuey Defendants "engaged in intentional acts designed to disrupt the relationship" including "failing and refusing to collect the initial premiums on contracts that were sold, failing and refusing to follow up when service members were not making timely payments, and engaging in direct sales within the Assigned Region." SAC ¶ 74. Such alleged wrongful acts are not independent of the Shuey Defendants' purported interference with the AFBA/5Star Agreements and cannot form the basis of an intentional interference with prospective economic advantage claim. However, Plaintiffs argue they satisfy the independent wrongful act requirement insofar as they allege that "the Shuey Defendants' actions were wrongful in that they constituted a fraud upon the service members who purchased the policies" SAC ¶ 75. Defendants counter that such this allegation is wholly conclusory and does not specifically identify the independent wrongful acts Defendants committed, nor does it plead the fraud with any particularity. *See* Fed. R. Civ. P. 9(b).

The Court agrees that merely alleging, without any further explanation that "Defendants' [unidentified] actions were wrongful in that they constituted a fraud upon the service members who purchased the policies," is insufficient to allege an independently wrongful act. Plaintiffs must, at the very least, identify the wrongful actions that allegedly constitute "fraud upon the service members who purchased the policies." Accordingly, Plaintiffs fail to state a claim for intentional interference with prospective economic advantage, and this claim is dismissed.

### iii.    Fraud

In California, common law fraud requires pleading five elements: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage. Cal. Civ. Code § 1709; *see Philipson & Simon v. Gulsuig*, 154 Cal. App. 4th 347, 363 (2007). Moreover, fraud must be pled with particularity. Fed. R. Civ. P. 9(b). Allegations of fraud must be

18

"specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (internal citations omitted).

Plaintiffs allege that Shuey fraudulently made a verbal representation to Lovesy that all premiums due for the AFBA and 5Star policies would be timely collected through payroll deduction and there would be no resulting charge backs. However, Plaintiffs have failed to allege an essential element of a claim for fraud, namely, that Shuey knew, at the time of the alleged misrepresentation, that Defendants could not collect the premiums due for the AFBA and 5Star policies as represented and that AFBA and 5Star would assess charge backs to Plaintiffs. While Plaintiffs argue that the mere fact the Shuey allegedly failed to timely process the applications is sufficient for the Court to infer that he knew that his representations prior to entering in to the contract were false (*see* SAC ¶¶ 32-38), this is simply not the case; Shuey's failure to perform is wholly consistent with a good faith belief, prior to entering the contract, that he would be able to perform. The SAC is simply devoid of any allegations that Shuey made a knowingly false statement, and therefore Plaintiffs' seventh cause of action for fraud against the Shuey Defendants is dismissed.

### 4.    UCL claim

In order to state a violation of section 16600, a plaintiff is required to allege that the contract placed a "substantial segment of the market off limits,"such that the contract "effectively destroy[ed] the signatory's ability to conduct a trade or business." *Gen. Comm. Packaging v. TPS Package*, 126 F.3d 1131, 1133 (9th Cir. 1997). The Shuey Defendants contend that Plaintiffs fail to state sufficient facts to support the contention that The Shuey Agreement prevented Lovesy from engaging in his profession of selling insurance products by placing a substantial segment of the market off limits.

However, the question of whether the Shuey Agreement "effectively destroy[ed] the signatory's ability to conduct a trade or business" is a factual question not appropriate for resolution at this stage. Plaintiffs allege that the Shuey Agreement "inhibited Plaintiffs from doing business with a substantial portion on the market . . . which deprived Mr. Lovesy of the benefits and privileges and concomitant

19

1   monetary gains to which he was entitled." SAC ¶ 98. Whether this amounts to "effectively destroying

2   the signatory's ability to conduct a trade or business" in this case would require the examination of

3   extrinsic factual matters, and therefore this issue is not appropriate for resolution pursuant to Rule

4   12(b)(6). Accordingly, the Court finds that Plaintiffs have sufficiently plead an UCL claim with respect

5   to the Shuey Defendants, subject to the Courts granting of the motion for a more definite statement.

6       **C.    5Star Financial's Motion**

7       Defendant 5Star Financial LLC ("5Star Financial) specially appears in order to move to dismiss

8   the SAC under Rule 12(b)(2) of the Federal Rules of Civil Procedure on the ground that this Court lacks

9   personal jurisdiction over 5Star Financial.

10      5Star Financial submitted the declaration of Michael Kimo Wong in support of its contention

11  that 5Star Financial has no direct contacts with the State of California. According to Wong, 5Star

12  Financial is a limited liability company existing under the laws of the Commonwealth of Virginia, with

13  its only place of business in Alexandria, Virginia. *See* Wong Decl. ¶ 3. 5Star Financial is a holding

14  company, which houses for-profit corporations in which AFBA, a non-profit voluntary employees'

15  beneficiary association, has made arm's length investments and, which in turn, provide services and

16  products to the general marketplace, including to members of AFBA. Wong Decl. ¶ 7. Under 5Star

17  Financial's umbrella are three for-profit entities, 5Star Bank, 5Star Life, and AFBA5Star Fund, Inc., as

18  well as four limited operational subsidiaries. Wong Dec. ¶ 6.

19      5Star Financial has no operations of its own. Wong Dec.¶ 8. It does not have any offices,

20  employees, telephone listings, or mailing addresses in California, and has never paid taxes to or owned

21  real property in California. Wong Dec. ¶ 9. 5Star Financial is not, and has never been, required to have

22  a designated agent for service of process in California, and has never held board or shareholder meetings

23  in California. Wong Dec.¶¶ 12-13. 5Star Financial owns only one piece of real property and has only

24  one member (shareholder) – both of which are located in Virginia. Wong Dec.¶¶ 4-5.

25      On a motion to dismiss challenging the Court's exercise of jurisdiction over the defendant under

26  Rule12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the

27

28

**United States District Court**
**For the Northern District of California**

1    defendant. *Data Disc*, 557 F.2d at 1285 ("[i]t is clear that the party seeking to invoke the jurisdiction

2    of the federal court has the burden of establishing that jurisdiction exists."). A court "may not assume

3    the truth of allegations in a pleading which are contradicted by affidavit." *Id.* at 1284.

4         Plaintiffs have come forward with no evidence challenging the assertions in Wong's affidavit,

5    but instead oppose the motion on the confused theory that they must only demonstrate that they have

6    pled a "prima facie" showing of jurisdiction and are under no obligation to come forward with any

7    evidence supporting their jurisdictional allegations. This is simply mistaken. For purposes of a motion

8    to dismiss pursuant to Rule 12(b)(2), "it is appropriate when considering jurisdictional issues to look

9    beyond the pleadings to any evidence before the Court." *Mitan v. Feeney*, 497 F.Supp.2d 1113, 1118

10   (C.D. Cal.2007).

