1  Margaret J. Grover (Bar No. 112701)
   Daniel J. Kelly (Bar No. 145088)
2  Africa Davidson (Bar No. 225680)
   HAIGHT BROWN & BONESTEEL LLP
3  71 Stevenson Street, 20th Floor
   San Francisco, CA 94105-2981
4  Telephone:  415.546.7500
   Facsimile:  415.546.7505
5
   Attorneys for Plaintiff BRAD LOVESY and PACIFIC
6  CONSOLIDATED INVESTMENTS, INC.

7  Charles L. Deem (Bar No. CA-110557)
   Brooke L. Killian (Bar No. CA-239298)
8  DLA PIPER US LLP
   401 B Street, Suite 1700
9  San Diego, CA  92101-4297
   Telephone:  619.699.2700
10 Facsimile:  619.699.2701

11 Attorney for Defendants
   ARMED FORCES BENEFIT ASSOCIATION
12 and 5STAR LIFE INSURANCE COMPANY

13 Michael T. McKeeman (Bar No. 173662)
   Patty H. Lee (Bar No. 245192)
14 SEYFARTH SHAW LLP
   560 Mission Street, Suite 3100
15 San Francisco, California  94105
   Telephone: 415.397.2823
16 Facsimile: 415.397.8549

17 Attorneys for Defendants
   THE SHUEY AGENCY, INC.,
18 TGS GROUP, INC. and THEODORE G. SHUEY (erroneously sued as Ted Shuey)

19              UNITED STATES DISTRICT COURT

20           NORTHERN DISTRICT OF CALIFORNIA

21 BRAD LOVESY and PACIFIC            Case No. C 07-2745 SBA
   CONSOLIDATED INVESTMENTS, INC., a
22 Nevada corporation,                **JOINT CASE MANAGEMENT
                                       STATEMENT**
23              Plaintiffs,
          vs.                         Hearing Type:  Initial Case Management
24                                                    Conference
   ARMED FORCES BENEFIT               Date:          May 21, 2008
25 ASSOCIATION, individually, doing business   Time:          2:45 p.m.
   as  5STAR ASSOCIATION; 5STAR LIFE  Ctrm:          3
26 INSURANCE COMPANY; TED SHUEY,      Judge:         Hon. Saundra B. Armstrong
   individually, doing business as, THE SHUEY
27 AGENCY, INC., AND TGS GROUP, INC.,  Third Amended Complaint Filed:
                                       April 2, 2008
28              Defendants.

                            1

1   Plaintiffs Brad Lovesy ("Mr. Lovesy") and Pacific Consolidated Investments, Inc.

2   ("Pacific Consolidated") (collectively "Plaintiffs") and Defendants Armed Forces Benefit

3   Association ("AFBA"), 5Star Life Insurance Company, formerly known as AFBA Life

4   Insurance Company ("5Star Life"), TGS Group, Inc. ("TGS"), The Shuey Agency, Inc.

5   ("The Shuey Agency") and Ted Shuey ("Mr. Shuey") (collectively "Defendants" unless

6   otherwise noted) jointly submit this Case Management Statement and Proposed Order and

7   request the Court to adopt it as its Case Management Order in this case.

8       **1.    Jurisdiction and Service:**

9   With respect to subject matter jurisdiction, this Court has jurisdiction over this

10  matter pursuant to 28 U.S.C. Section 1332, as the matter in controversy exceeds

11  $75,000.00, exclusive of interest and costs, and is between citizens of different States.

12  All Defendants named in the Third Amended Complaint ("TAC") have been served.

13      **2.    Facts:**

14  **The following factual issues are not in dispute:**

15  Plaintiff Brad Lovesy served as Regional Sales Director and Field Service

16  Representative for insurance products underwritten by 5Star Life, and formerly, by AFBA

17  Life Insurance Company.

18  **Plaintiffs provide the following disputed factual issues:**

19  Whether Mr. Lovesy was appointed as the exclusive Regional Sales Director for the

20  National Guard, and was, as a result, entitled to an override of all such business for the

21  states of Arizona, California, Nevada, New Mexico, and Utah (the Assigned Region).

22  Whether AFBA and 5Star Life advised Mr. Lovesy that, unless he agreed to use the

23  services of the Shuey Defendants as administrators for 5Star Life policies, Mr. Lovesy

24  would no longer be able to conduct business in the Assigned Region.

25  Whether Mr. Shuey, on behalf of The Shuey Agency, Inc. and/or TGS, falsely

26  stated that, if Mr. Lovesy signed an agreement with TGS as administrator, the agreement

27  would be mutually beneficial and there would be no charge backs for policies procured in

28  the Assigned Region.

