1

2

3

4          THE UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6

7
BRAD LOVESY, et al.,                          Case No. C 07-2745 SBA
8
                    Plaintiffs,
9                                             **ORDER**

10   v.                                       [Docket Nos. 82, 87]

11   ARMED FORCES BENEFIT
     ASSOCIATION, et al.,
12
                    Defendants.
13   ────────────────────────────

14          Currently before the Court is Defendants, 5Star Life Insurance Company's ("5Star Life")

15   and Armed Forces Benefit Association's ("AFBA") motion to dismiss and strike portions of the

16   Third Amended Complaint [Docket No. 82].  Plaintiffs have filed an opposition [Docket No. 87].

17   For the reasons stated herein, defendants' motion is GRANTED in part and DENIED in part.

18                                   **BACKGROUND**

19

20          The following allegations are contained in the Third Amended Complaint ("TAC") and

21   four contracts attached as exhibits to the Second Amended Complaint.[1]  Lovesy entered into the

22   Representative Agreement and the Director Agreement (collectively, the "Agreements") with

23   AFBA Life Insurance Company ("AFBA Life") and/or 5Star's Life Insurance on or about March

24   22, 2001 and September 10, 2001, respectively.  Pursuant to the Agreements, Lovesy was to

25   serve as a Regional Sales Director for AFBA Life and was permitted to sell 5Star's Life

26

27   ──────────────
     [1] *See* discussion on Judicial Notice *infra*.

28

Insurance products as a Field Service Representative. *Id.* at ¶¶ 20, 23.  The Agreements provide that any party may terminate the Agreements with or without cause; the Representative Agreement requires 30 days' written notice prior to termination.  Representative Agreement, at ¶ VI(A); Director Agreement, at ¶ VIII.

In approximately August 2004, Lovesy entered into a Memorandum of Agreement with The Shuey Agency, Inc. (the "MOA"), under which The Shuey Agency, Inc. would provide administrator services to Lovesy, including implementation of payroll deductions for the premiums due for all 5Star policies. Id. at ¶¶ 28-29; MOA, at pp. 1. The MOA prohibits Lovesy from marketing life insurance products other than those provided by AFBA Life in presentations for the California National Guard. (MOA, at ¶ 1(a).)

Early in his relationship with TGS, Lovesy became unhappy with the manner in which TGS processed applications.  Lovesy also claims TGS began to solicit business in portions of the Alleged Assigned Region. Id. ¶ 40. Purportedly as a result of Lovesy raising concerns about the propriety of the marketing of AFBA Life and 5Star's insurance offerings, TGS cancelled the MOA at some point after February 28, 2006. Id. ¶ 45. Lovesy's relationship with 5Star ended when, on May 7, 2007, 5Star sent Lovesy notice of "intent to terminate his agreement" as of June 7, 2007. Id.¶ 50.

The currently operative complaint, the Third Amended Complaint ("TAC"), was filed on April 2, 2008. The TAC asserts four causes of action against AFBA and 5Star: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) violation of California's unfair competition law; and (4) an accounting.  In connection with his unfair competition law claim under California Business and Professions Code section 17200 ("UCL"), Lovesy seeks damages and nonrestitutionary disgorgement.

Additionally, the TAC alleges claims against Ted Shuey, the Shuey Agency, Inc., and TGS Group Inc. (collectively, the "Shuey Defendants"). The Shuey Defendants have filed a separate motion to dismiss [Docket No. 81].

<u>**APPLICABLE STANDARD(S)**</u>

**A.  Rule 12(b)(6).**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint, or any claim contained within a complaint, may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "The court may dismiss a complaint as a matter of law for '(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim.'" *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). In ruling on a motion to dismiss under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The Court may disregard allegations in the complaint if contradicted by facts contained in documents attached to the complaint. *See Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *see* Fed. R. Civ. P. 10(c) ("a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").