11        Plaintiffs bear the burden of demonstrating that the court has jurisdiction over the defendant, and

12   may not simply rest on allegations in a pleading which are contradicted by affidavit. *Data Disc*, 557

13   F.2d at 1285. Here, plaintiffs have provided no evidence, instead, arguing that, to the extent they are

14   required to do so, they should be provided with any opportunity to obtain jurisdictional discovery. In

15   order to obtain discovery on jurisdictional facts, the plaintiff must at least make a "colorable" showing

16   that the Court can exercise personal jurisdiction over the defendant. *Id.* This "colorable" showing "could

17   be equated as requiring the plaintiff to come forward with 'some evidence' tending to establish personal

18   jurisdiction over the defendant." *Id.* (citing *eMag Solutions, LLC v. Toda Kogyo Corp.*, 2006 WL

19   3783548, at *2 (N.D.Cal. Dec.21, 2006).

20        However, Plaintiffs have failed to make even a "colorable" showing, and instead rely entirely

21   on their allegations in the complaint, which are contradicted by Wong's sworn affadivit. "Where a

22   plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in

23   the face of specific denials made by the defendants, the Court need not permit even limited

24   discovery...."*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v.*

25   *Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir.1995)). Given that Plaintiffs' claim of personal jurisdiction

26   are "based on bare allegations in the face of specific denials made by the defendants," the Court holds

27

28
                                            21

1    that Plaintiffs are not entitled to jurisdictional discovery. Accordingly, 5Star Financial LLC motion to

2    dismiss pursuant to Rule 12(b)(2) is GRANTED.

3                                        CONCLUSION

4         Accordingly, for the reasons articulated above, the Court rules as follows:

5    1.     AFBA and 5Star's Motion to Strike  [Docket No. 39] is GRANTED. Paragraphs 12, 102, and

6    103 are hereby STRICKEN.

7    2.     The Shuey Defendants' Motion to Strike  [Docket No. 43] is GRANTED with respect to

8    Paragraphs 11 and 12 in their entirety and Line 7 on page 22: "For damages according to proof," and

9    DENIED in all other respects, however the Shuey Defendants' Motion for a More Definite Statement

10   [Docket No. 43] is GRANTED.  Plaintiffs' shall provide a more definite statement with respect to all

11   references to "the Shuey Defendants" in the Second Amended Complaint. Specifically, Plaintiffs must

12   state, with respect to each reference to "the Shuey Defendants", whether the phrase refers to TGS, The

13   Shuey Agency, or Ted Shuey.

14         3.     AFBA and 5Star's Motion to Dismiss [Docket No. 40] is GRANTED WITHOUT

15   PREJUDICE with respect to the UCL claim as to AFBA and 5Star, the breach of contract claim as to

16   AFBA only, and breach of the covenant and good faith and fair dealing as to AFBA only, and is

17   DENIED in all other respects.

18         4.     The Shuey Defendants' Motion to Dismiss [Docket No. 44] is GRANTED WITH

19   PREJUDICE with respect to the breach of contract claim as to Pacific Consolidated and the interference

20   with contract claim, WITHOUT PREJUDICE as to the intentional interference with prospective

21   economic advantage and fraud claims, and is DENIED in all other respects..

22         5.     5Star Financial LLC's Motion to Dismiss pursuant to Rule 12(b)(2) [Docket No. 48] is

23   GRANTED WITH PREJUDICE.

24         6.     Defendants' request for judicial notice of the complaint and the Case Management

25   Statement [Docket No. 41] is GRANTED.

26         Plaintiffs are hereby granted leave to filed an amended complaint no later than 20 days of the

27

28                                        22

filing date of the Court's Order only if they can allege, in good faith, an adequate factual basis for their

allegations and can allege specific facts supporting all of the required elements of their causes of action

with respect to each named defendant.

IT IS FURTHER ORDERED THAT a case management conference is scheduled for May 21,

2008 at 2:45 p.m. The parties shall meet and confer prior to the conference and shall prepare a joint Case

Management Conference Statement which shall be filed no later than 10 days prior to the Case

Management Conference  that complies with the Standing Order For All Judges Of The Northern

District Of California and the Standing Order of this Court.  Plaintiffs shall be responsible for filing the

statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510)

637-3559 at the above indicated date and time.

IT IS SO ORDERED.

Dated: 3/13/08

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

# EXHIBIT B

1 │ Margaret J. Grover (Bar No. 112701)
Daniel J. Kelly (Bar No. 145088)
2 │ Africa E. Davidson (Bar No. 225680)
HAIGHT BROWN & BONESTEEL LLP
3 │ 71 Stevenson Street, 20th Floor
San Francisco, California 94105-2981
4 │ Telephone: 415.546.7500
Facsimile: 415.546.7505
5 │
Attorneys for Plaintiffs BRAD LOVESY and PACIFIC
6 │ CONSOLIDATED INVESTMENTS, INC.

7

8 │               UNITED STATES DISTRICT COURT

9 │              NORTHERN DISTRICT OF CALIFORNIA

10

| 11 | BRAD LOVESY and PACIFIC CONSOLIDATED INVESTMENTS, INC. a Nevada corporation, | ) ) ) | Case No. 4:07-cv-02745-SBA |
|---|---|---|---|

11 │ BRAD LOVESY and PACIFIC        )   Case No. 4:07-cv-02745-SBA
CONSOLIDATED INVESTMENTS, INC. a )
12 │ Nevada corporation,             )   **SECOND AMENDED COMPLAINT FOR**
                                 )   **DAMAGES FOR:**
13 │         Plaintiffs,            )
                                 )   **1. BREACH OF CONTRACT,**
14 │   vs.                          )   **2. BREACH OF THE COVENANT OF**
                                 )   **GOOD FAITH AND FAIR**
15 │ ARMED FORCES BENEFIT           )   **DEALING,**
ASSOCIATION, THE 5STAR          )   **3. INTERFERENCE WITH**
16 │ ASSOCIATION, 5STAR FINANCIAL, LLC, )   **CONTRACT,**
5STAR FINANCIAL SERVICES        )   **4. INTERFERENCE WITH**
17 │ COMPANY, and 5STAR LIFE INSURANCE )   **PROSPECTIVE ECONOMIC**
COMPANY; TED SHUEY, individually, )   **ADVANTAGE,**
18 │ doing business as THE SHUEY AGENCY, )   **5. FRAUD,**
INC., and TGS GROUP, INC.,      )   **6. UNFAIR BUSINESS PRACTICES,**
19 │                                 )   **AND**
         Defendants.            )   **7. FOR AN ACCOUNTING**
20 │ _____ )
                                     **DEMAND FOR TRIAL BY JURY**
21