Whether Mr. Shuey, on behalf of The Shuey Agency, Inc. and/or TGS, stated that, if Mr. Lovesy signed an agreement with TGS as- administrator, the agreement would be mutually beneficial and there would be no charge backs for policies procured in the Assigned Region for the purpose of inducing Mr. Lovesy to sign an agreement, and with the eventual goal of assuming Mr. Lovesy's profitable business in the Assigned Region.

Whether Mr. Shuey, The Shuey Agency, Inc. and/or TGS failed to process in a timely manner the insurance policies procured by Mr. Lovesy and the agents who worked in the Assigned Region.

Whether Mr. Shuey, The Shuey Agency, Inc. and/or TGS failed to obtain payment in a timely manner for those insurance policies procured by Mr. Lovesy and the agents who worked in the Assigned Region and failed to establish payroll deductions for the service members.

Whether Mr. Shuey, The Shuey Agency, Inc. and/or TGS failed to perform their promises as administrator under the Memorandum of Agreement at issue in this case.

Whether AFBA and 5Star Life ignored Mr. Lovesy's efforts to correct Mr. Shuey, The Shuey Agency, Inc. and/or TGS's failure to follow up with service members and to take all steps necessary to assure that payroll deductions were processed in a timely manner.

Whether AFBA and 5Star Life refused to provide Mr. Lovesy with information about the processing of policies and payment of premiums that would have enabled.

Mr. Lovesy to increase significantly the number of policies upon which payment was made in a timely manner.

Whether AFBA and 5Star Life previously administered the processing of policies, and therefore had the ability and duty to act in such a manner to prevent frustration of performance by Mr. Lovesy.

Whether AFBA and 5Star Life improperly withheld payments from Mr. Lovesy or purported to make charge backs against amounts owed to Mr. Lovesy claiming that

/////

1  policies had not been processed or payment had not been received, but denying

2  Mr. Lovesy the information and ability to rectify the purported deficiencies.

3          Whether AFBA and 5Star Life improperly terminated Mr. Lovesy's services and

4  refused to provide him with a marketing list, referred to by Mr. Lovesy in the TAC as the

5  Birthday List.

6          Whether Mr. Shuey, The Shuey Agency, Inc. and/or TGS improperly canceled the

7  Memorandum of Agreement with Mr. Lovesy.

8          Whether Mr. Shuey, The Shuey Agency, Inc. and/or TGS began to solicit business

9  in Arizona, Nevada, and Utah, all of which were within the region assigned to Mr. Lovesy

10  on an exclusive basis.

11          Whether Mr. Shuey, The Shuey Agency, Inc. and/or TGS began to solicit business

12  in Washington, a state for which Mr. Lovesy had received approval from AFBA to operate

13  as a new territory.

14          Whether AFBA and 5Star Life accepted business procured by Mr. Shuey, The

15  Shuey Agency, Inc. and/or TGS in the Assigned Regions during the time that the region

16  was assigned to Mr. Lovesy on an exclusive basis.

17          Whether AFBA and 5Star Life established deceptive practices in the pricing and

18  packaging of life insurance policies to service members.

19          Whether Mr. Shuey, The Shuey Agency, Inc. and/or TGS engaged in deceptive

20  practices in the back-dating of life insurance policies of service members whose purchased

21  policies had been allowed to lapse after Mr. Shuey, The Shuey Agency, Inc. and/or TGS

22  failed to process said policies in a timely manner.

23          Whether administrative services for the NGAC-sponsored group life insurance

24  applications procured by the Field Service Representatives associated with AFBA and

25  5Star Life are provided by The Shuey Agency, TGS, and/or Mr. Shuey.

26          Whether The Shuey Agency, TGS, and/or Mr. Shuey provide administrative

27  services consisting of: (1) completing and forwarding allotments to the California Finance

28  Office, a federal governmental entity, for processing of the guard member's payroll

1  deduction; and (2) upon receipt of the guard member's payroll deducted premiums from

2  the Department of Defense, submitting such premiums to AFBA no later than the thirtieth

3  day of the month in which the premium is received by the Shuey Agency.

4  **Defendants provide the following additional disputed facts:**

5  Whether 5Star Life underwrites most of AFBA's group life insurance programs and

6  offers individual life insurance products.

7  Whether the Regional Sales Director Agreement Mr. Lovesy signed on March 22,

8  2001 (on behalf of Pacific Consolidated, LLC), and 5Star Life representatives signed on

9  April 6, 2001, stated: "VIII.  Termination With or Without Cause.  This Agreement may be

10  terminated by either party with or without cause, upon written notice sent to the last known

11  address."

12  Whether the Field Service Representative Agreement Mr. Lovesy signed on March

13  22, 2001, and 5Star Life representatives signed on April 6, 2001, stated: "VI.  Termination.