Further, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007); *see also Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss"). Furthermore, courts will not assume that plaintiffs "can prove facts that [they have] not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal.*

*State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club*, 407 F.3d 1027, 1035 (9th Cir. 2005).  At a minimum, the complaint's allegations also must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Grabinski v. Nat'l Union Fire Ins. Co.*, 2008 U.S. App. LEXIS 2317 (9th Cir. 2008).

**B.   Rule 9(b).**

In pleading a cause of action for fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). A plaintiff must allege the time, place, and contents of the false representations or omissions, as well as the identity of the person making the misrepresentations. *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992); *Eshelman v. Orthoclear Holdings, Inc.*, 2008 U.S. Dist. LEXIS 6826 (N.D. Cal. 2008); *see also* Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297 (3d ed. 2007).

**C.  Rule 12(f).**

When a complaint contains allegations that are redundant, immaterial, impertinent, or scandalous, Rule 12(f) provides a mechanism by which the Court may strike such improper allegations. Fed. R. Civ. P. 12(f).  A motion to strike operates to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).

A court should grant a motion to strike if the matter to be stricken has no possible bearing on the subject matter of the litigation. *Colaprico v. Sun Microsystems,* 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).  Further, a motion to strike may be used to strike any part of the prayer for

relief when the relief sought is not recoverable as a matter of law. *Bureerong*, 922 F. Supp. at 1479 n.34.

## DISCUSSION

### A. Judicial Notice

Pursuant to Rule 10(c), the Court may consider documents attached to a complaint. Four contracts were attached as exhibits to Lovesy's Second Amended Complaint ("SAC"): (1) Regional Sales Director Agreement dated on or about September 10, 2001 (the "Director Agreement"); (2) Regional Sales Director Compensation Addendum amending the Regional Sales Director Agreement and dated on or about June 19, 2003 (the "Compensation Addendum"); (3) Independent Field Service Representative Agreement dated on or about March 22, 2001 (the "Representative Agreement"); and (4) Memorandum of Agreement between Lovesy and Ted Shuey Agency dated on or about August 31, 2004 (the "MOA"). Defendants have requested this Court to take Judicial Notice of, *inter alia*, the SAC [Docket No. 84]. Pursuant to Federal Rule of Evidence 201, a court may take judicial notice of any fact "not subject to reasonable dispute in that it is…capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court's own records are properly the subject of judicial notice. *See Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992). Because the fact that Lovesy attached the foregoing agreements to his SAC is not subject to reasonable dispute, the Court grants defendants' request for judicial notice of the SAC. Defendants' other requests for judicial notice are denied as unnecessary.

### B. Unfair Competition Law Claims

Lovesy requests only costs of suit in his prayer for relief in connection with the seventh cause of action in the TAC. Defendants argue that Lovesy's Unfair Competition Law ("UCL")

claim should therefore be dismissed because, defendants contend, a plaintiff may not sustain a cause of action based on a prayer for costs alone.  Defendants further argues that Lovesy is not entitled to *any* relief under the UCL because this Court held, in the Order, that Lovesy is not entitled to restitution for their UCL claims and damages are not permissible under the UCL. Cal. Bus. & Prof. Code § 17203; *see also, e.g., Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992) ("damages are not available under Section 17203"); *Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 624 (9th Cir. 1999).

In his opposition, Lovesy requests leave to amend the TAC to correct his prayer for relief, "which mistakenly requests only costs."   Because injunctive relief is an available remedy under the UCL, Cal Bus. & Prof. Code § 17204, the Court GRANTS Defendant's motion to dismiss the UCL claim but grants Lovesy leave to amend the TAC to include a prayer for injunctive relief in connection with his UCL claim.

## C.  Fraud Cause of Action

In Lovesy's, sixth cause of action, for fraud, he alleges that 5Star Life falsely represented that unless Lovesy agreed to be bound to the terms of the Memorandum of Agreement with The Shuey Agency, 5Star Life would allow Ted Shuey to solicit within the regions assigned to Lovesy.  Defendants move to dismiss this claim because, they argue, Lovesy has failed to identify the person who purportedly made the misrepresentation, as well as the date, time, and place of the alleged misrepresentation.  As such, defendants contend that Lovesy has failed to overcome the heightened pleading standards for fraud under Rule 9(b).