22 │     Plaintiffs Brad Lovesy and Pacific Consolidated Investments, Inc. allege as follows:

23 │                    **PARTIES TO THE ACTION**

24 │     1.    At all times relevant hereto, Plaintiff Brad Lovesy was an individual and a resident

25 │ of the State of California, employed in the County of San Francisco.  From time to time,

26 │ Mr. Lovesy conducted business under the name The Lovesy Group, which was not an entity

27 │ formally organized under the laws of any state.  Plaintiffs are informed and believe, and upon that

28 │ basis allege that each Defendant named in this Complaint at all times had actual knowledge that

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL23-0000001
3313073.1

-1-

Case No. 4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

1    The Lovesy Group was not an independent legal entity.  Plaintiffs are further informed and

2    believe, and upon that basis allege that each Defendant knew that in engaging in business with The

3    Lovesy Group, that Defendant was doing business with Brad Lovesy, an individual.  At all times

4    relevant hereto, Plaintiff Pacific Consolidated Investments, Inc. a Nevada Corporation, conducted

5    business under the name Pacific Consolidated LLC ("Pacific Consolidated").

6         2.    Plaintiffs are informed and believe and upon that basis allege that Defendant

7    Armed Forces Benefit Association (AFBA) is, and at all times relevant hereto was, a non-profit

8    voluntary membership association, having its principal place of business in Alexandria, Virginia,

9    and doing business in the City and County of San Francisco, State of California.

10        3.    Plaintiffs are informed and believe and upon that basis allege that Defendant The

11   5Star Association is, and at all times relevant hereto was, a business entity, form unknown, having

12   its principal place of business in Alexandria, Virginia, and doing business in the City and County

13   of San Francisco, State of California.  Plaintiffs are informed and believe and upon that basis

14   allege that Defendant The 5Star Association is the alter ego of AFBA.

15        4.    Plaintiffs are informed and believe and upon that basis allege that Defendant 5Star

16   Financial, LLC is, and at all times relevant hereto was, a business entity, form unknown, having its

17   principal place of business in Alexandria, Virginia, and doing business in the City and County of

18   San Francisco, State of California.  Plaintiffs are further informed and believe that 5Star Financial,

19   LLC was formed in or about 1989 to act as an umbrella corporation of the for-profit businesses

20   operated under the umbrella of, and in reliance upon the name, reputation, and membership list of,

21   AFBA.

22        5.    Plaintiffs are informed and believe and upon that basis allege that Defendant 5Star

23   Financial Services Company is, and at all times relevant hereto was, a business entity, form

24   unknown, having its principal place of business in Alexandria, Virginia, and doing business in the

25   City and County of San Francisco, State of California.  Plaintiffs are further informed and believe

26   that 5Star Financial Services Company is the parent corporation of Defendant 5Star Life Insurance

27   Company and is operated under the umbrella of, and in reliance upon the name, reputation, and

28   membership list of, AFBA.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BI.23-0000001
3313073.1

2

Case No.  4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

6.     Plaintiffs are informed and believe and upon that basis allege that Defendant 5Star Life Insurance Company (5Star Life) is, and at all times relevant hereto was, a business entity, form unknown, having its principal place of business in Alexandria, Virginia, and doing business in the City and County of San Francisco, State of California. Plaintiffs are further informed and believe that 5Star Life is operated under the umbrella of, and in reliance upon the name, reputation, and membership list of, AFBA. Plaintiffs is further informed and believes that AFBA actively promotes the insurance services provided through 5Star Life.

7.     Plaintiffs are informed and believe and upon that basis allege that the corporate form of Defendants AFBA, The 5Star Association, 5Star Financial, LLC, 5Star Life Insurance Company, and 5Star Life should be disregarded, in that, among other things: AFBA either does business under the name The 5Star Association or formed The 5Star Association to further its activities, including the for-profit activities of the remaining named defendants; AFBA formed 5Star Financial, LLC in or about 1989 to act as an umbrella corporation of the for-profit businesses operated under the umbrella of, and in reliance upon the name, reputation, and membership list of, AFBA; AFBA actively promotes the products of 5Star Life by, among other things, linking its website to the website of 5Star Life and prominently displaying the AFBA logo on training, marketing, and promotional materials; AFBA and 5Star Life, in their interactions with each disregarded their corporate entities, both purporting to engage in business with him as to the subject matter of the contracts referenced herein; AFBA, The 5Star Association, 5Star Financial, LLC, 5Star Life Insurance Company, and 5Star Life have shared or interlocking ownership, direction, or control in that AFBA has created and/or controls each entity; AFBA participates in the operation and management of the others' businesses. Plaintiffs are informed and believe and upon that basis allege that honoring the corporate form of Defendants AFBA, The 5Star Association, 5Star Financial, LLC, 5Star Life Insurance Company, and 5Star Life would perpetrate a fraud upon the creditors of Defendants AFBA, The 5Star Association, 5Star Financial, LLC, 5Star Life Insurance Company, and 5Star Life, including Mr. Lovesy. AFBA, The 5Star Association, 5Star Financial, LLC, 5Star Life Insurance Company, and 5Star Life are collectively referred to as the "AFBA/5Star."

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL25-0000001
3313073.1

3

Case No. 4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

8.    Plaintiffs are informed and believe and upon that basis allege that Defendant Ted Shuey is, and at all times relevant hereto was, an individual and a resident of the State of Virginia, doing business in the City and County of San Francisco, State of California.

9.    Plaintiffs are informed and believe and upon that basis allege that Defendant The Shuey Agency, Inc. (TSA) is, and at all times relevant hereto was, a business entity, form unknown, having its principal place of business in Alexandria, Virginia, and doing business in the City and County of San Francisco, State of California.

10.    Plaintiffs are informed and believe and upon that basis allege that Defendant TGS Group, Inc. (TGS) is, and at all times relevant hereto was, a business entity, form unknown, having its principal place of business in Alexandria, Virginia, and doing business in the City and County of San Francisco, State of California.

11.    Plaintiffs are informed and believe and upon that basis allege that the corporate forms of Defendants TSA and TGS are merely a sham and should be disregarded, in that, among other things:  TSA and TGS have shared ownership in that Ted Shuey is the sole or controlling shareholder of each; TSA and TGS are managed in a haphazard manner, such that each participates in the others' business, as may be directed by Ted Shuey; TSA and TGS are undercapitalized; the assets of TSA and TGS are intermingled and treated by Ted Shuey as his own.  Plaintiffs are informed and believe and upon that basis allege that honoring the corporate form of Defendants TSA and TGS would perpetrate a fraud upon the creditors of TSA and TGS, including Mr. Lovesy.  TSA, TGS, and Ted Shuey are collectively referred to as the "Shuey Defendants."