14  A.  This Agreement may be terminated without cause by either party upon at least thirty

15  (30) days prior written notice to the other party.  Such termination shall be effective thirty

16  (30) days after the mailing of written notice thereof, or on the date specified in such notice,

17  if later."

18  Whether the Independent Field Service Representative Agreement Mr. Lovesy

19  signed on June 4, 2003, and 5Star Life representatives signed on June 20, 2003, stated:

20  "VI.  Termination.  A.  Termination by Notice: This Agreement may be terminated without

21  cause by either party upon at least thirty (30) days prior written notice to the other party.

22  Such termination shall be effective thirty (30) days after the mailing of written notice

23  thereof, or on the date specified in such notice, if later."

24  Whether 5Star Life was obligated under any contractual agreement with Mr. Lovesy

25  to provide Mr. Lovesy with information about the processing of policies and payments of

26  premiums "that would have enabled Mr. Lovesy to increase significantly the number of

27  policies upon which payment was made in a timely manner," as alleged by Mr. Lovesy,

28  and if so, whether 5Star Life fulfilled such obligations under the agreements.

1    Whether any contract between Mr. Lovesy and 5Star Life obligates 5Star Life to

2    take action in the face of Mr. Lovesy's purported complaints to 5Star Life regarding the

3    "Shuey Defendants' failure to follow up with service members and to take all steps

4    necessary to assure that payroll deductions were processed in a timely manner," as alleged

5    by Mr. Lovesy.

6        Whether Mr. Lovesy improperly or fraudulently submitted life insurance

7    applications with falsified dates.

8        Whether Mr. Lovesy impermissibly or fraudulently advertised multiple life

9    insurance policies as a single policy.

10       Whether Mr. Lovesy impermissibly or fraudulently failed to inform service

11   members that they were "actually purchasing two separate policies."

12       Whether 5Star Life contracted to permit Mr. Lovesy to operate in the states of

13   Arizona, California, Nevada, New Mexico, Washington, and/or Utah on an exclusive

14   basis.

15       Whether TGS, Mr. Shuey, and/or The Shuey Agency were prohibited from

16   soliciting business in the States of Arizona, California, Nevada, New Mexico, Washington,

17   and/or Utah.

18       Whether 5Star Life contracted to permit Mr. Shuey, as either an Independent Field

19   Service Representative or Regional Sales Director, to sell AFBA/5Star Life products in the

20   States of Arizona, California, Nevada, New Mexico, Washington, and/or Utah.

21       Whether TGS, Mr. Shuey, and/or The Shuey Agency solicited business in the States

22   of Arizona, California, Nevada, New Mexico, Washington, and/or Utah.

23       Whether any contract between Mr. Lovesy and 5Star Life prohibited 5Star Life

24   from accepting life insurance policy applications sold or brokered by TGS, Mr. Shuey,

25   and/or The Shuey Agency in the states of Arizona, California, Nevada, New Mexico,

26   Washington, and/or Utah.

27   /////

28   /////

WEST\21351536.7
332602-3

Whether TGS, The Shuey Agency, and/or Mr. Shuey had knowledge of Mr. Lovesy's alleged exclusivity in the states of Arizona, California, Nevada, New Mexico, Washington, and/or Utah.

Whether any contract between Mr. Lovesy and 5Star Life obligated 5Star Life to provide Mr. Lovesy with the "Birthday List."

Whether 5Star Life is currently obligated under any contract between Mr. Lovesy and 5Star Life to make payments to Mr. Lovesy related to alleged "charge backs."

Whether 5Star Life terminated any agreement with Mr. Lovesy and if so, when such termination occurred.

Whether The Shuey Agency terminated the Memorandum of Agreement with The Brad Lovesy Group.

Whether The Brad Lovesy Group breached the terms of the Memorandum of Agreement with the Shuey Agency.

Whether governmental or agency regulations prohibited Mr. Lovesy and/or The Brad Lovesy Group from selling non-National Guard Association of California ("NGAC") sponsored products.

Whether, prior to the execution of the Memorandum of Agreement between The Brad Lovesy Group and The Shuey Agency, The Brad Lovesy Group and/or Mr. Lovesy were permitted to sell the NGAC-sponsored group life insurance products.

Whether, prior to the execution of the Memorandum of Agreement between The Brad Lovesy Group and The Shuey Agency, Mr. Shuey "assure[d] that *all* premiums due for the 5Star Life policies would be collected through payroll deduction."

Whether, prior to the execution of the Memorandum of Agreement between The Brad Lovesy Group and The Shuey Agency, Mr. Shuey stated that "there would be *no* charge back resulting from failure to collect premiums."