To plead a claim for fraud with particularity as required by the Federal Rules, a plaintiff must allege the time, place, and contents of the false representations or omissions, as well as the identity of the person making the misrepresentations.  *Neubronner*, 1997 U.S. App. LEXIS at *8.

While Lovesy alleges in the TAC that a false representation was made "in or about August 2004" by 5Star Life, he fails to allege where the purported false representation was made and by whom. And, even though Lovesy also alleges that during meetings held in Sacramento, Michael Wong indicated to Lovesy that Ted Shuey would draw up a contract, this allegation cannot be construed, even in the most favorable light, to mean that at such meetings Mr. Wong also told Lovesy that unless he entered into the contracts with the Ted Shuey or The Shuey Agency, 5Star Life would allow Ted Shuey to take over Lovesy's business in the Assigned Regions.  Lovesy has failed to plead his fraud claim with particularity as required by Rule 9(b).  Therefore, defendant's motion to dismiss this claim is GRANTED.  Lovesy's sixth cause of action in the TAC is dismissed without prejudice.

**D.  Accounting Cause of Action**

Defendants argue that they are entitled to dismissal of Lovesy's action for an accounting as to AFBC because, defendants contend, Lovesy fails to allege that AFBC owes him any money.  An essential element of an accounting is that the defendant owes the plaintiff money. *Kritzer v. Lancaster*, 96 Cal. App. 2d 1, 6 (Cal. App. 1950); *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1026 (N.D. Cal. 2005) (citing St. *James Church of Christ Holiness v. Super. Ct. in and for L.A. County*, 135 Cal. App. 2d 352, 359 (Cal. Ct. App. 1955)).  While in his opposition, Lovesy argues that AFBC allegedly wrongfully imposed charge-backs and therefore owes him money, such an allegation is never made in the TAC.  Rather Lovesy alleges that because AFBA imposed charge-backs to Lovesy's commissions and earnings, 5Star Life has failed to pay Lovesy that he has earned as a result of his status as a Field Service Representative and Regional Sales Director for 5Start Life."  But, this alleges that 5Star Life, not AFBA, owes Lovesy money because it is undisputed that AFBA is not a party to any agreement in this case.

7

Indeed, Lovesy's only claims against AFBA are those under the UCL and for an accounting. However, as discussed above, even if Lovesy amends the TAC to include a prayer for injunctive relief corresponding to his UCL claim, and subsequently prevails on his UCL claims, he will still not be entitled to any money from AFBA because damages are not available under the UCL and the Court has already held that he is not entitled to restitution.

Because Lovesy does not allege that AFBA owes him any money, he has failed to allege the necessary facts supporting an action for an accounting against AFBA.  Accordingly, defendants' motion to dismiss the eighth cause of action as to AFBA is GRANTED.

**E.  Motion to Strike**

   **a.  Alter Ego**

The Court previously determined 5Star Life and AFBA are not alter egos of one another, even assuming each of Lovesy's allegations in the SAC to be true.   Order 6–7.  In the TAC, Lovesy alleges that:

> 5Star Life Association, and 5Star Life, have shared or interlocking ownership, direct, or control in that AFBA has created and/or controls each entity; AFBA participates in the operation and management of the others' business.  As such, Plaintiffs are informed and believe that Defendants AFBA, the 5Star Association, and 5Star Life are, each and every one, responsible for Plaintiffs' claims under the contracts referenced herein.

TAC at ¶ 5.  Defendants argue that Lovesy's allegations in paragraph 5 are simply cloaked alter ego allegations that should be stricken as immaterial and impertinent to the TAC in light of the Court's previous Order.