12.    Plaintiffs are informed and believe and upon that basis allege that each Defendant is, and at all times relevant hereto, was the agent, servant, employee, successor, assign, or alter ego of each other Defendant.  Plaintiffs are further informed and believe and upon that basis allege that, in doing the acts alleged in this Complaint, each Defendant was acting within the scope of his, her, or its authority and with the permission and consent of each other Defendant.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL23-0000001
3313073.1

4

Case No.  4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332, as the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different States.

14.     Venue is appropriate pursuant to 28 U.S.C. Section 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of California.

## COMMON ALLEGATIONS

15.     AFBA was established in February 1947 with the approval of the Chief of Staff, General of the Army, Dwight David Eisenhower. AFBA was "to promote the general welfare and economic interests of its members and their families by providing superior benefits and services principally to military families during peace and war."

16.     Plaintiffs are informed and believes and on that basis alleges that AFBA/5Star presently provides life insurance and other financial products to nearly 300,000 service members and their families. Insurance is written by for-profit businesses that are part of the AFBA/5Star family of corporations, including 5Star Life. The AFBA/5Star entities engage in joint marketing and promotion of the life insurance and other financial products.

17.     Plaintiffs are informed and believe and on that basis allege that AFBA established AFBA Life Insurance Company in or about July 1996. Plaintiffs are further informed and believe that AFBA Life Insurance Company underwrote most of AFBA's group life insurance programs. Plaintiffs are further informed and believe and on that basis allege that AFBA Life Insurance Company did amend its Articles of Incorporation, in October 2000, to 5Star Life Insurance Company. Plaintiffs are further informed and believe that 5Star Life Insurance Company underwrites most of AFBA's group life insurance programs.

18.     Plaintiff Brad Lovesy has a long history of serving as Regional Sales Director and Field Service Representative for AFBA/5Star.

19.     On or about September 10, 2001, Mr. Lovesy and Pacific Consolidated LLC entered a Regional Sales Director Agreement with 5Star. On or about June 19, 2003, 5Star,

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

B1.25-0000001
3313073.1

5

Case No. 4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

1    Mr. Lovesy, and Pacific Consolidated LLC amended the Regional Sales Director Agreement, by

2    adding a Regional Director Compensation Addendum.

3        20.    Under the September 10, 2001 Regional Sales Director Agreement, Mr. Lovesy

4    was to serve as Regional Sales Director for the states of Arizona, California, Nevada, New

5    Mexico, and Utah (the "Assigned Region").

6        21.    Under the September 10, 2001 Regional Sales Director Agreement, Mr. Lovesy

7    was to receive an override on all business produced by the Field Sales Representatives in the

8    Assigned Region.

9        22.    On or about March 22, 2001, Mr. Lovesy, Pacific Consolidated LLC, and 5Star

10    entered an Independent Field Service Representative Agreement.

11        23.    Under the Field Service Representative Agreement, Mr. Lovesy was authorized to

12    solicit and obtain applications for approved insurance products offered by AFBA/5Star.

13        24.    Until approximately August 2004, Mr. Lovesy operated smoothly and profitably as

14    Regional Sales Director and as a Field Service Representative.  He had established procedures for

15    assuring that the policy applications were processed in a timely manner and for collecting the

16    initial premiums on contracts that were sold and for following up when service members were not

17    making timely payments.  As a result of these procedures, policies were issued, service members

18    were provided the coverage they expected, and only a minimal number of the contracts sold by

19    Mr. Lovesy and his agents were cancelled due to non-payment of premiums.

20        25.    In or about August 2004, the Shuey Defendants were injected into the relationship

21    between Mr. Lovesy, on the one hand, and AFBA/5Star, on the other.  AFBA/5Star advised

22    Mr. Lovesy that unless he agreed to use the services of the Shuey Defendants as administrators for

23    policies he procured and those procured by the Field Service Representatives in the Assigned

24    Region, Mr. Lovesy's business in the Assigned Region would be taken over by the Shuey

25    Defendants.

26        26.    AFBA/5Star advised Mr. Lovesy that they wished to engage the Shuey Defendants

27    to administer the policies being issued, as the Shuey Defendants had a unique ability to process

28    payroll deductions from service members.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL23-0000001
3313073.1

6

Case No. 4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

27.    In or about September 2004, Ted Shuey made a presentation, which was attended by Mr. Lovesy and several of the individuals who worked with him soliciting and obtaining applications for AFBA/5Star. During that presentation, Shuey explained the benefits of the Shuey Defendants serving as an administrator. Shuey explained that the Shuey Defendants could assure that *all* premiums due for the AFBA/5Star policies would be collected through payroll deduction. According to Ted Shuey, the Shuey Defendants had a well-established procedure for implementing payroll deductions that was so efficient that, if Mr. Lovesy signed an agreement with TGS as administrator, there would be *no* charge backs resulting from failure to collect premiums.

28.    On or about August 31, 2004, Plaintiffs signed a Memorandum of Agreement with TSA. Under that Memorandum, Plaintiffs were was required to cease offering products other than the group SSLI program, Better Alternative, and Select Term products offered through AFBA.

29.    The Memorandum of Understanding between Plaintiffs and TSA also provided that TSA would collect and submit to AFBA all payroll deduction and direct billed premiums no later than the thirtieth (30th) of each month.  Although Mr. Lovesy signed the Memorandum of Agreement with TSA, all subsequent communications with Mr. Lovesy regarding marketing under the Memorandum was done through TGS and/or Ted Shuey, individually, and not through TSA.

30.    When Mr. Lovesy expressed his concern that he would have to give up soliciting a product offered through Colorado Banker, which had provided him with a steady income stream for approximately 3 years, Michael Kimo Wong, a Senior Vice President of AFBA and Regional Vice President of 5Star Life, assured Mr. Lovesy that the AFBA and 5Star products being administered through the Shuey Defendants would be so lucrative that he would not miss the income from the Colorado Banker products.

31.    The Shuey Defendants failed to perform their promises as administrator under the Memorandum.  The Shuey Defendants had difficulty with properly implementing the payroll deduction for a significant portion of the policies procured by Mr. Lovesy and other Field Service Representatives in the region assigned to Mr. Lovesy.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL23-0000001
3313073.1

7

Case No. 4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

1    32.    From the onset, it became clear that the Shuey Defendants could not process the

2    applications and follow up appropriately on those that were unpaid.  Applications that normally

3    would have taken 4 weeks to process under the old AFBA system took 3 to 12 months or more to

4    process.  When Mr. Lovesy questioned the delays, he was told by Ted Shuey not to worry,

5    because this was "normal."