Whether, under the Memorandum of Agreement, The Shuey Agency was required to "follow up with service members and take all steps necessary to assure that payroll

/////

7

deductions were processed in a timely manner and that other problems be promptly resolved."

Whether The Shuey Agency submitted policies to AFBA in a timely manner.

Whether the processing of applications and payroll deductions is dependent on actions by third parties not within Defendants' control.

Whether TGS, The Shuey Agency, and/or Mr. Shuey engaged in any misleading or deceptive conduct.

Whether Mr. Lovesy engaged in misleading or deceptive conduct.

Whether the provisions in the contracts at issue allowed for charge backs to The Brad Lovesy Group and/or Mr. Lovesy.

**3.    Legal Issues:**

**The parties agree that the following legal issues are present in this case:**

Whether the alleged actions of Defendants breached any contracts with Mr. Lovesy.

Whether 5Star Life breached the covenant of good faith and fair dealing with respect to the Field Service Representative Agreement and the Regional Director Agreement.

Whether The Shuey Agency, TGS, or Mr. Shuey interfered with any contractual relationship between Mr. Lovesy and AFBA or 5Star Life.

Whether The Shuey Agency, TGS, or Mr. Shuey interfered with the prospective economic advantage of Mr. Lovesy and AFBA or 5Star Life.

Whether The Shuey Agency, TGS, or Mr. Shuey breached the covenant of good faith and fair dealing with respect to the 2004 Memorandum of Agreement.

Whether the actions of The Shuey Agency, TGS, or Mr. Shuey constituted fraud upon the service members.

Whether Defendants purported requirement that Mr. Lovesy stop selling products other than those offered through AFBA constituted a violation of California Business and Professions Code section 16600, and consequently a violation of California Business and Professions Code section 17200.

1    Whether the actions of 5Star Life constituted fraud.

2    Whether Defendants' engaged in an unfair business practice.

3    Whether Plaintiffs are entitled to an accounting as against Defendants AFBA and

4  5Star Life.

5    Whether Mr. Lovesy suffered damages as the result of the Defendants' alleged acts

6  or omissions, and, if so, the amount of such alleged damages.

7    Whether the actions of The Shuey Agency, TGS, and Mr. Shuey with respect to the

8  interference with prospective economic advantage cause of action merit the award of

9  exemplary damages?

10    **The following are additional legal issues included by Plaintiffs:**

11    What damages Mr. Lovesy is entitled to recover as the result of the Defendants'

12  unlawful behavior?

13    **The following are additional legal issues included by Defendants:**

14    Whether The Shuey Agency, TGS, or Mr. Shuey had any duty or responsibility to

15  disclose to service members that the purported combinations of insurance policies sold to

16  them resulted in added costs and little additional coverage.

17    Whether The Brad Lovesy Group and/or Mr. Lovesy breached any contracts with

18  Defendants.

19    Whether TGS can be held liable for the purported breach of the 2004 Memorandum

20  of Agreement between The Shuey Agency and The Brad Lovesy Group.

21    Whether Mr. Shuey, individually, can be held liable for the purported breach of the

22  2004 Memorandum of Agreement between The Shuey Agency and The Brad Lovesy

23  Group.

24    Whether Mr. Shuey, as President of The Shuey Agency, can be held individually

25  liable for the purported breach of the 2004 Memorandum of Agreement between The

26  Shuey Agency and The Brad Lovesy Group.

27  /////

28  /////

9

1  Whether TGS can be held liable for the purported breach of the covenant of good

2  faith and fair dealing with respect to the 2004 Memorandum of Agreement between The

3  Shuey Agency and The Brad Lovesy Group.

4  Whether Mr. Shuey, individually, can be held liable for the purported breach of the

5  covenant of good faith and fair dealing with respect to the 2004 Memorandum of

6  Agreement between The Shuey Agency and The Brad Lovesy Group.

7  Whether Mr. Shuey, as President of The Shuey Agency, can be held liable for the

8  purported breach of the covenant of good faith and fair dealing with respect to the 2004

9  Memorandum of Agreement between The Shuey Agency and The Brad Lovesy Group.

10  Whether TGS, The Shuey Agency, and/or Mr. Shuey instructed Mr. Lovesy to place

11  false dates on insurance applications.

12  Whether TGS, The Shuey Agency, and/or Mr. Shuey sought to market

13  combinations of insurance policies which resulted in added costs to service members in

14  exchange for minimal additional insurance coverage.

15  Whether 5Star Life represented that unless Mr. Lovesy entered into the

16  Memorandum of Agreement with The Shuey Agency, 5Star Life would breach the

17  Regional Director and Field Service Agreements by allegedly allowing Mr. Shuey to

18  solicit within the regions allegedly assigned to Mr. Lovesy.