As previously explained by the Court, "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim.  Rather, a plaintiff must allege specifically both of the elements of alter ego liability, *as well as facts supporting each*." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal 2003).  These two elements are: 1) a unity of interest or

ownership between a corporation and its individual owner; and 2) that if the acts are treated as those of the corporation alone, an inequitable result will follow. *Id.* at 1115-1116.

Although Lovesy argues in his opposition that he has not made an alter ego claim in the TAC, his argument is belied by his allegations in paragraph 5 of the TAC. Lovesy, alleges that due to defendants' shared or interlocking ownership, direction, or control, defendants are, each and every one, responsible for his claims under the contracts referenced herein. While not characterizing his allegations as such, Lovesy has, in essence, reasserted his alter ego allegations in the TAC. However, as with the SAC, Lovesy fails to allege any facts supporting these allegations. Simply failing to characterize a theory of liability by its legal term does not obviate the need to provide the requisite legal and factual support.

Lovesy's conclusory recitation of the elements of alter ego liability are insufficient to plead alter ego liability under Federal Rule of Civil Procedure 8(a). *Neilson*, 290 F. Supp. 2d 1101. At a minimum, Lovesy must set forth "sufficiently specific factual allegations" to support an alter ego claim in order to overcome a motion to dismiss. In order to withstand a motion to dismiss, the plaintiff must, at a minimum, "se[t] forth some examples of alleged domination." *In re Sunbeam Corp.*, 284 B.R. 355, 366 (Bkrtcy. S.D.N.Y. 2002). Lovesy has failed to do so here.

In any event, even if Lovesy's allegations in paragraph 5 were alter ego allegations pleaded with the requisite specificity, Lovesy has not adequately explained the pertinence or materiality of such allegations with respect to his allegations against defendants. Lovesy's only cause of action against AFBA in the TAC is for a violation of the UCL and that claim is not based in any way on allegations of defendants' shared or interlocking ownership, direction, or control. Rather, that cause of action is based on allegations that AFBA had knowledge, through its Senior Vice President, of Lovesy's restrictive agreement with the Shuey defendants, a

violation of § 16600 of the UCL.  But the Court finds that Lovesy's allegations in paragraph 5 are *not* well-pleaded alter-ego allegations pursuant to *Neilson*.  As such, they do not appear to have any other relevance to Lovesy's claims in the TAC and are therefore impertinent and immaterial.  Accordingly, defendants' request to strike paragraph 5 of the TAC is GRANTED.

### b.  Exclusivity

The Court previously found that Lovesy's allegations regarding exclusivity were contradicted by the agreements attached to Lovesy's Second Amended Complaint ("SAC").  *See* Order at 12.  However, in the TAC, Lovesy continues to allege that he was entitled to operate in several Western states exclusively.  Lovesy attempts to supplement his allegations in order to overcome the Court's previous findings in two ways.  First, Lovesy attaches, as exhibits to the TAC, website printouts listing Lovesy as a Regional Director for the states in the Assigned Region.  The printouts also list other individuals as Regional Directors for states in the Assigned Region, but Lovesy alleges that where "these states listed more than one Regional Director, the other director handled business to other branches of the Armed Forces….but that [Lovesy] was the sole marketer to the National Guard."  Lovesy further alleges that because he was the sole marketer to the National Guard, it was the custom and practice under the Agreements for Lovesy to operate exclusively in the Assigned Regions with respect to marketing to the National Guard.

However, the website printouts, on their face, belie exclusivity.  The fact that Lovesy may have operated in certain states does not mean Lovesy was *entitled* to act exclusively in any state.  Indeed, the website printout's use of the plural "Regional Director(s)" implies that multiple Regional Directors may operate in any one state.  Furthermore, although Lovesy alleges that with respect to the National Guard, it was the custom and practice under the Agreements for Lovesy

to operate exclusively in the Assigned Regions, alleging a custom and practice of exclusively is clearly different from alleging a contractual entitlement to exclusivity.