6    33.    As Mr. Lovesy learned of these and many other problems, he repeatedly requested

7    that the Shuey Defendants follow up with service members and take all steps necessary to assure

8    that payroll deductions were processed in a timely manner and that other problems be promptly

9    resolved.

10    34.    Mr. Lovesy's requests were met with resistance and the Shuey Defendants failed to

11    take the necessary steps.

12    35.    The Shuey Defendants also failed to submit the policies in a timely manner.

13    36.    On many occasions, Mr. Lovesy was instructed to place false dates on applications,

14    so that it would appear that the application was current.  Mr. Lovesy was concerned both about the

15    legality of this practice and the potential impact on insurance coverage.  For some service

16    members, the processing delay created significant problems.

17    37.    Some service members had applied for insurance and had been deployed before the

18    Shuey Defendants processed the policy.  When the Shuey Defendants requested a re-dated

19    application, Mr. Lovesy could not comply because the service member had been assigned to active

20    duty in Iraq or Afghanistan.

21    38.    Some service members applied for insurance before turning 50 years old and, as a

22    result, were not required to take a physical.  However, by the time the Shuey Defendants

23    processed the application, the service member had turned 50 and it became necessary for them to

24    complete a physical before their application was completely processed.  Service members on

25    active duty in Iraq or Afghanistan could not comply with this requirement and were, as a result,

26    denied the coverage that they believed was already providing security for their family members

27    and loved ones.  In some cases the applicant returned from deployment before the policy was

28    processed.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL23-0000001
3313073.1

8

Case No.  4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

1    39.    Mr. Lovesy's complaints to AFBA/5Star about the Shuey Defendants' failure to

2    follow up with service members and to take all steps necessary to assure that payroll deductions

3    were processed in a timely manner were ignored.  AFBA/5Star refused to provide Mr. Lovesy

4    with information about the processing of policies and payment of premiums that would have

5    enabled Mr. Lovesy to increase significantly the number of policies upon which payment was

6    made in a timely manner.

7    40.    The Shuey Defendants also began to solicit business in Arizona, Nevada, and Utah,

8    all of which were within the region assigned to Mr. Lovesy on an exclusive basis.  The Shuey

9    Defendants were also given the business in Washington, a state for which Mr. Lovesy had

10    received approval from AFBA to operate as a new territory.  This authorization was subsequently

11    withdrawn in favor of the Shuey Defendants.

12    41.    Mr. Lovesy's objections to the usurpation of the territory were ignored by Kimo

13    Wong of AFBA and 5Star, who claimed he had no control of the Shuey Defendants.

14    42.    Plaintiffs are informed and believe, and on that basis allege, that despite

15    AFBA/5Star's prior agreement to grant him the exclusive rights to solicit in these territories,

16    AFBA/5Star accepted insurance policy applications solicited by the Shuey Defendants and/or

17    individuals who had agreements to work with the Shuey Defendants.  Plaintiffs are further

18    informed and believe, and on that basis allege, that despite AFBA/5Star's prior agreement to pay

19    him commissions, overrides, and/or bonus for all policies issued in these territories, AFBA/5Star

20    issued insurance policies to service members who had been solicited by the Shuey Defendants

21    and/or individuals who had agreements to work with the Shuey Defendants and credited

22    commissions and overrides to the Shuey Defendants on such policies, without advising

23    Mr. Lovesy of the policies or paying him the commissions, overrides, and/or bonuses to which he

24    was entitled.

25    43.    AFBA/5Star refused to provide Mr. Lovesy with information regarding payment of

26    premiums on the policies, which would have allowed Mr. Lovesy to follow up and assure that

27    payments were received, so that policies could remain in place.

28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL23-0000001
3343073.1

9

Case No. 4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

44.     Mr. Lovesy raised some of his concerns regarding the Shuey Defendants' failures and interference in early 2006 to both AFBA/5Star and the Shuey Defendants. He also raised concerns that AFBA, 5Star, and the Shuey Defendants were misleading and taking advantage of service members in the pricing of policies. AFBA and 5Star had a reasonably priced life insurance policy, which provided $250,000.00 in coverage for a premium of $16.00 per month. However, Mr. Lovesy could not sell that policy unless the service member also purchased a policy that provided only $10,000.00 in coverage but cost $3.66 per month. The marketing of the two policies was deceptive, at best, as the service members were not told that they were actually purchasing two separate policies.

45.     On or about February 28, 2006, Mr. Lovesy advised Michael Kimo Wong, of AFBA, of the problems and concerns, including concerns that AFBA, 5Star, and the Shuey Defendants were misleading and taking advantage of service members. When Mr. Lovesy raised his concerns, the Shuey Defendants, in response, promptly purported to cancel the Memorandum of Agreement by a letter of termination erroneously indicating that Mr. Lovesy had not fulfilled the Agreement. The Shuey Defendants further notified Mr. Lovesy that they would be taking the SSLI program under their own structure. This caused significant interruption and interference with the business operations of Mr. Lovesy and has resulted in the loss of income and prospective economic advantage.

46.     Mr. Lovesy, during his tenure as Regional Sales Director for AFBA/5Star, was provided by AFBA with a Birthday List, which he could use to solicit potential insureds. For most of the time that he received the Birthday List, Mr. Lovesy permitted other agents to work the leads contained on the Birthday List.

47.     For two months in 2006, Mr. Lovesy personally made sales calls based upon the Birthday List. Mr. Lovesy's Birthday List solicitation was very successful and resulted in a dramatic increase in sales as compared to the other agents who he had permitted to work the Birthday List, which included the states of Alaska, Arizona, California, Montana, Nevada, New Mexico, Oregon, Utah, and Wyoming.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL23-0000001
3313073.1

10

Case No. 4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

1    48.    Mr. Lovesy reasonably anticipated that, as he established his own procedures for
2  use of the Birthday List and followed up on policies procured through the Birthday List, it would
3  generate even greater profits for both Mr. Lovesy and AFBA.

4    49.    In or about October 2006, in response to Mr. Lovesy's raising concerns about the
5  deceptive practices and failure to provide service members with insurance coverage, AFBA ceased
6  providing Mr. Lovesy with the Birthday List and has failed and refused to provide the Birthday
7  List.

8    50.    By letter of May 7, 2007, AFBA/5Star notified Plaintiffs of its intent to terminate
9  his agreement effective June 6, 2007.    AFBA/5Star demanded immediate payment of "any
10  outstanding debt" and advised Mr. Lovesy of its intent to continue to send notices of indebtedness
11  for future charge-backs.  Many of the charge-backs AFBA is seeking to collect are the direct result
12  of the Shuey Defendants' failure to process applications and implement automatic deductions in a
13  timely manner.