19  Whether Mr. Lovesy would have lost income under the Regional Director

20  Agreement and the Field Service Agreement had he not entered into the Memorandum of

21  Agreement with Mr. Shuey and The Shuey Agency.

22  Whether 5Star Life knew of the purported falsity of alleged statements it made to

23  Mr. Lovesy regarding Mr. Shuey, TGS Group, and/or The Shuey Agency.

24  Whether 5Star Life made false statements with the intent to induce Mr. Lovesy to

25  be bound to the terms of the Memorandum of Agreement.

26  Whether 5Star Life improperly sought to prevent Mr. Lovesy from offering a

27  Colorado Banker insurance product.

28  /////

1    Whether Mr. Lovesy justifiably and reasonably relied on 5Star Life's promises in

2 entering into the Memorandum of Agreement.

3    Whether 5Star Life acted with fraud, oppression, or malice in purportedly

4 interfering with Mr. Lovesy's business operations or with the intention of causing or

5 recklessly disregarding the probability of causing injury to Mr. Lovesy.

6    Whether the actions of 5Star Life with respect to the allegations of fraud,

7 oppression or malice merit the award of exemplary damages.

8    Whether the claims alleged in the TAC arise from the alleged breach of the subject

9 contracts and, if yes, whether tort recovery is proper.

10    Whether Mr. Lovesy's TAC, and each purported claim for relief alleged therein, fail

11 to state a claim upon which relief can be granted.

12    Whether Mr. Lovesy's TAC, and each of its alleged counts, fail to allege any

13 purported wrong attributable to Defendants.

14    Whether any and all events and happenings alleged in the TAC and the purported

15 resulting injuries and damages, if any, referred to therein, were proximately caused by the

16 negligent, wrongful, and/or tortious conduct of Mr. Lovesy or parties other than

17 Defendants.

18    Whether Defendants have fully performed their obligations, if any, under the

19 purported agreements at issue in this action, and therefore Defendants' obligations to

20 perform have been discharged.

21    Whether Mr. Lovesy is barred from relief on his claims because Defendants'

22 purported performance, if any, was excused by the acts and/or omissions of Plaintiffs

23 and/or others.

24    Whether Mr. Lovesy's purported claims are barred by the doctrine of estoppel.

25    Whether Mr. Lovesy's purported claims are barred by the doctrine of waiver.

26    Whether Mr. Lovesy's purported claims are barred by the doctrine of laches.

27    Whether Mr. Lovesy's purported claims are barred by the doctrine of unclean

28 hands.

1  Whether Mr. Lovesy has failed to act reasonably to mitigate or minimize the

2  purported damages or harm he claims.

3  Whether Mr. Lovesy failed to exercise ordinary care, caution or prudence to avoid

4  the purported injuries and damages, if any, referred to in the TAC, and whether

5  Mr. Lovesy's alleged negligence proximately caused and contributed to some or all of the

6  purported damages, if any, claimed by Mr. Lovesy.

7  Whether Mr. Lovesy's alleged injuries or damages were proximately caused by the

8  intervening or supervening conduct, including, but not limited to, negligent, reckless, or

9  intentional acts or omissions, of persons and entities other than Defendants.

10  Whether Mr. Lovesy breached the implied covenant of good faith and fair dealing

11  owed to Defendants, and Defendants' performance is thereby excused.

12  Whether Mr. Lovesy's TAC, and each of its alleged counts, are barred, in whole or

13  in part, as a result of an accord and satisfaction.

14  Whether Mr. Lovesy's complaint, and each of its alleged counts, is barred by the

15  applicable statutes of limitation, including, but not limited to, those set forth in California

16  Code of Civil Procedure Sections 337, 337a, 338, 339, 340, 343, and 344.

17  Whether Mr. Lovesy is barred from relief on the TAC, and each of its alleged

18  counts, because no conditions have occurred that would (trigger liability of Defendants for

19  any loss allegedly suffered by Mr. Lovesy.

20  Whether Mr. Lovesy is barred from relief on the TAC, and each of its alleged

21  counts, by the provisions, terms, conditions and limitations under the purported

22  agreement(s) upon which Mr. Lovesy bases his purported counts.

23  Whether Mr. Lovesy's TAC, and each of its alleged counts, are barred because of

24  lack of consideration.

25  Whether Mr. Lovesy's TAC, and each of its alleged counts, are barred because of

26  failure of consideration.

27  Whether Mr. Lovesy is barred from any recovery on his TAC, and each of its

28  alleged counts, under the doctrine of unjust enrichment.

1    Whether Defendants are entitled to a set-off against Mr. Lovesy's money demands.

2    Whether Mr. Lovesy's TAC, and each of its alleged counts, fail to state facts

3  sufficient to justify an award of punitive damages.