Second, the TAC alleges that the Agreements were orally amended by 5Star Life to give Lovesy exclusivity in the Assigned Regions.  The TAC does indeed allege that 5Star Life advised Lovesy that unless he agreed to use the services of Ted Shuey and the Shuey Agency as administrators in the Assigned Regions, Lovesy's business in the Assigned Regions would be taken over by Ted Shuey.  This, allegation, Lovesy contends, constituted an oral modification of the Agreements to give Lovesy exclusive access in the Assigned Regions.  Lovesy is wrong.  An allegation that 5Star Life agreed to use Lovesy and not Ted Shuey in the Assigned Regions is not legally or factually equivalent to an allegation that 5Star Life agreed to use Lovesy exclusively.

Because Lovesy's exclusivity allegations remain contradicted by the Agreements, notwithstanding Lovesy new allegations in the TAC, references to a right to operate exclusively in a particular area are not pertinent.  Accordingly, defendants' motion to strike all references to an exclusive right to operate in a particular area is GRANTED.

### c.  Duty to Process Policies

In various paragraphs of the TAC, Lovesy alleges that 5Star Life and/or AFBA had a duty to process insurance policies sold by Lovesy.  However, the Court has already found that defendants had no duty to process the policies.  Order at 11.  For this reason, defendants move to strike the duty to process allegations as immaterial and impertinent.  In his opposition, Lovesy does not argue that the TAC avers any new allegations on this topic but merely argues that the Court erred in deciding that 5Star Life had no duty to process the policies that Ted Shuey, TGS, and TSA failed to process.  However, Lovesy provides absolutely no authority for his arguments

that 5Star Life had a duty to process the policies.  Accordingly, defendants' motion to strike the policy processing allegations in the TAC is GRANTED.

### d.  Unfair Competition Allegations

#### i.  Exclusivity and Section 16600 Allegations

In Lovesy's UCL cause of action, he alleges that defendants violated Cal Bus. & Prof. Code § 16600 because the agreement with the Shuey Agency prevented Mr. Lovesy from offering any products other than those offered through AFBA.  Section 16600 provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal Bus & Prof Code § 16600.  Defendants argue that Lovesy's UCL cause of action based on Section 1600 necessarily assumes that Lovesy was entitled to operate in the Assigned Region exclusively, and that, as a result, the § 16600 claim should be stricken because Lovesy was not entitled to operate exclusively.

While the Court finds that Lovesy has not demonstrated that he was entitled to operate exclusively in the Assigned Region, as discussed above, and has ordered such allegations stricken from the TAC, defendants' assertion, that Lovesy's 16600 claim necessarily assumes exclusivity, is incorrect.  The crux of Lovesy's § 16600 claim appears to be that the agreement with the Shuey defendants was a restraint on Lovesy's ability to sell other insurance products. Lovesy has alleged that 5Star Life advised him that unless he entered into an agreement with the Shuey defendants, 5Star Life would allow Ted Shuey to take over Lovesy's business in the Assigned Regions.  However, even though Lovesy has also alleged that part of the consideration under the Agreements was exclusive access in the Assigned Regions, that allegation is not essential to his allegation that the contract he entered into with the Shuey defendants was a

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

restraint on trade pursuant to § 16600.  Therefore, defendants' motion to strike Lovesy's § 16600 claims is DENIED.

### ii.   Knowledge of Contract Provision and 16600 Allegations

In paragraphs 91 and 92, Lovesy alleges AFBA violated § 16600 of the UCL by encouraging Lovesy to enter into the MOA, which allegedly limited Lovesy's ability to sell certain insurance products.  Defendants correctly argue that the Court dismissed similar allegations because Lovesy failed to allege that defendants were parties to the allegedly offense MOA, or knew of the allegedly offending terms in that contract.  Order at 11. However, in the TAC, Lovesy alleges that when he expressed his concern that by entering into the agreement with the Shuey defendants, he would have to give up soliciting a product offered through Colorado Banker, "Michael Kimo Wong, a Senior Vice President of AFBA and Regional Vice President of 5Star Life, assured Mr. Lovesy that the AFBA products being administered through [the Shuey defendants] would be so lucrative that he would not miss the income from the Colorado Banker products."  Thus, Lovesy has alleged that AFBA had knowledge of the restraint of trade provision of the contract between Lovesy and the Shuey defendants.