**FIRST CAUSE OF ACTION**

**(Breach of Contract)**

**(Against AFBA/5Star Life)**

17    51.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 50 as
18  though fully set forth herein.

19    52.    Plaintiffs have performed all conditions, covenants, and promises required under
20  the 2001 Regional Sales Director Agreement, as amended, and the Independent Field Service
21  Representative Agreement, except where prevented or excused from performance.

22    53.    Defendants AFBA/5Star breached the 2001 Regional Sales Director Agreement, as
23  amended, and the Independent Field Service Representative Agreement by, among other things,
24  failing and refusing and continuing to fail and refuse to pay amounts due to Mr. Lovesy.

25    54.    Mr. Lovesy is informed and believes that AFBA/5Star refused to pay commissions
26  and overrides due to him under the agreement permitting him exclusive rights within the Assigned
27  Region and, instead, paid such commissions and overrides to the Shuey Defendants and/or persons
28  or entities affiliated with the Shuey Defendants.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BI.23-0000001
3315673.1

11

Case No. 4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

1    55.    Mr. Lovesy is further informed and believes that AFBA/5Star refused to pay

2    commissions and overrides due to him, asserting that they had a right of offset on such

3    commissions and overrides due to charge backs for policies sold when AFBA/5Star had failed and

4    refused to make reasonable efforts to collect the premiums.

5    56.    Defendants further breached the 2001 Regional Sales Director Agreement, as

6    amended, and the Independent Field Service Representative Agreement by, among other things,

7    terminating the agreements in response to Mr. Lovesy's efforts to obtain performance from

8    Defendants AFBA/5Star and their agents, the Shuey Defendants.

9    57.    As a proximate result of the Defendants' breach of the 2001 Regional Sales

10   Director Agreement, as amended, and the Independent Field Service Representative Agreement,

11   Plaintiffs have sustained damages in an amount according to proof, including prejudgment interest

12   on all unpaid sums as permitted by law, as well as attorneys' fees.

13   **SECOND CAUSE OF ACTION**

14   **(Breach of the Covenant of Good Faith and Fair Dealing)**

15   **(Against AFBA/5Star Life)**

16   58.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 57 as

17   though fully set forth herein.

18   59.    The 2001 Regional Sales Director Agreement, as amended, and the Independent

19   Field Service Representative Agreement contained implied covenants of good faith and fair

20   dealing, under which AFBA/5Star promised, among other things, that they would take no action to

21   deny Mr. Lovesy the benefits of those agreements in retaliation for lawful action taken to assure

22   performance of those agreements.

23   60.    Plaintiffs have performed all conditions, covenants, and promises required under

24   the 2001 Regional Sales Director Agreement, as amended, and the Independent Field Service

25   Representative Agreement, except where prevented or excused from performance.

26   61.    Defendants breached the covenant of good faith and fair dealing implied in the

27   2001 Regional Sales Director Agreement, as amended, and the Independent Field Service

28   Representative Agreement by, among other things: requiring Mr. Lovesy to rely upon the Shuey

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL23-0000001
3315073.1

12

Case No. 4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

1  Defendants to process policies as a condition of his continued employment with Defendants

2  AFBA/5Star; permitting the Shuey Defendants to solicit policies in the Assigned Region; failing

3  and refusing and continuing to fail and refuse to pay amounts due to Mr. Lovesy; and terminating

4  the agreements in response to Mr. Lovesy's efforts to obtain performance from Defendants

5  AFBA/5Star and their agents, the Shuey Defendants.

6      62.    As a proximate result of the Defendants' breach of the covenants of good faith and

7  fair dealing contained in the 2001 Regional Sales Director Agreement, as amended, and the

8  Independent Field Service Representative Agreement, Plaintiffs have sustained damages in an

9  amount according to proof, including prejudgment interest on all unpaid sums as permitted by law,

10  as well as attorneys' fees.

11                    **THIRD CAUSE OF ACTION**

12                    **(Interference with Contract)**

13                    **(Against The Shuey Defendants)**

14      63.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 62 as

15  though fully set forth herein.

16      64.    The 2001 Regional Sales Director Agreement, as amended, and the Independent

17  Field Service Representative Agreement constituted valid contracts between Mr. Lovesy and

18  Pacific Consolidated, on the one hand, and AFBA/5Star, on the other.

19      65.    The Shuey Defendants knew of the Regional Sales Director Agreement and the

20  Independent Field Service Representative Agreement.

21      66.    The Shuey Defendants intentionally engaged in acts designed to induce breaches or

22  disruptions of the contractual relationship.

23      67.    As a result of actions or omissions by the Shuey Defendants, the contractual

24  relationship between Plaintiffs, on the one hand, and AFBA/5Star, on the other, was breached or

25  disrupted.

26      68.    As a proximate result of the alleged actions, Plaintiffs have sustained damages in

27  an amount according to proof, including prejudgment interest on all unpaid sums as permitted by

28  law.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL23-0000001
3513073.1

13

Case No. 4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

69.    Plaintiffs are informed and believe, and on that basis allege, that the Shuey Defendants acted with fraud, oppression, or malice for the purpose of interfering with Mr. Lovesy's operations or for the purpose of competing with Mr. Lovesy, or with the intention of causing or recklessly disregarding the probability of causing injury to Mr. Lovesy. Defendants' actions, as alleged herein, warrant an assessment of exemplary damages in a sum according to proof at trial.

## FOURTH CAUSE OF ACTION

### (Interference with Prospective Economic Advantage)

### (Against The Shuey Defendants)

70.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 69 as though fully set forth herein.

71.    Mr. Lovesy procured numerous insurance policies on behalf of AFBA/5Star. In addition, Independent Field Service Representatives in the Assigned Region procured numerous insurance policies on behalf of AFBA/5Star.

72.    Pursuant to the terms of his agreements with AFBA/5Star, Mr. Lovesy was to receive commissions and overrides on each of the policies issued in the Assigned Region.

73.    The Shuey Defendants knew of the sales of insurance policies and Mr. Lovesy's right to receive commissions and overrides on each of the policies issued in the Assigned Region.

74.    The Shuey Defendants engaged in intentional acts designed to disrupt the relationship, including, but not limited to, failing and refusing to collect the initial premiums on contracts that were sold, failing and refusing to follow up when service members were not making timely payments, and engaging in direct sales within the Assigned Region.