4    Whether Mr. Lovesy's purported claims for punitive damages are barred by the

5  provisions of California Civil Code Sections 3300 and 3301.

6    Whether Mr. Lovesy's purported claims for punitive damages violate the Due

7  Process Clause of the Fourteenth Amendment to the United States Constitution.

8    Whether Mr. Lovesy's purported claims for punitive damages violate Article I,

9  Section 7(a) of the Constitution of the State of California.

10    Whether Mr. Lovesy's purported claims for punitive damages violate the Eighth

11  Amendment to the United States Constitution barring the imposition of excessive fines.

12    Whether Mr. Lovesy's purported claims for punitive damages violate Article I,

13  Section 17 of the Constitution of the State of California barring the imposition of excessive

14  fines.

15    Whether Mr. Lovesy's purported claims for punitive damages violate Article I,

16  Section 10 of the United States Constitution barring the impairment of contracts.

17    Whether Mr. Lovesy's purported claims for punitive damages violate Article I,

18  Section 9 of the Constitution of the State of California barring the impairment of contracts.

19    **4.    Motions:**

20    Defendants moved to dismiss and strike Mr. Lovesy's Second Amended Complaint

21  ("SAC").  On March 13, 2008, the Court issued an order granting the motions in part and

22  denying the motions in part.  Specifically, the Court dismissed the following causes of

23  action:  (1) Unfair Competition Law, as to AFBA and 5Star Life; (2) breach of contract as

24  to AFBA; (3) breach of covenant of good faith and fair dealing as to AFBA; (4) intentional

25  interference with contract, as to the Shuey Defendants; (5) intentional interference with

26  prospective economic advantage, as to the Shuey Defendants; and (6) fraud, as to the

27  Shuey Defendants.  The Court struck Mr. Lovesy's alter ego allegations related to all

28  Defendants, and struck Mr. Lovesy's request for damages and a constructive trust in

1  connection with his claim under California's Unfair Competition Law.  Additionally,

2  Defendant 5Star Financial, LLC moved to dismiss the SAC for lack of personal

3  jurisdiction.  The Court granted 5Star Financial, LLC's motion to dismiss with prejudice

4  and denied Mr. Lovesy's request for jurisdictional discovery.

5      In its March 13, 2008 Order, the Court granted Mr. Lovesy leave to file the TAC.

6  Defendants have each filed a motion to dismiss the TAC and a motion to strike portions of

7  the TAC.  The Court will hear the motions on June 3, 2008.  Defendants may file motions

8  for summary judgment.

9      Mr. Lovesy may file a motion to strike pleadings filed by The Shuey Agency, Inc.,

10  and/or TGS.  Mr. Lovesy may also file a motion for summary judgment or partial

11  summary judgment as to one or more of the affirmative defenses.

12      **5.    Amendment of Pleadings:**

13      Mr. Lovesy filed the TAC on April 2, 2008.  The Shuey Agency will file a cross-

14  complaint against Mr. Lovesy for breach of contract.  Defendants AFBA and 5Star Life are

15  evaluating counterclaims against Mr. Lovesy.

16      **6.    Evidence Preservation:**

17      Mr. Lovesy has retained most relevant evidence only in hard copy, as he does not

18  control the server on which his electronic mail is stored.  Mr. Lovesy does not have any

19  document destruction program and has not knowingly erased any electronic mail messages

20  or other electronically-recorded material.

21      Defendants have taken steps to preserve evidence relevant to this litigation.

22  Specifically, Defendants have taken steps to preserve documents, including electronic

23  communications, which existed at the time Mr. Lovesy served his complaint against

24  Defendants.  Defendants have terminated their ordinary document destruction policy and

25  placed a litigation hold on those documents and data that they reasonably believe are

26  relevant.

27  /////

28  /////

### 7.    Disclosures:

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, the parties have served their Initial Disclosure Statements.  Mr. Lovesy served his Initial Disclosure Statement on Defendants on November 21, 2007.  Defendants AFBA and 5Star Life served their Initial Disclosure Statement on January 9, 2008.  Defendants The Shuey Agency and Mr. Shuey served their Initial Disclosure Statement on January 9, 2008.

The Court scheduled a Case Management Conference for May 21, 2008.

### 8.    Discovery:

Mr. Lovesy served initial requests for production of documents on AFBA and 5Star Life in September 2007.  At that time, Mr. Lovesy initially stipulated in writing to stay AFBA and 5Star Life's discovery responses until after the parties completed an Early Settlement Conference, which the parties had jointly requested.  As of November 29, 2007, the Court had yet to schedule an Early Settlement Conference.  On November 29, 2007, counsel for Plaintiffs wrote to counsel for AFBA and 5Star Life, requiring AFBA and 5Star Life to respond to the outstanding discovery requests within 30 days.  AFBA and 5Star Life complied.