Defendants argue that Lovesy's assertion, that Mr. Wong was a Senior Vice President of AFBA, is a sham allegation directly contradicted by the Agreements.  According to defendants, the Agreements establish that at all times relevant to Lovesy's relationship with 5Star Life, Mr. Wong was affiliated with 5Star Life not AFBA.  However, the Agreements attached to Lovesy's complaint do not establish that Mr. Wong was affiliated exclusively with 5Star Life.  Moreover, Lovesy alleges, in paragraph 28 of the TAC, that Mr. Wong was affiliated with *both* 5Star Life and AFBA.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In ruling on a motion to dismiss under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Cahill*, 80 F.3d at 337–38.  Thus, at this stage of the proceedings, the Court must assume the truthfulness of Lovesy's allegation, that AFBA, through its alleged Senior Vice President, Mr. Wong, had knowledge of the alleged offending provisions of the agreement between Lovesy and the Shuey defendants.  Therefore, contrary to defendants' assertion, Lovesy has alleged that AFBA had knowledge of the offending terms in the MOA.   Accordingly, defendants' motion to strike paragraphs 91 and 92 of the TAC with respect to AFBA is DENIED.

### iii.  Duty to Process Policies

In paragraph 92 of the TAC, Lovesy claims "Defendants" violated the UCL by failing to process insurance policies properly.  5Star Life and AFBA request that, to the extent Lovesy includes 5Star Life and AFBA in the definition of "Defendants" in this paragraph, the allegations be stricken with respect to 5Star Life and AFBA.  Because Lovesy has not demonstrated that 5Star Life and AFBA had a duty to process policies, defendants' request to strike is GRANTED.

### iv.  Standing

In paragraphs 42 and 93 of the TAC, Lovesy alleges that defendants violated the UCL by "piggybacking" expensive insurance polices with affordable policies, thereby deceiving the public.  However, defendants argue that Lovesy has no standing to pursue a claim under the UCL based on purported deception to the public because Lovesy does not allege he suffered an injury-in-fact as a result of the violation.  Defendants request the Court to strike paragraphs 42 and 93 as immaterial and impertinent.

Section 17204 of the UCL provides in pertinent part that "[a]ctions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by…any

person who has suffered *injury in fact* and has lost money or property as a result of the unfair competition."  Cal Bus & Prof Code § 17204.[2]   According to Lovesy's allegations, the defendants' piggybacking of insurance policies constituted unfair competition pursuant to § 17204.  However, the Court cannot discern how Lovesy himself was injured as a result of this alleged offensive practice.   *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1084 (C.D. Cal. 2006) ("Plaintiffs do satisfy the UCL's standing requirements because they have alleged injury-in-fact and a loss of income as a result of unlawful competition").

Lovesy appears to argue that he sustained an injury because he lost business opportunities by entering into the restrictive agreement with the Shuey defendants, and incurred charge-backs resulting from the Shuey defendants' alleged failure to properly process policies.  Lovesy further argues that the "impetus" for encouraging him to enter into the agreement with the Shuey defendants was 5Star Life's desire engage in unfairly competitive practices, namely, to sell expensive, piggybacked insurance policies.  Thus, according to Lovesy, there is a direct causal connection between his alleged injuries and defendants' alleged piggybacking practices.