75.    The Shuey Defendants' actions were wrongful in that they constituted a fraud upon the service members who purchased policies, subject to separate legal action and/or professional censure or sanction; and such actions were also wrongful in that they purported to make Plaintiffs instrumentalities of that fraud.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL23-0000001
3313073.1

14

Case No. 4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

76. All of these actions impeded Mr. Lovesy's ability to perform under his contracts with AFBA/5Star, collect premiums, and follow up when service members were not making timely payments.

77. As a result of actions or omissions by the Shuey Defendants, the relationship between Plaintiffs, the service members who purchased policies, and AFBA/5Star, was breached or disrupted.

78. As a proximate result of the alleged actions, Mr. Lovesy has sustained damages in an amount according to proof, including prejudgment interest on all unpaid sums as permitted by law.

79. Plaintiffs are informed and believe, and on that basis allege, that the Shuey Defendants acted with fraud, oppression, or malice for the purpose of interfering with Mr. Lovesy's operations or for the purpose of competing with Mr. Lovesy, or with the intention of causing or recklessly disregarding the probability of causing injury to Mr. Lovesy. Defendants' actions, as alleged herein, warrant an assessment of exemplary damages in a sum according to proof at trial.

## FIFTH CAUSE OF ACTION

### (Breach of Contract)

### (Second Count)

### (Against The Shuey Defendants)

80. Plaintiffs incorporate the allegations contained in Paragraphs 1 through 79 as though fully set forth herein.

81. Plaintiffs had performed all conditions, covenants, and promises required under the 2004 Memorandum of Agreement entered into by and between Mr. Lovesy, Pacific Consolidated, and the Shuey Defendants, except where prevented or excused from performance.

82. The Shuey Defendants breached the 2004 Memorandum by failing to collect and submit to AFBA all payroll deductions and direct billed premiums no later than the thirtieth (30th) of each month.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BI.23-0000001
5313073.1

Case No. 4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

15

83.    As a proximate result of the Shuey Defendants' breach of the Memorandum, Mr. Lovesy has sustained damages which resulted in AFBA/5Star asserting charge-backs to Mr. Lovesy.    These charge-backs were the direct result of the Shuey Defendants' failures to collect and promptly submit all payroll deductions and direct billed premiums from servicemen based on policies procured by Mr. Lovesy.  As a further direct and proximate result of this breach of contract by the Shuey Defendants, Mr. Lovesy's agreements were terminated.

## SIXTH CAUSE OF ACTION

### (BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)

### (Second Count)

### (Against The Shuey Defendants)

84.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 83 as though fully set forth herein.

85.    The 2004 Memorandum of Agreement contained an implied covenant of good faith and fair dealing, under which the Shuey Defendants promised, among other things, that they would take no action to deny Mr. Lovesy the benefits of that agreement in retaliation for lawful action taken to assure performance of that agreement.

86.    Plaintiffs have performed all conditions, covenants, and promises required under the 2004 Memorandum of Agreement, except where prevented or excused from performance.

87.    The Shuey Defendants breached the covenant of good faith and fair dealing implied in the 2004 Memorandum of Agreement by, among other things, failing to timely process policies, complete payroll, or direct payment requests, thereby frustrating Mr. Lovesy's attempt to procure new contracts.

88.    In further breach of the covenant of good faith and fair dealing, The Shuey Defendants terminated the Memorandum of Agreement in retaliation for Mr. Lovesy complaining to The Shuey Defendants, AFBA/5Star, and the National Guard Association of California regarding The Shuey Defendants' failure to process applications and complete payroll or direct payment requests in a timely manner.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL23-0000001
3313075.1

16

Case No. 4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

### SEVENTH CAUSE OF ACTION

### (Fraud)

### (Against The Shuey Defendants)

89.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 88 as though fully set forth herein.

90.    In an effort to induce Plaintiffs to permit the Shuey Defendants to provide administrative services, Ted Shuey, individually on his own behalf, and as an agent of all Defendants, made various misrepresentations.  In or about September 2004, Ted Shuey made a verbal representation to Mr. Lovesy stating that, with the Shuey Defendants as administrator, *all* premiums due for the AFBA/5Star policies would be timely collected through payroll deduction and there would be *no* resulting charge backs.

91.    Ted Shuey knew these statements were false when made.

92.    Ted Shuey made these statements with the intent to defraud Mr. Lovesy and to induce him to alter his position and enter into an administrative agreement with the Shuey Defendants.

93.    Plaintiffs did justifiably and reasonably rely on Ted Shuey's promises and alter their position by entering in the Memorandum of Agreement, permitting the Shuey Defendants to assume duties from AFBA/5Star, including the processing of applications and collection of premiums on policies procured in the Assigned Region.

94.    As a proximate result of the alleged actions, Plaintiffs have sustained damages in an amount according to proof, including prejudgment interest on all unpaid sums as permitted by law.

95.    Plaintiffs are informed and believe, and on that basis allege, that Defendants acted with fraud, oppression, or malice for the purpose of interfering with Mr. Lovesy's operations or for the purpose of competing with Mr. Lovesy, or with the intention of causing or recklessly disregarding the probability of causing injury to Mr. Lovesy.  Defendants' actions, as alleged herein, warrant an assessment of exemplary damages in a sum according to proof at trial.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL25-0000001
3313073.1

17

Case No.  4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

## EIGHTH CAUSE OF ACTION

### (Unfair Business Practices)

### (Against All Defendants)

96.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 95 as though fully set forth herein.

97.    In approximately 2003, AFBA/5Star advised Plaintiffs that, if they did not enter into an agreement with The Shuey Defendants, The Shuey Defendants would begin to sign up service members directly in California, precluding Plaintiffs and the Field Service Representatives they worked with from selling AFBA/5Star products.  The agreement presented by The Shuey Defendants prevented Plaintiffs from offering any products other than the group SSLI program, Better Alternative, and Select Term products offered through AFBA.  Specifically, Mr. Lovesy was required to give up soliciting a product offered through Colorado Banker, a product that had provided him with a steady income stream for approximately 3 years.  Mr. Lovesy was forced to accept this restriction in order to continue selling the AFBA/5Star products.

98.    By insisting that Plaintiffs either lose any realistic ability to sell AFBA/5Star products, or give up his ability to sell other products, Defendants violated California Business and Professions Code Section 16600, which states "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  This agreement purported to inhibit Plaintiffs from doing business with a substantial portion of the market, and was an impermissible restraint of trade.  Defendants' actions constituted unfair business practices, which deprived Mr. Lovesy of the benefits and privileges and concomitant monetary gains to which he was entitled while Defendants continued to accrue unjust gains by virtue of their wrongful conduct.