The parties intend to take the depositions of relevant individuals and corporate persons most knowledgeable.  The parties also intend to propound discovery requests. Should the situation warrant it, subpoenas for the deposition of and/or documents from third parties may be issued.

The parties do not presently anticipate requesting any limitations or modifications of the discovery rules.

**Plaintiffs' Proposed Discovery Plan**

Mr. Lovesy proposes the following discovery plan:

| | |
|---|---|
| Document Requests to Each Defendant | June 2008 |
| Depositions of Corporate Person(s) Most Knowledgeable | June to July 2008 |
| Deposition of Mr. Shuey | June to July 2008 |

| | |
|---|---|
| Deposition of 5Star Life and other 5Star entities' witness/es | June to July 2008 |
| Deposition of AFBA witness | June to July 2008 |
| Deposition of the Shuey Defendants' witness | July to August 2008 |
| Contention Interrogatories to each Defendant | July to August 2008 |
| Depositions of Third Parties | July to August 2008 |
| Additional Written Discovery | September to October 2008 |
| Expert Witness Discovery | September to October 2008 |

**Defendants' Proposed Discovery Plan**

The Defendants propose the following discovery plan, which takes into consideration the parties' intentions to engage in ADR and the fact that the Defendants' motions related to the TAC is not scheduled to be heard until June 3, 2008:

| | |
|---|---|
| Request for Production of Documents to the parties | July through August 2008 |
| Interrogatories to the parties | July through August 2008 |
| Requests for Admission to the Parties | July through August 2008 |
| Depositions of Mr. Lovesy and Mr. Shuey | September through November 2008 |
| Depositions, of Corporate Person(s) Most Knowledgable | September through November 2008 |
| Additional Depositions | September through November 2008 |
| Contention Interrogatories to Mr. Lovesy | November 2008 |
| Additional Written Discovery | August 2008 through January 2009 |
| Expert Witness Discovery | February 2009 through April 2009 |

9.    **Class Actions:**

This case is not a class action.

/////

16

**10.** **Related Actions:**

No other cases are related to the present case.

**11.** **Relief:**

**Plaintiffs include the following with respect to the amount and types of damages claimed by Mr. Lovesy:**

Mr. Lovesy seeks to recover damages that are in excess of $700,000 to date.  If this loss is projected for the period that Mr. Lovesy anticipated working with AFBA, the amount is significantly higher.  Damages include, but are not limited to, the following:

1.      In August 2004, Mr. Lovesy was unlawfully forced to give up business opportunities selling products offered by Colorado Banker.  This business produced a revenue stream of approximately $6,000 per month.  To date, Mr. Lovesy estimates his loss of this line to be $216,000.  He had every reason to believe that he would be able to continue this profit stream for the next 15 years.  Thus, his total loss resulting from the inability to sell Colorado Banker products will exceed $1,200,000.00.

2.      To date, Mr. Lovesy has been charged nearly $60,000 in charge backs.  TGS promised there would be no charge backs if Mr. Lovesy did business with it as administrator.  The number of charge backs, however, increased dramatically once TGS took over responsibility for collecting premiums and are a direct result of TGS's failure to perform its contractual obligations in a reasonable manner.

3.      Mr. Lovesy has been denied the opportunity to continue acting as Field Service Representative and Regional Sales Director.  From these contracts, Mr. Lovesy earned more than $43,000 per month on average.  To date, the total loss is $731,000.  Mr. Lovesy reasonably believed he would be able to continue this business for the next 15 years.  Thus, his total damages related to loss of his Field Service Representative and Regional Sales Director positions exceed $8,000,000.00.

4.      Mr. Lovesy has been denied the opportunity to procure sales through the Birthday List.  When Mr. Lovesy personally worked the Birthday List, it produced sales generating a monthly income to Mr. Lovesy averaging $22,000.  Even had this income not

1 increased, Mr. Lovesy's losses to date are $242,000.  Again, Mr. Lovesy expected to

2 continue this business for the next 15 years.  Thus, his future damages related to loss of the

3 Birthday List are at least $3,960,000.00.

4      5.     Mr. Lovesy lacks sufficient information to estimate the losses due to

5 interference in his assigned region.  Mr. Lovesy will be seeking all records of sales in the

6 Assigned Region, so as to determine what he should have been paid.

7      6.     Interest, costs, and attorneys' fees.