However, even if defendants were engaged in acts of unfair competition by piggybacking insurance policies, Lovesy has not alleged that such acts themselves proximately caused his alleged injuries.  Rather, Lovesy's allegations, construed in the most favorable light, merely establish that his injuries were caused by the Shuey defendants' alleged failures to process policies and/or defendants' alleged violation of the UCL in restricting Lovesy's ability to sell other products.  Lovesy's attenuated connection between defendants' alleged acts of unfair competition (the piggybacking) and Lovesy's alleged losses (those caused by entering into the agreement with the Shuey defendants) does not suffice for alleging an injury with a "direct

---

[2] Emphasis added unless otherwise noted.

casual connection" to the acts contended to constitute unlawful completion.  *See G&C Auto Body, Inc v. GEICO Gen. Ins. Co.*, 2007 U.S. Dist. LEXIS 91327 (N.D. Cal. 2007).

For the foregoing reasons, the Court finds that Lovesy lacks standing to allege violations of § 17204 of the UCL because he has not suffered an injury in fact.  Cal Bus & Prof Code § 17204.  Accordingly, defendants' request to strike paragraphs 42 and 93 is GRANTED.

### v.   Future Commissions

In paragraph 94 of the TAC, Lovesy alleges that as a result of 5Star Life's actions he lost commissions he may have earned in the future.  However, the Court previously held that Lovesy is not entitled to future commissions under the UCL.  Order at 8.  Moreover, in his opposition, Lovesy explicitly states that he does not oppose striking his allegations in paragraph 94 for future commissions from Colorado Banker products.  Accordingly, defendants' request to strike Lovesy's claims for future commissions under the UCL is GRANTED.

### F.  Impermissible Relief

### a.   Attorney's Fees in Connection with Breach of Covenant Claim

Lovesy requests attorney's fees in connection with his breach of the covenant of good faith and fair dealing claim.  Defendants argue that attorney's fees are recoverable only if provided for by contract or statute.  Defendants further contend that Lovesy cannot recover attorney's fees under any contract because he does not assert any contract provision under which he is entitled to attorney's fees, and that attorney's fees are not recoverable as a matter of statute in breach of covenant claims sounding in contract only.  Because defendants assert that Lovesy is not entitled to attorney's fees as part of his breach of covenant cause of action, they request that Lovesy's prayer for attorney's fees be stricken as impertinent and immaterial.

1   Lovesy explicitly states that he does not offer any opposition to striking this portion of

2   the prayer for relief.  Accordingly, defendants' motion to strike is GRANTED.

3         **b.  Prejudgment Interest on "Sum Certain"**

4   Lovesy seeks prejudgment interest in connection with his breach of contract and breach

5   of the covenant of good faith causes of action.  Defendants argue that a plaintiff is not entitled to

6   collect prejudgment interest in an action based in contract, unless and until the amount of money

7   owed to the plaintiff can be determined with certainty.  Defendants further contend that damages

8   are not certain if the amount of damages cannot be resolved except by verdict or judgment.

9   Defendants argue that Lovesy cannot be certain of the amounts allegedly due to him until after

10  judgment and therefore is not entitled to prejudgment interest, and move to strike the prayer for

11  prejudgment interest in the TAC.

12  In his opposition, Lovesy explicitly states that he offers no opposition to striking the

13  prejudgment interest portion of the prayer for relief.  Accordingly, defendants' motion to strike is

14  GRANTED.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss and strike is GRANTED in part

and DENIED in part.

It is further ORDERED that, pursuant to Civil Local Rule 16-10(c), a case management

conference is scheduled for January 21, 2009 at 3:45 p.m.  The parties shall meet and confer

prior to the conference and shall prepare a joint Case Management Conference Statement which

shall be filed no later than ten (10) days prior to the Case Management Conference that complies

with the Standing Order For All Judges Of The Northern District Of California and the Standing

Order of this Court.  Plaintiffs shall be responsible for filing the statement as well as for

1    arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the

2    above indicated date and time.

3              IT IS SO ORDERED.

4

5    Dated: 11/5/08                                   SAUNDRA BROWN ARMSTRONG
                                                       United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28