99.    Defendants' conduct in routinely failing to properly process policies they sold to the public constituted unfair and unlawful business acts or practices within the meaning of the Unfair Competition Law, California Business and Professions Code Section 17200, *et seq.*

100.    Defendants' interference with Mr. Lovesy's right to commissions, overrides, and/or bonuses in the Assigned Region further constituted unfair and unlawful business acts or practices

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL23-0000001
3313073.1

18

Case No. 4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

1   within the meaning of the Unfair Competition Law, California Business and Professions Code

2   Section 17200, *et seq.*

3       101.   As a result of Defendants' unfair and unlawful business acts or practices, Plaintiffs

4   have been denied the benefits to which they are entitled under applicable law.

5       102.   By reason of the wrongful manner in which Defendants have deprived Plaintiffs of

6   the benefits to which they are entitled, Defendants are involuntary trustees holding any proceeds

7   obtained therefrom in constructive trust for Plaintiffs' benefit, with the duty to account for and to

8   convey those proceeds to Mr. Lovesy.

9       103.   Plaintiffs are informed and believe and upon that basis allege that Defendants have

10  been unjustly enriched by their wrongful conduct, which thereby justifies the imposition of a

11  constructive trust, penalties imposed by statute, and any other remedy allowed by law.

12      104.   As a proximate result of the alleged actions, Plaintiffs have sustained damages in

13  an amount according to proof, including prejudgment interest on all unpaid sums as permitted by

14  law.

15                      **NINTH CAUSE OF ACTION**

16                        **(For an Accounting)**

17                        **(Against AFBA/5Star)**

18      105.   Plaintiffs incorporate the allegations contained in Paragraphs 1 through 104 as

19  though fully set forth herein.

20      106.   The exact amount of money due from AFBA/5Star as a result of these Defendants'

21  breach of duties, improper charge backs and withholdings, and failure to account for income is

22  unknown and cannot be ascertained without an accounting from Defendants of the amount of

23  money received and distributed.

24      107.   AFBA are now asserting that certain charge-backs apply to Mr. Lovesy's

25  commissions and earnings.   As a result, AFBA/5Star have failed to pay Mr. Lovesy the

26  commissions that he has earned as a result of his status as a Field Service Representative and

27  Regional Sales Director for AFBA/5Star.   AFBA/5Star claim that certain charge-backs apply to

28  off-set the commissions earned.   What charge-backs are being alleged and as to which

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL23-0000001
3313073.1

19

Case No. 4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

1 | commissions owed these alleged charge-backs have been or will be applied is known only by

2 | AFBA/5Star.

3 |     108.    Plaintiffs request that this Court order an accounting by AFBA/5Star of all monies

4 | received in connection with policies issued in the Assigned Region and amounts paid to

5 | Mr. Lovesy.

6 |     109.    Plaintiffs further request judgment for all sums due, as shown by such an

7 | accounting.

8 | **REQUEST FOR RELIEF**

9 |     WHEREFORE, Plaintiffs Brad Lovesy and Pacific Consolidated Investments, Inc.,

10 | respectfully request entry of judgment and relief as follows:

11 |     First Cause of Action:

12 |     1.    For general and special damages in an amount to be proven at trial together with

13 | interest thereon;

14 |     2.    For interest in accordance to proof;

15 |     3.    For attorneys' fees;

16 |     4.    For cost of suit; and

17 |     5.    For such other and further relief as the Court deems just and proper.

18 |     Second Cause of Action:

19 |     1.    For general and special damages in an amount to be proven at trial together with

20 | interest thereon;

21 |     2.    For interest in accordance to proof;

22 |     3.    For attorneys' fees;

23 |     4.    For cost of suit; and

24 |     5.    For such other and further relief as the Court deems just and proper.

25 |     Third Cause of Action:

26 |     1.    For general and special damages in an amount to be proven at trial together with

27 | interest thereon;

28 |

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL23-0000001
3313073.1

20

Case No.  4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

1        2.    For exemplary damages in an amount sufficient to punish Defendants and to

2    prohibit such conduct in the future;

3        3.    For interest in accordance to proof;

4        4.    For cost of suit; and

5        5.    For such other and further relief as the Court deems just and proper.

6        Fourth Cause of Action:

7        1.    For general and special damages in an amount to be proven at trial together with

8    interest thereon;

9        2.    For exemplary damages in an amount sufficient to punish Defendants and to

10   prohibit such conduct in the future;

11       3.    For interest in accordance to proof;

12       4.    For cost of suit; and

13       5.    For such other and further relief as the Court deems just and proper.

14       Fifth Cause of Action:

15       1.    For general and special damages in an amount to be proven at trial together with

16   interest thereon;

17       2.    For interest in accordance to proof;

18       3.    For cost of suit; and

19       4.    For such other and further relief as the Court deems just and proper.

20       Sixth Cause of Action:

21       1.    For general and special damages in an amount to be proven at trial together with

22   interest thereon;

23       2.    For interest in accordance to proof;

24       3.    For cost of suit; and

25       4.    For such other and further relief as the Court deems just and proper.

26       Seventh Cause of Action:

27       1.    For general and special damages in an amount to be proven at trial together with

28   interest thereon;

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL23-0000001
3313073.1

21

Case No.  4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

1      2.    For exemplary damages in an amount sufficient to punish Defendants and to

2  prohibit such conduct in the future;

3      3.    For interest in accordance to proof;

4      4.    For cost of suit; and

5      5.    For such other and further relief as the Court deems just and proper.

6  Eighth Cause of Action:

7      1.    For damages according to proof;

8      2.    For cost of suit; and

9      3.    For such other and further relief as the Court deems just and proper.

10 Ninth Cause of Action:

11     1.    For an accounting;

12     2.    For disgorgement or restitution of amounts improperly held by Defendants;

13     3.    For cost of suit; and

14     4.    For such other and further relief as the Court deems just and proper.

15

16 Dated:  November 16, 2007        HAIGHT BROWN & BONESTEEL LLP

17

18         By: _____

19            Margaret J. Grover
           Attorneys for Plaintiffs

20            BRAD LOVESY and PACIFIC
           CONSOLIDATED INVESTMENTS, INC.

21

22

23

24

25

26

27

28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL25-0000001
3313073.1

22

Case No.  4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT

**JURY DEMAND**

Mr. Lovesy demands a trial by jury.

Dated: November 16, 2007

HAIGHT BROWN & BONESTEEL LLP

By: _____
Margaret J. Grover
Attorneys for Plaintiffs
BRAD LOVESY and PACIFIC
CONSOLIDATED INVESTMENTS, INC.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Orange County

BL23-0000901
3313073.1

23

Case No. 4:07-cv-02745-SBA
SECOND AMENDED COMPLAINT