8 **Defendants include the following facts with respect to the amount and types of**

9 **damages claimed by Mr. Lovesy:**

10 Defendants dispute that Mr. Lovesy has been injured or damaged in the manner and

11 sum described above, or at all.  Furthermore, Defendants dispute that Mr. Lovesy would be

12 entitled to the damages described, even if each and every allegation in the TAC were true.

13      **12.**     <u>**Settlement and ADR:**</u>

14 The parties request an Early Settlement Conference with a Magistrate Judge.  The

15 parties are not aware of any discovery or motions needed to pursue settlement discussions.

16 To avoid the amount of attorneys' fees becoming a barrier to resolution, the parties request

17 that the Early Settlement Conference be scheduled at the earliest opportunity.

18      **13.**     <u>**Consent to Magistrate Judge for All Purposes:**</u>

19 The parties do not consent to have a magistrate judge conduct any proceedings in

20 the matter, including trial other than those proceedings typically handled by the magistrate

21 judge under the direction of the United States District Judge

22      **14.**     <u>**Other References:**</u>

23 The matter is not suitable for reference to binding arbitration, a special master, or

24 the Judicial Panel on Multidistrict Litigation.

25      **15.**     <u>**Narrowing of Issues:**</u>

26 As the parties have conducted only limited discovery, they lack sufficient

27 information about the matter to narrow the issues by agreement, but agree to engage in

28 good faith discussions of narrowing the issues as the case progresses.

**16.    Expedited Schedule:**

The parties do not believe this case is suitable for an expedited schedule.

**17.    Scheduling:**

Plaintiffs propose the following schedule:

| | |
|---|---|
| Non-Expert Discovery Cut Off | July 31 to August 15, 2008 |
| Hearing of Dispositive Motions: | August 19-29, 2008 |
| Initial Designation of Experts | August 15 to August 25, 2008 |
| Disclosure of Rebuttal Experts | September 8, 2008 |
| Expert Discovery Cut Off | September 29 to November 1, 2008 |
| Pretrial Conference | October 13 to November 24, 2008 |
| Trial | November 3 to December 15, 2008 |

Defendants propose the following schedule:

| | |
|---|---|
| Non-Expert Discovery Cut Off | January 31, 2009 |
| Initial Designation of Experts | February 6, 2009 |
| Disclosure of Rebuttal Experts | March 2, 2009 |
| Expert Discovery Cut Off | April 30, 2009 |
| Hearing of Dispositive Motions: | May 6, 2009 |
| Pretrial Conference | May 27, 2009 |
| Trial | June 11, 2009 |

**18.    Trial:**

Mr. Lovesy requests a jury trial.  The parties anticipate the trial will last 10 court days.

19

1    **19.    <u>Disclosure of Non-Party Interested Entities or Persons</u>:**

2    Mr. Lovesy and Defendants have filed the Certificates of Interested Entities or

3    Persons required by Civil Local Rule 3-16.  Pacific Consolidated will file a Certificate of

4    Interested Entities or Persons within a reasonable time.

5    **20.    <u>Other Matters</u>:**

6    There are no other matters that may facilitate the just, speedy and inexpensive

7    disposition of this matter.

8    /////

9    /////

10    /////

11    /////

12    /////

13    /////

14    /////

15    /////

16    /////

17    /////

18    /////

19    /////

20    /////

21    /////

22    /////

23    /////

24    /////

25    /////

26    /////

27    /////

28    /////

**SIGNATURE AND CERTIFICATION BY PARTIES AND LEAD TRIAL COUNSEL:**

Pursuant to Civil L.R. 16-12, each of the undersigned certifies that he or she has read the brochures entitled "Dispute Resolution Procedures in the Northern District of California," discussed the available dispute resolution options provided by the court and private entities and has considered whether this case might benefit from any of the available dispute resolution options.

Dated: May 7, 2008                    HAIGHT BROWN & BONESTEEL LLP


By:      s/Margaret J. Grover
Attorneys for Plaintiffs
BRAD LOVESY and PACIFIC
CONSOLIDATED INVESTMENTS,
INC.

Dated: May 7, 2008                    DLA PIPER US LLP


By:      s/Charles L. Deem
Attorneys for Defendants ARMED
FORCES BENEFIT ASSOCIATION and
5STAR LIFE INSURANCE COMPANY

Dated: May 7, 2008                    SEYFARTH SHAW LLP


By:      s/Michael T. McKeeman
Attorneys for Defendants THE SHUEY
AGENCY, INC., TGS GROUP, INC, and
TED SHUEY

WEST\21351536.7
332602-3

1

**Attestation Pursuant to General Order No. 45, Section X**

2

The concurrence in the electronic filing of this document has been obtained from

3

the signatories.

4

5

Dated:  May 7, 2008

6

By ____/s/ Brooke L. Killian_____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

WEST\21351536.7
332602-3